NUNC
PRO TUNC

1  CAROL A. SOBEL   SBN 84483
2  429 Santa Monica Boulevard, Ste. 550
   Santa Monica, CA  90401
3  T. 310 393-3055  F. 310 393-3605
4  E. carolsobel@aol.com

5  BARRETT S. LITT  SBN 45527
6  LITT, ESTUAR & KITSON LLP
   1055 Wilshire Boulevard, Ste 1880
7  Los Angeles, CA 90017
8  T. 213 386-3114  F. 213 380-4585
   E. blitt@littlaw.com

9
   LEGAL AID FOUNDATION
10    OF LOS ANGELES
11 SUSAN MILLMANN  SBN 92417
   1640 5th Street,  Ste 124
12 Santa Monica, CA 90401
13 T. 310 899-6200  F. 310 899-6208
   E. smillmann@lafla.org
14

FILED
CLERK, U.S. DISTRICT COURT
APR 1 5 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

MICHAEL S. RAPKIN  SBN 67220
SCOTT B. RAPKIN  SBN 261867
LAW OFFICE OF MICHAEL RAPKIN
233 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
T.  310 319 5465  F. 310 319 5355
E.  scottrapkin@rapkinesq.com

15        **IN THE UNITED STATES DISTRICT**

16 **FOR THE CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

17

18 CHEYENNE DESERTRAIN, et al.,          )   CASE NO. cv 10-09053 RGK (PJWx)
                                         )
19            Plaintiffs,                )   AMENDED COMPLAINT
                                         )
20 vs.                                   )
                                         )
21                                       )
22 CITY OF LOS ANGELES, a muni-          )
   cipal entity, DOES I-10, as individuals, )
23                                       )
            Defendants.                  )
24 _____  )

25

26                        **JURISDICTION**

27        1.       This is an action for temporary, preliminary, and permanent injunctive relief

28 pursuant to 42 U.S.C. § 1983, as well as damages, based upon the ongoing violations by

the defendant CITY of LOS ANGELES of the rights secured to plaintiffs by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. §1331 (federal questions arising under the Constitution and statutory laws of the United States); §1343(a)(3) (an action brought to redress deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution); and §1343(a)(4) (an action to secure equitable relief under an Act of Congress providing for the protection of civil rights, specifically under 42 U.S.C. §1983, 42 U.S.C. §12132 (Title II of the Americans with Disabilities Act), and 29 U.S.C. §794 (Sec. 504 of the Rehabilitation Act of 1973) and the Declaratory Judgment Act, 28 U.S.C. §§2201(a) and 2202. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

2.　　Venue is proper in the Central District of California under 28 U.S.C. §1391(b). Defendants are located in the Central District, and all of the acts and/or omissions which give rise to the claims herein occurred, or will occur, in this District.

## STATEMENT OF FACTS

3.　　The Venice area of Los Angeles has one of the highest percentages of homeless individuals in the **CITY**. According to statistics published by the Los Angeles Homeless Services Authority ("LAHSA"), nearly three-quarters of the approximately 1,000 homeless individuals living in Venice have no shelter. For some 250 individuals, their vehicles are the only remaining place to keep the few possessions they have left. In early September, Councilman Rosendahl, whose district includes Venice, publicly announced a "Streets to Homes" project to respond to this situation. The concept was

that homeless individuals would be offered services.   According to Rosendahl, if a person did not accept the services offered, no matter how inappropriate or inadequate those services may be for the individual's needs, they would have to leave Venice or face punitive actions. Councilman Rosendahl has made repeated public pronouncements that there are "a lot of people on the beach, in those cars and campers, that don't want help," and that "[s]ome of them are there because it's a nice place to be next to the ocean. Some of them use it as a base for their criminality." These sweeping generalizations do not describe plaintiffs, all of whom are law-abiding and nearly all of whom have resided in the Venice area long before illness or misfortune forced them to lose their homes.

4.     But announcing a program and obtaining funding and other resources to carry it out are two different things.  Rosendahl also publicly promised to find a location where individuals forced to live in their vehicles could safely park at night off of the public streets.  That promise, too, has failed to materialize.  To date, the program and services have not been forthcoming, but the punitive enforcement mechanism is.  Indeed, this may be the City's tactic: to arrest and banish in order to reduce the need and demand for services for homeless individuals.   The LAPD has compiled a list of about 250 vehicles targeted for selective enforcement on the basis that the vehicle owners are homeless and park on public streets. The bulk of the list was compiled by residents who have pressed for the City to restrict parking in the Venice neighborhood as a means of barring homeless individuals from parking on the public streets. The LAPD has added to the targeted list through the type of harassing stops experienced by plaintiffs **DESERTRAIN** and **WARIVONCHIK,** resting on bogus assertions of vehicle

equipment failures, such as a non-functioning tail light, or minor omissions, such as not turning off a directional signal.

To carry out this assaultive plan, the LAPD has assigned more than two dozen additional officers to Venice to replicate the Safer Cities Initiative program instituted on Skid Row. As the LAPD did on Skid Row, the police have concentrated on issuing citations for anything that they can, even if it means misapplying the law or stretching it to a point that defies credulity. Other than sending the police out to cite and arrest, the **CITY** has handed out flyers listing a telephone number to call for emergency assistance and shelter. But when that number is called, the only referral is to three shelters in the downtown area known as Skid Row. This is not a viable alternative for individuals who obtain critical services in Venice at St. Joseph's Center and other local providers. But even if plaintiffs could afford the gas or bus fare to get downtown each night, it is unlikely that they would find any shelter because the Skid Row Missions fill up each night with individuals who have stood in line on Skid Row during the day to ensure that they get a space at night. Other than this flyer, individuals have been given a leaflet from the Pacific Division Chaplain program, made up of approximately six Evangelical Christian churches with no concrete resources to address homelessness.

**Restrictions on parking of vehicles with disability plates or placards:**

5.    California Vehicle Code § 22507 provides that:

Local authorities may, by ordinance or resolution, prohibit or restrict the stopping, parking, or standing of vehicles, including, but not limited to, vehicles that are six feet or more in height (including any load thereon) within 100 feet of any intersection, on certain streets or highways, or portions thereof, during all or certain hours of the day. The ordinance or

4

resolution may include a designation of certain streets upon which preferential parking privileges are given to residents ... for their use and the use of their guests ... .

6.      At the same time, Vehicle Code § 22511.5 sets out the parking "privileges" for disabled individuals. By its express terms, this section exempts disabled persons from the prohibitions of Veh. Code § 22507. Section 22511.5 applies as follows:

(1) (A) In any restricted zone described in paragraph (5) of subdivision (a) of Section 21458 or on streets upon which preferential parking privileges and height limits have been given pursuant to Section 22507.

(B) In any parking zone that is restricted as to the length of time parking is permitted as indicated by a sign erected pursuant to a local ordinance.

[¶] (2) A disabled person or disabled veteran is allowed to park in any metered parking space without being required to pay parking meter fees.

7.      A person with disability plates or placard is generally only restricted from parking in "a zone for which state law or ordinance absolutely prohibits stopping, parking, or standing of all vehicles[,]" as well as areas reserved for special vehicles. Despite the clear statutory language of Veh. Code §22511.5, the LAPD is enforcing all parking restrictions against individuals with disability placards and plates, including those authorized by Veh. Code §22507. When plaintiffs protest, the response is that the police and parking enforcement employees of the **CITY** have been directed to enforce all vehicle code provisions against the targeted vehicles, irrespective of whether they are exempt as operated by individuals with disability placards or plates. There is no doubt that this is a deliberate plan to target individuals with disabilities who are exempt from the requirement to put money in the meter, restrict how long they park in areas with

5

posted time restrictions, keep out of areas with residential parking restrictions and place limits on the locations and times to park oversize vehicles, etc. Those with disability plates or placards may park <u>anywhere</u> anyone else may park and are only prohibited from parking at times and locations when <u>no one</u> else may park in a specific location, such as a red zone.

**Los Angeles Municipal Code § 85.02**

8.   Los Angeles Municipal Code § 85.02, titled "USE OF STREETS AND PUBLIC PARKING LOTS FOR HABITATION," provides as follows:

> No person shall use a vehicle parked or standing upon any City street, or upon any parking lot owned by the City of Los Angeles and under the control of the City of Los Angeles or under control of the Los Angeles County Department of Beaches and Harbors. as living quarters either overnight, day-by-day, or otherwise.

Defendants have applied this ordinance against plaintiffs **JACOBS-ELSTEIN** and **WARIVONCHIK**, both of whom park and reside at night on private property with the permission of the property owners, but use their vehicles for transportation during the day. On each occasion when **JACOBS-ELSTEIN** has been cited, threatened with arrest, or arrested, the action has occurred during the day, when he is awake and attending to personal business. When **WARIVONCHIK** was pulled over, questioned, asked for personal information and threatened with being cited or arrested if she were found again in Venice, it was during the day when she was on her way to participate in a school bazaar in Westchester for charity. At the time, she had been sleeping at night on private property in Santa Monica for several years because of the harassment in Venice. Neither individual was violating Section 85.02 but they must keep their personal possessions in

6

their vehicle because they have no other place to put them during the day.  The Los Angeles municipal law only prohibits "habitation" in a vehicle "parked or standing" on a City street or publicly owned or controlled parking lot.  Enforcing this law against individuals who do not live in an apartment or house and who use their vehicles for transportation violates due process and the right to intrastate travel.

**Rose Avenue Parking Lot Closure:**

9.    Until recently, one area where disabled individuals could safely park during the day was the Rose Avenue public parking lot at Venice Beach.  In October, new signs were posted at this lot, barring access by any vehicle that does not fit into a single space. While the signs do not expressly say "no RVs," the practical effect of the rule is that many such vehicles are excluded.  No parking spaces in the lot can accommodate larger vehicles driven by disabled persons. When some persons with disabled plates or placards on larger vehicles have attempted to park there, they have been turned.  At the same time, significant areas of the lot have been reserved for commercial movie productions with multiple semi-trailers parked there for days on end. These vehicles do not fit within one or even two spaces, but rather 16 each.   So, it cannot be that large vehicles are inconsistent with the Rose Avenue parking lot if allowed for a rental fee to the City.

**PARTIES**

**Plaintiffs:**

10.    Plaintiff **CHEYENNE DESERTRAIN** is a disabled individual within the meaning of federal and state law.  She suffers from a number of chronic conditions, including several affecting her respiratory and muscular functions.  Her sole source of

7

income is Social Security Insurance ("SSI") based on her disability. She does not qualify for food stamps because, as a single person, her monthly SSI income is too great. She receives approximately $920 a month from SSI, which is insufficient to meet her basic needs of rent, food, and paying for gas, insurance and repairs to her aging vehicle. As a consequence, she lost her long-time home when she was unable to pay the rent. Although she has been informed that she is eligible for Rapid Rehousing funds, none have been forthcoming. Since she lost her home, her possessions are in her vehicle, as is her dog, a therapeutic pet whom she has trained to provide physical assistance when her muscular condition flairs up and prevents her from getting up from a lying or sitting position without assistance. **DESERTRAIN**'s vehicle has special license plates indicating that she is disabled. She has been targeted by Defendant's agents because she is homeless and maintains her possessions in her vehicle. Specifically, she has been cited for parking at an expired meter, parking an oversized vehicle on the street in violation of posted restrictions, and has been followed by the police and pulled over on the pretext of a purportedly broken brake light. **DESERTRAIN** is afraid that she will be followed and pulled over again without probable cause, issued unwarranted citations in violation of her protections as a disabled driver, and generally subjected to harassment by the Los Angeles Police Department because she is not currently housed.

11.    Plaintiff **STEVE JACOBS-ELSTEIN** has been a resident of Los Angeles for several decades. Until three years ago, he was gainfully employed, running his own business placing temporary legal support personnel. With the downturn in the economy, he experienced a severe decline in his business, ultimately being forced to close it. After

8

the failure of his business, he was unable to keep up payments on his home and he lost that, too. All **JACOBS-ELSTEIN** has left is his vehicle, a small SUV. As a result of the devastation of his business and the loss of his home, plaintiff suffered a disabling psychological condition. His only source of support currently is General Relief from the County of Los Angeles in the amount of $221 a month and food stamp vouchers. He is on a waiting list for subsidized housing and has applied for both SSI and Social Security Disability Insurance ("SSDI"). On or about September 13, 2010 at approximately 10:30 a.m., he was sitting in his vehicle, waiting for the First Baptist Church at 7th and Westminster to open for its food program. **JACOBS-ELSTEIN** was ordered out of his car by two officers, who then searched his vehicle without plaintiff's consent and issued a citation to him for violating LAMC § 85.02. At that time, as now, plaintiff was residing at night on private property with the permission of the owner. The citation was dismissed. Two weeks later, plaintiff was sitting on the steps of the First Baptist Church, again waiting for the food distribution program to begin, when the same officers came by and yelled that the next time they saw him he would go to jail. On this second occasion, plaintiff's vehicle was parked in the church parking lot. On the morning of October 31, 2010, plaintiff had just parked and exited his vehicle at Broadway and Lincoln to walk his friend's dog. Barely five minutes after arriving at this location, he was detained, handcuffed and arrested for a violation of LAMC § 85.02 by the same officers involved in the first two events. The officers had his vehicle towed despite the fact that two of his friends arrived at the scene during the arrest and offered to drive his car away. **JACOBS-ELSTEIN** was taken to Pacific Division and then transferred to the

9

jail at 77th Division, where he was held for approximately five hours before being released on his own recognizance.  On January 30, 2011, while Plaintiff was legally parked and sitting in his car during the day, talking on his cell phone, he was again approached by the same LAPD officer who had previously arrested him, defendant **YOSHIOKA**, and threatened with arrest for "camping." Defendant **YOSHIOKA** issued plaintiff yet another citation and ordered him to leave the area.   Plaintiff provided defendant **YOSHIOKA** with written proof that plaintiff resided at night on private property, but **YOSHIOKA** dismissed the document as irrelevant and told Plaintiff he could arrest him.  Plaintiff is fearful that he will be arrested again and that his vehicle will be towed if he is seen in Venice by the police.  He is afraid to be in Venice even during the day but he needs to be in the area to receive services.

12.     Plaintiff **BRADFORD ECKHART** has been a resident of Venice for nearly two decades.  In 1996, he was injured in a car accident.  As a result, he now has eight pins and a plate in his right heel, which has left him in chronic pain and unable to stand for any length of time.  He frequently uses a cane for mobility assistance.  Prior to being injured, **ECKHART** was a teacher's assistant working with autistic children.  His only source of income now is approximately $950 a month from SSI, which is insufficient to meet the costs of rent, food, vehicle maintenance and other personal needs on a monthly basis.  **ECKHART** drives a van that has clearly displayed disability license plates on the front and back.  On November 3, 2010, he was issued a citation for parking at an expired meter even though his disabled plates were clearly displayed.  He has appealed his citation and has received a response that his disability placard was not clearly displayed

at the time the citation issued; however **ECKHART** does not have a <u>placard</u>.  Although **ECKHART** successfully appealed this initial ticket, primarily because the hearing officer found that the citing officer failed to provide sufficient information as to the address where the violation occurred, immediately thereafter **ECKHART** received a notice in the mail of a delinquent ticket for parking an oversized vehicle in a regulated zone.  **ECKHART** had not seen the citation previously.  However, for the same reasons that **DESERTRAIN** was exempt from this parking restriction, so is **ECKHART**.  Plaintiff filed an appeal from this citation but it was denied and he is now forced to go through the additional appeal process on the basis that disabled drivers' vehicles are not exempt from this provision under the City law.  He has disability <u>plates</u> affixed to his vehicle.  **ECKHART** is in fear that he will be targeted by the police again and issued additional false tickets.  He has been unable to find shelter because he has a therapeutic dog and no shelter will permit him to bring his dog in with him.

13.     Plaintiff **PATRICIA WARIVONCHIK** lived in Venice for 34 years.  She became homeless in 1984 after being evicted from her apartment on Breeze Ave in Venice.  She is epileptic and suffered a significant head injury several decades ago.  As a result, she was unable to work for a about a year and could not afford to pay rent in a new apartment after being evicted from her previous residence.  Because she wanted to remain in Venice, where she had a supportive network of friends, she started to live in her vehicle, which was all she had left.  Since 1986, she works when she can, supporting herself with part time jobs and also making and selling ceramic art.  Her income is extremely low, generally less than $500.00 a month.  I own a 1973 Dodge "Open Road"

Class C Motor Home.  For the last several years, with the permission of the property owners, at night **WARIVONCHIK** parks her vehicle in Santa Monica and off of public streets.  While she is often in Venice during the day, she does not sleep in Venice at night.  Because of the targeted harassment by the police of individuals in Venice believed to residing in their vehicles, she has limited the time she spends in Venice for any reason and has foregone visiting friends to avoid the police.  Despite these deliberate changes she has made to her life to avoid harassment, while she was driving through Venice on November 13, 2010 she was followed for over a mile, then pulled over by LAPD officers for failing to turn off her left-hand turn signal.  **WARIVONCHIK** first noticed the officers when she passed the intersection of Rose Avenue and Lincoln Boulevard.  At that time, she was on her way to her friend's home, where she stopped for several minutes to pick up some materials before staring again on her way to Westchester.

**WARIVONCHIK** was not issued a citation; however, she was questioned by the officers about having an RV in Venice and then warned that if the police ever found plaintiff in Venice in her RV, they would arrest her on the spot and impound her vehicle.  Her personal identifiers were collected by the police, including her Social Security number.  As a result of this experience and her knowledge of what has been occurring with other homeless individuals in Venice, **WARIVONCHIK** is terrified that if she simply drives through Venice, rides her bicycle there, or is just seen in the area she will be detained and/or arrested.

14.     Plaintiff **LEROY "ABRAHAM" BUTLER** has lived in Venice since 1969, arriving here after he was honorably discharged from the Army.  He is well-known artist

and musician, who has performed on the Venice Boardwalk for at least 30 years.   In 1968, while Butler was stationed at Fort Bragg, his left knee was injured. Over time, his knee has deteriorated and he now faces the prospect of being unable to walk because of the destruction of his knee. He often takes pain medication just to get through the day. His income consists of SSI of approximately $835.00 per month, which must cover both Butler and his wife, who is also disabled but has no source of income. This is not enough to pay rent, food, utilities, gas, car repairs, and other basic necessities. Butler and his wife own and drive a 1986 Toyota RV and a larger vehicle that is 27-feet in length. The registration and insurance are current on both.   The Toyota has a disability placard clearly visible from the front window, while the larger vehicle has disabled license plates, front and back, that are clearly visible. Shortly before noon on August 16, 2010, Butler's vehicle was legally parked on 3rd Ave in Venice.  He had parked in this particular place at midnight on August 14. His car was in this location less than 72 hours when he was wrongly issued a ticket, citation # 2078207224, for violating LAMC §80.73.2, which restricts parking in one place for more than 72 hours.   Then, on September 14, 2010, he was issued another ticket, citation # 1087102203, for a violation of LAMC §80.69 (A), which restricts vehicles higher than six feet from parking in certain areas. Although his disabled placard and plates expressly exempt him from this parking restriction, when he was cited he was parked on 3rd Ave., in the middle of the block, at least 100 feet from the intersection of 3rd Ave. and Rose Ave. The only sign regarding §80.69 (A) is at the intersection. On September 22, Butler submitted a written appeal to contest this ticket to the Los Angeles City Parking Violations Bureau. For the

past three years, both Butler and his wife parked their vehicles in the Rose Avenue parking lot during the day, close to where Butler performs his music and shows his art on the Boardwalk. With his deteriorating knee, Butler cannot walk very far. In addition, only one of his vehicles comes within the size restrictions recently imposed at the Rose Avenue parking lot, so if he is not operating the smaller vehicle, or if his wife drives separately to the Boardwalk, the larger vehicle is excluded from the public parking area despite having disability plates.

15.     Plaintiff **WILLIAM CAGLE** is a disabled individual within the meaning of federal and state law. **CAGLE** has a disabled placard clearly displayed on his vehicle at all times. He suffers from congestive heart failure. Among the effects of his condition is the build up of fluids in his body, including his legs, making it extremely difficult and painful for him to walk. He cannot stand for very long and has difficulty with his breathing and severe pain if he walks for more than a block. He has been a resident of Venice since 1979 and lived with his mother until her death in 1993, after which he became homeless. His sole source of income is approximately $930 a month from SSI. This is not enough to meet his basic needs, including rent, food, insurance and maintenance for his vehicle, and some of his medicine that is not covered by his insurance. On November 3, 2010, **CAGLE** was issued a citation for an expired parking meter, which he has appealed. In December, 2010, he was arrested and his vehicle was towed for a violation of LAMC § 85.02. He is afraid that he will be targeted again by the police, which is causing him to be stressed and is impacting his health.

16.     Plaintiff **TERRY HENDRICKSON** has lived in Venice for nearly a

decade.  Her husband recently passed away and her daughter moved out, leaving **HENDRICKSON** and her son living in their vehicle.  **HENDRICKSON** has a number of serious and chronic illnesses and physical disabilities.   She walks with a cane and sometimes uses a wheelchair.  She is a member of the Israel Levin Senior Center, which is located on the Venice Boardwalk at 201 Ocean Front Walk.  The Israel Levin Senior Center provides essential medical services and meals.   It also provides **HENDRICKSON** with computers for internet access and the opportunity to socialize with other people.  She regularly attends the 1:00 p.m. Friday Shabbat service.   To attend events at the Center, **HENDRICKSON** used to park in the Rose Avenue public lot.   The Rose Avenue facility is the closest parking to the Israel Levin center.  **HENDRICKSON** drives a vehicle that is more than 20-feet in length, so she is no longer allowed to park there.  As a result, she can no longer attend the Center and receive the services that she needs.  Since this parking restrictions started being enforced at the Rose Avenue lot, **HENDRICKSON** has not been able to attend Friday Shabbat services or see her friends.

17.    Plaintiffs **LUIS PACHECHO** and **DELLA FRANCO** are residents of Venice.  They live in a small apartment with their minor child.  Despite the fact that they are regularly housed, their vehicle was on a list of RVs given to the police by residents opposed to the homeless residing in Venice, making them a target for police enforcement against individuals suspected of residing in their vehicles in violation of LAMC §85.02.  Because of this, they keep a note on their dashboard, stating that they are housed and providing their telephone number.  On the morning of January 24, 2011, when plaintiff

**PACHECO** went to his car to go to work, he found a citation alleging that he had been parked longer than 72 hours. Plaintiff uses his vehicle to go to and from work and had worked as a valet parker at a restaurant in Beverly Hills the night before. Despite submission of a letter from his employer verifying his presence at work the night before, the citation has not been dismissed. On February 15, 2011, Plaintiffs came out to their vehicle and found a "Warning of Enforcement Action" for violations of Sec. 85.02, bearing the City seal and directing calls to the LAPD Pacific Area Watch Commander. Plaintiffs are concerned that they will continue to be targeted for bogus parking violations despite the fact that they have an apartment, use their vehicle every day to go to work, and otherwise comply with all applicable vehicle codes. They are also concerned that their vehicle will be towed illegally, like that of other plaintiffs in this action.

18.    Plaintiff **LOUIE GARCIA** was in his vehicle at 3 p.m. on the afternoon of January 2, 2011 when he felt it begin to move. He exited the vehicle and saw that it had been hooked up to a tow truck. LAPD Officer **BARRON** immediately threatened **GARCIA** with arrest and demanded his identification. **GARCIA** was cited for violating LAMC 80.73.2, parking in excess of 72 hours, and his vehicle was towed. Officer Munoz then entered the vehicle without consent. A month prior, plaintiff was approached by the same officers, who threatened plaintiff with arrest and confiscation of his vehicle if he did not leave the area. Plaintiff's vehicle has disabled plates and is therefore exempt under state law from time restrictions on parking unless the restrictions impose a total prohibition on anyone parking in a particular location at a particular time.

16

That is not the case with the 72-hour restriction since some cars may be parked in the area at all times.

19.    Plaintiff **CHRIS TAYLOR** was cited and arrested for illegal lodging in his vehicle on the morning of December 18, 2010, while he was awake.  On the previous evening, he slept at the Culver City shelter program.  The shelter requires individuals to leave its facility during the day.  **TAYLOR**, a long-time resident of Venice, spends his days in Venice.  Because he has no permanent residence, he keeps his property in his vehicle. When he is unable to stay at the shelter, plaintiff sleeps on the public sidewalks, as permitted by the settlement in *Jones v. City of Los Angeles*; nonetheless, he has been targeted and cited for violations of LAMC §41.18(d), even when he is doing nothing more than sitting and reading his Bible.  Plaintiff fears that he will continue to receive bogus citations as a result of being targeted because he is a homeless individual.

**Defendants:**

20.    Defendant **CITY OF LOS ANGELES** ("CITY") is a municipal entity with the capacity to sue and be sued.  The **CITY** is the legal and political government entity responsible for the actions of the Los Angeles Police Department, the Los Angeles Parking Violations Bureau, and the officials, agents, and employees of each of these entities and any presently unknown department or agency within the City which has participated in the policies, practices and customs challenged here.  The **CITY** is sued in its own right, and on the basis of the acts of its officials, agents, and employees.

21.    Defendant **CAPT. JON PETERS** is the Captain III for Pacific Division, which includes the Venice area.  Capt. **PETERS** is the City employee responsible for

directing the task force targeting suspected homeless individuals. The individual officers are acting at the direction of Defendant **PETERS**, who knows or should know that the laws are being enforced in an unlawful manner and that, in particular, state laws exempting disabled drivers from certain locally enacted parking restrictions make the plan and execution of the plan by **PETERS** unlawful. He is sued in his individual capacity.

22.     Defendant LAPD Officer **R. YOSHIOKA**, serial number 36027, is a member of the Pacific Division task force targeting suspected homeless individuals in the Venice area. Defendant **YOSHIOKA** has violated the rights of plaintiffs **STEVE JACOBS-ELSTEIN**, **CAGLE** and **WARIVONCHIK**, among others, in the deliberately unlawful enforcement of the vehicle provisions against plaintiffs. He is sued in his individual capacity.

23.     Defendant LAPD Officer **PRINCE**, serial number 37989, is a member of the Pacific Division task force targeting suspected homeless individuals in the Venice area. Defendant **PRINCE** has violated the rights of plaintiffs **CAGLE**, **ECKHART** and **DESERTRAIN**, among others, in the deliberately unlawful enforcement of the vehicle provisions against plaintiffs. He is sued in his individual capacity.

24.     Defendant LAPD Officer **GONZALES**, serial number 38393, is a member of the Pacific Division task force targeting suspected homeless individuals in the Venice area. Defendant **GONZALES** has violated the rights of plaintiff **STEVE JACOBS-ELSTEIN**, among others, in threatening arrest and deliberately illegally enforcing the vehicle provisions against plaintiffs. He is sued in his individual capacity.

25.     Defendant LAPD Officer **BARRON**, serial number 36530, is a member of the Pacific Division task force targeting suspected homeless individuals in the Venice area. Defendant **BARRON** has violated the rights of plaintiff **GARCIA**, among others, in threatening arrest and illegally enforcing the vehicle provisions against plaintiffs. He is sued in his individual capacity.

26.     Defendants DOE 1-10 are officers with the LAPD who directed the policies, practices and customs that resulted in the violation of Plaintiffs' rights.  The DOE plaintiffs also include officers who were involved in the detention and/or arrest of plaintiffs.  Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1-10, inclusive, and therefore sue these defendants by such fictitious names.  DOES 1-10 are sued on the basis that one or more of the DOE defendants participated in and/or failed to prevent the detention and arrest of plaintiffs while plaintiffs were engaged in lawful First Amendment activity, and that one or more of the DOE defendants used force to detain, handcuff and arrest the plaintiffs without probable cause.  Plaintiffs will amend this complaint to allege the true names and capacities of each of the DOE defendants as such information is ascertained.  Plaintiffs are informed and believe and based thereon allege that defendants DOES 1-10 are responsible in some manner for the damages and injuries the plaintiffs suffered.

## GENERAL ALLEGATIONS

27.     Each of the acts complained of herein was taken, and each violation of plaintiffs' rights occurred, pursuant to the policies, practices, or customs of the LAPD.

28.     In doing each of the constitutional violations complained of herein, defendants, their officials, agents, and employees were acting under color of law.

29.     Plaintiffs are informed and believe and on such basis allege that at all times relevant to this action, each of the individual defendants, including DOES 1 through 10, were the agents, servants and/or employees of the defendant CITY, and were acting all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer, the City of Los Angeles.

30.     The acts of defendants were done with malice toward plaintiffs because they are perceived to be homeless and "habitating" in vehicles on public property.

## FIRST CAUSE OF ACTION

### FOURTH AMENDMENT AND 42 U.S.C. § 1983;
### CALIF. CONSTITUTION, ART. I, sec. 13
### Violation of the Right to Be Free from Unreasonable Seizure
### (By Plaintiffs Desertrain, Jacobs-Elstein, Warivonchik, and Garcia)

31.     Plaintiffs reallege and incorporate herein by reference the allegations contained previously and subsequently in this Complaint.

32.     The acts by defendants described above constitute violations of plaintiffs' right to be free from an unreasonable seizure as guaranteed by the Fourth Amendment to the U.S. Constitution.  Defendants detained and seized **DESERTRAIN, JACOBS-ELSTEIN**, **WARIVONCHIK, CAGLE** and **GARCIA** without probable cause, and handcuffed and arrested **JACOBS-ELSTEIN** and **TAYLOR** without lawful basis and because each was believed to be a homeless individual sleeping in his or her vehicle on a public street in Venice in violation of Los Angeles Municipal Code § 85.02.

33.     The acts by defendants described above constitute a violation of plaintiff

20

**JACOBS-ELSTEIN**'s right to be free from unreasonable seizure in an additional way as his vehicle was seized despite the presence of two licensed drivers who offered to drive his vehicle from the scene, but the  police refused to allow them to do so.

34.    As a direct result of defendants' unlawful conduct, plaintiffs have suffered violations of their Fourth Amendment rights.  Plaintiffs fear that they will continue to be subject to violations of their Fourth Amendment rights as a result of defendants' unlawful efforts to deter and prevent them from being present in Venice during the day.

35.    As a direct and proximate consequence of defendants' unlawful actions, plaintiffs have suffered damages, including loss of their constitutional rights, pain and suffering, humiliation and embarrassment,  compensatory damages, and punitive damages against the individual defendants, as permitted by law.

## SECOND CAUSE OF ACTION

**FIFTH AMENDMENT AND 42 U.S.C. § 1983;**
**CALIF. CONSTITUTION, ART. I, sec. 7**
**Violation of the Right to Due Process**
**(By All Plaintiffs)**

36.    Plaintiffs reallege and incorporate herein by reference the allegations contained previously and subsequently in this Complaint.

37.    The acts by defendants described above constitute a violation of the rights of plaintiffs **JACOBS-ELSTEIN, GARCIA,** and **TAYLOR** right to be free from a "takings" of their property by the government without due process of law.  Plaintiffs' vehicles were improperly seized and towed without any lawful justification when they were lawfully parked on a public street and, in the case of **JACOB-ELSTEIN,** when there were two licensed and qualified drivers ready and willing to drive the vehicle away

after plaintiff's arrest.  Defendants' refusal to permit them to do so resulted in plaintiff having to pay a fine to recover his vehicle.

38.     The issuance of citations to each of the plaintiffs for traveling through or being present on the public streets in Venice violates their rights to intrastate travel, which is included within the due process and privileges and immunities clause of the California Constitution, Article I, sec. 7.

39.     As a direct result of defendants' unlawful conduct, plaintiffs have suffered violations of their due process rights under the Fifth Amendment and related provisions of the California Constitution.   They fear that they will continue to be subject to such violations as a result of defendants' efforts to deter and prevent persons believed to be homeless and living in their vehicles from being present in Venice even during the day.

40.     As a direct and proximate consequence of defendants' unlawful actions, plaintiff has suffered damages, including loss of his constitutional rights, pain and suffering, humiliation and embarrassment.  He is entitled to compensatory damages and punitive damages against the individual defendants, as permitted by law.

### THIRD CAUSE OF ACTION

### FOURTEENTH AMENDMENT - EQUAL PROTECTION; CALIFORNIA CONSTITUTION, ARTICLE I, sec. 13 (By All Plaintiffs)

41.     Plaintiffs reallege and incorporate by reference all previous and subsequent paragraphs alleged in this Complaint.

42.     Defendants have targeted Plaintiffs based on a combination of their perceived homelessness and their mere presence in Venice.  As a result of this targeting, Plaintiffs have been denied the equal protection of the laws under the Vehicle Code

provisions applicable to operators of vehicles to whom disability placards or plates have been issued. Plaintiffs have also been subjected to a tortured construction of LAMC 85.02 and subjected to harassment, threats and arrests during day time hours when they are using their vehicles for transportation like any other driver and even when they do not sleep in their vehicle on public streets at night.

       a.    as people with disabilities, and as homeless people, they have been subject to selective and discriminatory enforcement of the law, which has had both a discriminatory intent and a discriminatory purpose;

       b.    as people with disabilities, and as homeless people, they have been the subject of selective and discriminatory enforcement, which has been the result of bias, negative attitudes, animosity and fear directed at the homeless and disabled, and has been motivated by a desire to harm and punish a politically unpopular group;

       c.    as people with disabilities, and as homeless people, they have been the subject of selective and discriminatory enforcement of the law and have been intentionally treated differently from others similarly situated and with no rational basis for the difference in treatment.

43.    Defendants' actions were done willfully, maliciously and unlawfully.

44.    As a direct and proximate consequence of Defendants' actions, Plaintiffs have suffered, and continue to suffer, a loss of constitutional rights, pain and suffering, financial losses, and are entitled to compensatory damages for injury to their person and, as to the individual defendants, punitive damages.

**FOURTH CAUSE OF ACTION**

23

**Americans with Disabilities Act, 42 U.S.C. § 12132**
**(By All Plaintiffs Except JACOBS-ELSTEIN, PACHECO, FRANCO and**
**TAYLOR)**

45.     Plaintiffs reallege and incorporate by reference all previous and subsequent Paragraphs alleged in this Complaint.

46.     Plaintiffs are individuals with disabilities within the meaning of 42 U.S.C. § 12131(2).  The actions of Defendants described herein were done with the intent to discriminate against people with disabilities.

47.     Title II of the ADA prohibits Defendants from discriminating on the basis of disability, or excluding from participation or denying benefits of the services, programs, or activities of a public entity.  42 U.S.C. § 13132.

48.     Defendants have violated the ADA by:

    a.      issuing citations in violation of Veh. Code § 22511.5 to people with disabled placards and plates in an effort to force them out of Venice;

    b.      excluding RVs and larger vehicles from the Rose Avenue parking lot, which is intended to, and has, a disparate impact on persons with disabilities and prevents them from parking at the beach, including near certain service providers along the Venice Boardwalk.

49.     As a consequence of Defendants' actions, the affected Plaintiffs are entitled to all available relief under the ADA.

24

## FIFTH CAUSE OF ACTION

### Rehabilitation Act of 1973, 29 U.S.C. § 794
### (By Plaintiffs Except JACOBS-ELSTEIN, PACHECO, FRANCO and TAYLOR)

50.   Plaintiffs reallege and incorporate by reference all previous and subsequent Paragraphs alleged in this Complaint.

51.   Plaintiffs are individuals with disabilities within the meaning of 29 U.S.C. § 705(20).   The actions of Defendants alleged herein were done with the intent to discriminate against people with disabilities.

52.   Section 504 of the Rehabilitation Act prohibits Defendants from discriminating on the basis of disability in, or excluding from participation or denying benefits of, any program or activity of any entity receiving Federal financial assistance. 42 U.S.C. § 13132.

53.   Defendants have violated the Rehabilitation Act by:

    a.    issuing citations in violation of Veh. Code § 22511.5 to people with disabled placards and plates in an effort to force them out of Venice;

    b.    excluding RVs and larger vehicles from the Rose Avenue parking lot, which is intended to, and has, a disparate impact on persons with disabilities and prevents them from parking at the beach, including near certain service providers along the Venice Boardwalk.

54.   As a consequence of Defendants' actions, Plaintiffs and the class members are entitled to all available relief under Section 504 of the Rehabilitation Act.

### SIXTH CAUSE OF ACTION

25

**THREATS, INTIMIDATION OR COERCION**
**California Civil Code §52.1**
**(By All Plaintiffs)**

55.    Plaintiffs reallege and incorporate by reference all previous and subsequent Paragraphs alleged in this Complaint.

56.    By their conduct, defendants have interfered by threats, intimidation, or coercion, or attempted to interfere by threats, intimidation, or coercion, with the exercise or enjoyment of Plaintiffs rights as secured by the First and Fourth and Amendments to the United States Constitution and of the rights secured by the Constitution and laws of the state of California, including but not limited to California Constitution Art. I, sec. 7 and 13, and the federal and state statutory protections guaranteed to individuals with disabilities, as described above, including disabled homeless persons.

57.    There was no lawful justification for defendants to threaten, intimidate or coerce any of the plaintiffs, or to attempt to use threats, intimidation or coercion to interfere with Plaintiffs' rights to be present on the public streets and beach parking locations of the Venice area of Los Angeles. Defendants' actions were taken with malice and oppression to deter and/or prevent plaintiffs' from exercising their protected constitutional and statutory rights.

58.    As a direct and proximate consequence of defendants' actions, plaintiffs suffered, and continue to suffer pain and suffering, humiliation and embarrassment and are entitled to injunctive relief and compensatory damages for injury to their person, and punitive damages against the individual defendants as permitted by law.

59.    Defendants' actions were done willfully, maliciously and unlawfully.

26

60.     As a direct and proximate consequence of Defendants' actions, Plaintiffs have suffered, and continue to suffer, a loss of their constitutional rights, pain and suffering, financial losses, and are entitled to damages for injury to their persons and, as to the individual defendants, all damages authorized by Civil Code §52, and all other applicable laws, including treble damages as permitted by law.

## SEVENTH CAUSE OF ACTION

### California Civil Code §54
### (By Plaintiffs Except JACOBS-ELSTEIN, PACHECO, FRANCO and TAYLOR)

61.     Plaintiffs reallege and incorporate by reference all previous and subsequent Paragraphs alleged in this Complaint.

62.     Plaintiffs are individuals with disabilities within the meaning of California Civil Code §54. Pursuant to this statutory right, they are entitled to the full and free use of public streets and parking lots.

63.     Defendants' policies target Plaintiffs on the basis of their disabilities and their presence in the Venice area of Los Angeles. As a consequence, Defendants' policies deny Plaintiffs full and equal access to the public streets and parking areas by citing them for violations of the Vehicle Code from which they are expressly exempt pursuant to Vehicle Code § 21511.1.

64.     Defendants' actions were done willfully, maliciously and unlawfully.

65.     As a direct and proximate consequence of Defendants' actions, Plaintiffs have suffered, and continue to suffer, a loss of their constitutional rights, pain and suffering, and damages for injury to their persons as authorized by Civil Code §54.3.

27

**EIGHTH CAUSE OF ACTION**

**California Civil Code §55**
**(By Plaintiffs Except JACOBS-ELSTEIN, PACHECO, FRANCO and TAYLOR)**

66.     Plaintiffs reallege and incorporate by reference all previous and subsequent Paragraphs alleged in this Complaint.

67.     Plaintiffs are individuals with disabilities within the meaning of California Civil Code §54 et seq.  Pursuant to this statutory right, they are entitled to full and equal access to public streets and parking areas.

68.     Defendants' policies target Plaintiffs on the basis of their disabilities and their presence in the Venice area of Los Angeles.  As a consequence, Defendants' policies deny Plaintiffs' equal access to the public streets and parking areas by citing plaintiffs for violations of the Vehicle Code from which they are expressly exempted by VC § 22511.5.

69.     Defendants' actions were done willfully, maliciously and unlawfully.

70.     As a direct and proximate consequence of Defendants' actions, Plaintiffs have suffered, and continue to suffer, a loss of their rights to full and free access to the streets and public parking areas.   The failure to provide for parking for the vehicles of disabled individuals is a failure to allow any accommodation for their disabilities.

71.     Plaintiffs are entitled to injunctive relief to enjoin the ongoing unlawful policies and practices of Defendants targeting disabled drivers in Venice for criminalization, rather than services, as part of the City's homeless reduction strategy.

**NINTH CAUSE OF ACTION**

**INJUNCTIVE RELIEF**

72.   Plaintiffs reallege and incorporate herein by reference the allegations contained previously and subsequently in this Complaint.

73.   Defendants have engaged in a course of unlawful conduct aimed at deterring and preventing plaintiffs from traveling or parking on public streets and public beach parking lots in Venice.  As part of that unlawful course of conduct, defendants have repeatedly attempted to intimidate plaintiffs, detained and cited them, and threatened them with arrest if they are lawfully present in Venice.

74.   Plaintiffs want to be present in public places in Venice and to park lawfully on the streets and in beach parking lots, but are fearful they will suffer repeated violations of their rights due to defendants' policies, practices or customs if they are in these areas.

75.   Plaintiffs have suffered irreparable harm and, absent extraordinary relief from this Court, will continue to suffer irreparable harm by being subjected to unwarranted and unlawful violations of their Fourth, Fifth and Fourteenth Amendment rights, as well as their rights under the California Constitution and federal and statutory law prohibiting discrimination on the basis of disability.  Damages will not be an adequate remedy at law because damages cannot adequately compensate plaintiffs for the loss of their fundamental constitutional rights and their statutory rights.  An actual controversy has now arisen and exists between plaintiffs and defendants regarding the challenged policies, practices or customs implemented and engaged in by defendants with respect to plaintiffs' travel and parking on the streets of Venice.  Plaintiffs contend

that defendants are engaging in unconstitutional conduct in violation of the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution, Article I, sec. 7 and 13 of the California Constitution, and the federal and state statutory provisions barring discrimination on the basis of disability, all in an apparent effort to harass and intimidate individuals who are without permanent shelter and are homeless within the definition of federal law. The actions of defendants are part of a sweeping suppression effort to drive the homeless from the Venice area of Los Angeles.

76.     Plaintiffs are informed and believe, and on that basis allege that defendants dispute these contentions and contend otherwise.

77.     Plaintiffs desire and request a judicial determination of their constitutional rights and the constitutional limitations of conduct by defendants, and specifically that plaintiffs' contentions regarding the protected nature of their activity are correct.

78.     This declaration is necessary and appropriate at the present time in order to set at rest the constitutional and statutory rights of plaintiffs and the obligations of the parties with respect to those rights.

## PRAYER FOR RELIEF

1.     A temporary restraining order, enjoining defendants and their officers, agents and employees from interfering with Plaintiffs' constitutional rights under the Fourth, Fifth and Fourteenth Amendments and California Constitution Article I, §§7 and 13;

2.     A temporary restraining order, enjoining defendants and their officers,

agents and employees from interfering with Plaintiffs' rights to park on public streets and in public beach parking lots as guaranteed by the California Vehicle Code § 22511.5 and the federal and state statutory provisions prohibiting discrimination on the basis of disability and requiring reasonable accommodations for disabilities;

       3.    A preliminary and permanent injunction, enjoining defendants, their officers, agents and employees from citing plaintiffs for violations of various restrictions on parking in public streets based on the refusal of defendants to apply the express exemptions for disabled drivers in the California Vehicle Code §21511.5;

       4.    For a declaration that defendants' past, present and threatened future actions violate Plaintiffs' rights to be free from unreasonable seizure under the Fourth Amendment;

       5.    For a declaration that defendants' past, present and threatened future actions in issuing parking violation citations to individuals with disability placards and plates on their vehicles violate plaintiffs' rights under federal and state statutes prohibiting discrimination against persons with disabilities and requiring reasonable accommodation of disabilities in access to public streets and other facilities, including parking lots;

       6.    For a declaration that defendants' past, present and threatened future actions in issuing parking violation citations to individuals with disability placards and plates on their vehicles violate plaintiffs' rights to intrastate travel;

       7.    For a declaration that defendants' past, present and threatened future actions violate Plaintiffs' rights pursuant to California Civil Code §52.1 to be free from

interference with the exercise of their constitutional and statutory rights by threats, intimidation or coercion, or attempted threats, intimidation or coercion;

        8.    For expungement of all arrest records and citations issued to plaintiffs;

        9.    For costs of suit pursuant to 28 U.S.C. §1920. 42 U.S.C. §1988 and California Civil Code §§52.1(h) and 1021.5;

        10.    For attorneys' fees pursuant to 42 U.S.C. §1988, California Civil Code §§1021.5 and 52.1(h); and

        11.    For other such relief as this Court deems just and proper.

Dated: April 15, 2011        Respectfully submitted,

                      LEGAL AID FOUNDATION OF LOS ANGELES
                      LITT, ESTUAR & KITSON LLP
                      LAW OFFICE OF CAROL A. SOBEL
                      LAW OFFICE OF MICHAEL RAPKIN

                      _____/s/_____
                      BY: CAROL A. SOBEL
                      Attorneys for Plaintiffs