**CARMEN A. TRUTANICH**, City Attorney - **SBN 86629x**
**GARY G. GEUSS**, Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney
**SUREKHA A. PESSIS**, Deputy City Attorney - **SBN 193206**
**WENDY SHAPERO**, Deputy City Attorney - **SBN 198739**
Email: Wendy.Shapero@lacity.org
200 North Main Street
6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-7029, Fax No.: (213) 978-8785

*Attorneys for Defendants,* **CITY OF LOS ANGELES, JON PETERS, RANDY YOSHIOKA, JASON PRINCE, BRIANNA GONZALES,** and **RAUL BARRON**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CHEYENNE DESERTRAIN, STEVE JACOBS-ELSTEIN, BRADFORD ECKHART, PATRICIA WARIVONCHIK, LEROY BUTLER, WILLIAM CAGLE, TERRY HENDRICKSON,

      *Plaintiffs,*

      v.

CITY OF LOS ANGELES, a municipal entity, DOES 1-10, as individuals,

      *Defendants.*

CASE NO.: CV10-09053 RGK (PJWx)
*Hon. R. Gary Klausner, Ctrm. 850, Roybal*
*Mag. Patrick J. Walsh, Ctrm. 23*

**DEFENDANTS CITY OF LOS ANGELES, ET AL.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

**[Fed.R.Civ.Proc. 56]**

**[Separate Statement of Uncontroverted Material Facts and Conclusions of Law, Declarations, Exhibits, and Proposed Order filed concurrently herewith]**

Date:        October 17, 2011
Time:        9:00 a.m.
Courtroom:  850

NOTICE IS HEREBY GIVEN that on October 17, 2011, at 9:00 a.m., the

Honorable R. Gary Klausner, presiding in Courtroom 850 of the United States District

Court, located at 255 East Temple Street, Los Angeles, California 90012, is expected

to rule upon Defendants City of Los Angeles, et al.'s motion pursuant to FRCP 56, for

an order for summary judgment or partial summary judgment based on the following

grounds:

1

1 **FIRST CAUSE OF ACTION FOR VIOLATION OF THE FOURTH**
2 **AMENDMENT AND CALIFORNIA CONSTITUTION ARTICLE I, SECTION**
3 **13 BY PLAINTIFFS DESERTRAIN, JACOBS-ELSTEIN, WARIVONCHIK,**
4 **CAGLE, TAYLOR, AND GARCIA**

5 1.    Defendants are entitled to summary judgment because Plaintiffs cannot prove
6        they were unreasonably detained, searched, cited, or arrested under the Fourth
7        Amendment or Article I, Section 13 of the California Constitution.  In the
8        alternative, the defendant officers are entitled to qualified immunity for the
9        claims alleged under 42 U.S.C. Section 1983 and immunity under Government
10       Code section 821.6 for all state law claims relating to the issuance of citations.

11 **SECOND CAUSE OF ACTION FOR VIOLATION OF THE FIFTH**
12 **AMENDMENT AND ARTICLE I, SECTION 7 OF THE CALIFORNIA**
13 **CONSTITUTION BROUGHT BY ALL PLAINTIFFS**

14 1.    The Defendant officers were entitled to impound plaintiffs' vehicles under the
15       community-caretaking exception to the warrant requirement under the Fourth
16       Amendment.  In the alternative, the defendant officers are entitled to qualified
17       immunity for the claims alleged under 42 U.S.C. Section 1983 and immunity
18       under Government Code section 821.6.

19 2.    Plaintiffs cannot prove their right to intrastate travel has been violated under
20       federal or state law.

21 3.    Plaintiffs cannot prove a violation of the Takings Clause of the Fifth
22       Amendment.

23 **THIRD CAUSE OF ACTION FOR VIOLATION OF THE EQUAL**
24 **PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND**
25 **ARTICLE I, SECTION 13 OF THE CALIFORNIA CONSTITUTION BY ALL**
26 **PLAINTIFFS**

27 1.    Plaintiffs cannot prove a violation of the Equal Protection Clause because there
28       is no evidence of intentional discrimination based on their being homeless

1   and/or disabled.  Further, Plaintiffs cannot demonstrate that similarly situated

2   people were treated differently from themselves.  In the alternative, the

3   defendant officers are entitled to qualified immunity for the claims alleged

4   under 42 U.S.C. Section 1983

5   **FOURTH AND FIFTH CAUSES OF ACTION FOR VIOLATION OF THE**

6   **AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12132 AND THE**

7   **REHABILITATION ACT OF 1973, 29 U.S.C. § 794**

8   1.   Based on representations made by Plaintiffs' counsel in emails, Plaintiffs are

9        not proceeding on the federal disability claims.  (See Declaration of Wendy

10       Shapero and Exhibits attached thereto).  However, even if the

11       ADA/Rehabilitation Act claims were being pursued, Defendants would be

12       entitled to summary judgment because there is no evidence of intentional

13       discrimination.

14  **SIXTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CIVIL**

15  **CODE SECTION 52.1 BY ALL PLAINTIFFS**

16  1.   Defendants are entitled to summary judgment because Plaintiffs did not suffer a

17       violation of a constitutional or statutory right.  Further, Plaintiffs cannot prove

18       the violation of any alleged right was accomplished by threats, coercion, or

19       intimidation.

20  **SEVENTH AND EIGHTH CAUSES OF ACTION FOR VIOLATION OF CIVIL**

21  **CODE SECTIONS 54 AND 55 BY ALL PLAINTIFFS EXCEPT JACOBS-**

22  **ELSTEIN, PACHECO, AND FRANCO**

23  1..  Defendants are entitled to summary judgment because they are immune from all

24       claims related to the issuance of parking citations under Government Code

25       section 821.6.  Further, Plaintiffs cannot prove the alleged unlawful actions were

26       taken against them by virtue of Plaintiffs' disabilities.

27  / / /

28  / / /

**NINTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF**

1. Plaintiffs' inability to prove any violation of law precludes their entitlement to injunctive relief.

Pursuant to Local Rule 7-3, counsel for Defendants and Plaintiffs met and conferred telephonically regarding filing the Motion for Summary Judgment on August 26 and 27, 2011 as well as through a series of emails. (See Declaration of Wendy Shapero).

This motion is based upon the allegations of Plaintiffs' First Amended Complaint, the Memorandum of Points and Authorities attached hereto, the Separate Statement of Uncontroverted Material Facts and Conclusions of Law, the Exhibits, the Declarations of Wendy Shapero, Randy Yoshioka, Jason Prince, and Brianna Gonzales, the Proposed Order, and/or any other oral and documentary evidence presented to the Court at the time of the hearing.

DATED: September 13, 2011

**CARMEN A. TRUTANICH**, City Attorney
**GARY G. GEUSS**, Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney
**SUREKHA A. PESSIS,** Deputy City Attorney

By _____
**WENDY SHAPERO**, Deputy City Attorney

*Attorneys for Defendants,* **CITY OF LOS ANGELES, JON PETERS, RANDY YOSHIOKA, JASON PRINCE, BRIANNA GONZALES,** and **RAUL BARRON**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ..................... 1

1.  STATEMENT OF FACTS ...................................... 1

   a.  LAPD CREATES A VENICE BEACH TASK FORCE TO ADDRESS A RISE IN CRIME AND RESIDENTIAL COMPLAINTS OF PEOPLE LIVING IN THEIR VEHICLES ON PUBLIC STREETS ............. 1

   b.  CHEYENNE DESERTRAIN ................................. 1

   c.  STEVE JACOBS-ELSTEIN ................................. 2

   d.  BRADFORD ECKHART ................................... 4

   e.  PATRICIA WARIVONCHIK ............................... 5

   f.  LEROY "ABRAHAM" BUTLER ............................ 6

   g.  WILLIAM CAGLE ....................................... 6

   h.  LUIS PACHECO AND DELLA FRANCO ..................... 7

   i.  CHRIS TAYLOR ......................................... 7

2.  PLAINTIFFS CANNOT PROVE A VIOLATION OF ANY CONSTITUTIONAL RIGHT AND/OR THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ................................ 8

   a.  FOURTH AMENDMENT CLAIMS ......................... 8

   b.  THE OFFICERS WERE ENTITLED TO IMPOUND PLAINTIFFS' VEHICLES UNDER THE COMMUNITY-CARETAKING EXCEPTION TO THE WARRANT REQUIREMENT ............. 12

   c.  PLAINTIFFS CANNOT PROVE THEIR FIFTH AMENDMENT TAKINGS CLAIM ..................................... 13

   d.  PLAINTIFFS' RIGHT TO INTRASTATE TRAVEL HAS NOT BEEN RESTRICTED ................................... 14

///

i

1  **TABLE OF CONTENTS (Con't)**                                              **Page**

2        e.   EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT

3             AND ARTICLE I, SECTION 7 OF THE CALIFORNIA . . . . . . . . . . . . 15

4        f.   NO CONSTITUTIONAL VIOLATION MEANS NO

5             HARASSMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

6  3.   PLAINTIFFS CANNOT PROVE MONELL LIABILITY  . . . . . . . . . . . . . . 16

7  4.   PLAINTIFFS CANNOT PROVE A VIOLATION OF CIVIL CODE

8       SECTIONS 54 AND 55  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9  5.   PLAINTIFFS CANNOT PROVE A CLAIM FOR VIOLATION OF

10      CIVIL CODE SECTION 52.1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11 6.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

### CASES                                                                 Page

*Asgari v. City of Los Angeles,*
    15 Cal. 4th 744, 52 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Amerisource Corp. v United States*
    525 F.3d 1149, 1153 (Fed.Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Amylou R. v. County of Riverside*
    28 Cal. App. 4th 1205, 1208 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Azpitarte v. King County*
    2011 U.S. Dist. LEXIS 66859, 6-7 (W.D. Wash. June 22, 2011) . . . . . . . . . . 16

*Barren v. Harrington*
    152 F.3d 1193, 1194-95 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Beck v. Ohio*
    379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964) . . . . . . . . . . . . . . . . 10

*Bennis v. Michigan*
    516 U.S. 442, 452, 116 S. Ct. 994, 134 L. Ed. 2d 68 (1996) . . . . . . . . . . . . . . 13

*Britton v. Maloney*
    196 F.3d 24, 28-31 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cabesuela v. Browning-Ferris Indus*
    68 Cal. App. 4th 101, 111 (Cal. App. 6th Dist. 1998) . . . . . . . . . . . . . . . . . . 20

*Cady v. Dombrowski*
    413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973) . . . . . . . . . . . . . 9, 11

*Cappucio, Inc. v. Harmon*
    208 Cal. App. 3d 1496, 1501 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Chambers v. Maroney*
    399 U.S. 42, 51-52, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970) . . . . . . . . . . . . . 11

*City of Cleburne v. Cleburne Living Center, Ind.*
    473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) . . . . . . . . . . . . . 15

*City of Los Angeles v. Heller*
    475 U.S. 796, 799, 89 L.Ed.2d 806, 106 S.Ct. 1571 (1986) . . . . . . . . . . . . . . 16

*County of Los Angeles v. Superior Court (West)*
    181 Cal.App.4th 218 (2d Dist. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Davidson v. City of Tucson*
    924 F. Supp. 989, 993 (D. Ariz. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iii

**CASES (Con't)** Page

*DePiero v. City of Macedonia*
   180 F.3d 770, 789 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Edson v. City of Anaheim*
   63 Cal.App.4th 1269, 1272-1273 (1998) . . . . . . . . . . . . . . . . . . . . . 20

*Farmer v. Brennan*
   511 U.S. 825, 841, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) . . . . . . . . . . . . 17

*Gaut v. Sunn*
   810 F.2d 923, 925 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hall v. City of Los Angeles*
   710 F. Supp. 2d 984 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . 17

*In Re Demergian*
   48 Cal.3d 284, 291–292 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In Re Lance W.*
   37 Cal. 3d 873, 881 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Joel v. City of Orlando*
   232 F.3d 1353, 1357 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 15

*Karam v. City of Burbank*
   352 F.3d 1188, 1194 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 10

*Lee v. City of Los Angeles*
   250 F.3d 668, 687 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Love v. City of Monterey*
   37 Cal.App. 4th, 562, 566-67 (1995) . . . . . . . . . . . . . . . . . . . . . . . 19

*Miranda v. City of Cornelius*
   429 F.3d 858, 862 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Monell v. Department of Social Services*
   436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) . . . . . . . . . . . . . . 16, 17

*Munson v. Del Taco, Inc.*
   46 Cal. 4th 661 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Oltarzewski v. Ruggiero*
   830 F.2d 136, 139 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pearson v. Callahan*
   129 S. Ct. 808, 818 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Polk County v. Dodson*
   454 U.S. 312, 326, 102 S. Ct. 445, 70 L. Ed.2d 509 (1981) . . . . . . . . . . . . . 16

*Ramirez v. City of Buena Park*
   560 F.3d 1012, 1024-25 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . 12

**CASES (Con't)**                                                                          **Page**

*Randle v. City of San Francisco*
   186 Cal. App. 3d 449 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ritschel v. City of Fountain Valley*
   137 Cal. App. 4th 107, 124-25 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Saucier v. Katz*
   533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) . . . . . . . . 8

*South Dakota v. Opperman*
   428 U.S. 364, 367, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976) . . . . . . . . . . 11, 12

*Stoot v. City of Everett*
   582 F.3d 910, 929-30) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sullivan v. Marshall*
   628 F.Supp. 1080, 1083 (D. Mass. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Thompson v. Davis*
   295 F.3d 890, 895 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tobe  v. City of Santa Ana*
   9 Cal. 4th 1069, 1100 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. $25,000 U.S. Currency*
   853 F.2d 1501, 1505 (9th Cir. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. King*
   990 F.2d 1552, 1560-1561 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Venegas v. County of Los Angeles*
   32 Cal.4th 820, 841–843 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Village of Willowbrook v. Olech*
   528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) . . . . . . . . . . . 15

*Warden, Md. Penitentiary v. Hayden*
   387 U.S. 294, 309-10, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967) . . . . . . . . . . . 14

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank*
   473 U.S. 172, 194, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985) . . . . . . . . . . . . . 14

**CALIFORNIA CONSTITUTION**

Article I
§ 7 ................................................... 12, 14, 15
§ 13 ................................................... 12
§ 24 ................................................... 14

**UNITED STATES CONSTITUTION**

Fourth Amendment ...................................... 8, 9, 10, 11, 12
Fifth Amendment ....................................... 12, 13, 14
Fourteenth Amendment ................................. 15

**STATUTES**

42 United States Code
§ 1983 ................................................ 9, 16

California Civil Code
§ 51 .................................................. 18
§ 52.1 ................................................ 19, 20
§ 52.1(j) ............................................. 20
§ 54 .................................................. 17, 18
§ 54(a) ............................................... 17
§ 54(c) ............................................... 18
§ 54.1 ................................................ 18
§ 55 .................................................. 17, 18

California Government Code
§ 815.2(b) ............................................ 19
§ 821.6 ............................................... 18, 19

Vehicle Code
§ 24002 ............................................... 9
§ 24252 ............................................... 9
§ 40200 ............................................... 19

Los Angeles Municipal Code
§ 80.69 ............................................... 6
§ 80.69(B) ............................................ 1
§ 80.69(C) ............................................ 2
§ 80.73.2 ............................................. 6
§ 85.02 ............................... 2, 3, 4, 5, 6, 7, 9, 10, 11, 17

1               **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **1.**     **Statement of Facts**

3  **a.**     **LAPD Creates a Venice Beach Task Force to Address a Rise in Crime and**

4         **Residential Complaints of People Living in Their Vehicles on Public Streets**

5       In 2010, the Venice area was experiencing an increase in crime due to a large

6 criminal transient population.  In addition, community members were complaining

7 about people living in their cars and oversize vehicles in residential areas that were

8 responsible for leaving trash on the streets.  Defendants' Separate Statement of

9 Material Facts # 1 (hereinafter "MF#").  In response, the Pacific Division created a task

10 force by adding officers to supplement the work of the Senior Lead Officers.  (MF # 2).

11 As part of addressing the issue, the LAPD researched ways to implement the Streets to

12 Homes program.  This included identifying parking lots where people in vehicles could

13 live in their cars overnight in the Venice area. (MF # 3).  In addition, the Pacific

14 Division sought to work with church groups to help provide information about  social

15 services to the homeless. (MF # 4).  LAPD's Pacific Division distributes hygiene kits,

16 clothing for the homeless, and has also found some housing for the homeless.  (MF #5).

17 **b.**     **Cheyenne Desertrain**

18       Cheyenne Desertrain is homeless and disabled.  (MF #6).  She owns a

19 recreational vehicle ("RV") and a 1987 Mercedes 300 which is in poor condition.  (MF

20 # 7 ).  When away from her RV, she was issued a parking ticket by non-defendant

21 LAPD Officer Quesada on September 13, 2010 for violation of Los Angeles Municipal

22 Code § 80.69(B)(vehicles six feet height or more within 100 feet of intersection).  (MF

23 # 8).  She believes the ticket was unlawful because her RV was 44 feet away from the

24 sign post that limits vehicles more than six feet and the arrow on the sign was pointing

25 in the opposite direction from where her vehicle was parked.   (MF # 9 ).  Her vehicle

26 had a disability placard on the front and back. (MF # 10).

27       On October 16, 2010, her RV was parked on Hampton Street after 6:00 p.m. (MF

28 # 11). Later that evening, Desertrain believes she was the victim of a drive-by kicking

1   by two LAPD bike patrol officers. (MF # 12).  Desertrain was inside her RV when she
2   heard a thump outside her vehicle around 7:00 or 7:30 p.m. (MF # 13)  While not sure
3   who the officers were, Desertrain believes it was Officer Quesada, the officer who
4   issued the first ticket. (MF # 14). She never spoke to the officers and she was not cited
5   for anything.  (MF # 15).

6          On November 3, 2010, she was issued a citation for violation of LAMC §
7   80.69(C) being parked in excess of 2 hours. (MF #16).  Her RV was parked on
8   Hampton south of Rose Avenue which has posted time limit parking signs.  (MF # 17).
9   Desertrain confronted LAPD Officer Prince about why he was issuing her a citation
10  when her disabled plates exempted her.  He allegedly told her he was instructed to
11  issue a citation to any RV.  (MF # 18).  Officer Prince was professional, did not
12  threaten her, and didn't force her to do anything.  (MF # 19). Desertrain challenged the
13  ticket.  (MF #20).  The ticket was eventually dismissed because she had disabled plates.
14  (MF # 21).  She never paid any fines in relation to either of the two citations issued.
15  (MF # 22).

16         Officer Prince testified that he made a mistake when he issued the citation on
17  11-3-10. (MF # 23).  He did not know that the disabled plates permitted the disabled to
18  park in excess of time limits posted on signs. (MF # 24).  Had he known this, he would
19  not have issued the citation. (MF # 25).   He denies telling Desertrain he was required
20  to issue citations to all RVs.  (MF # 26).

21  **c.     Steve Jacobs-Elstein**

22         Jacobs-Elstein is not disabled but he is homeless. (MF # 27).  Jacobs-Elstein was
23  primarily living in his vehicle from December 2007 until September 13, 2010. (MF #
24  28).  In 2009, he was informed by an LAPD officer that it was illegal to live in his car.
25  At the beginning of 2010, Jacobs-Elstein found private property to park on to sleep at
26  night. (MF # 29).   Jacobs-Elstein received three citations for violation of LAMC
27  § 85.02 which prohibits the use of a parked vehicle on city streets for living.  The first
28  citation he received was on September 13, 2010 from LAPD Officer Gonzales when he

had been in his car a few hours. (MF # 30).  Prior to this citation, Jacobs-Elstein had previously met Officers Gonzales and McInnis when he was in his car. (MF # 31). Officer Gonzales warned him he was not allowed to live in his vehicle.  (MF # 32).  At the time of the warning, he was lying back and relaxing his vehicle. (MF # 33). Officer Gonzales did not issue him a citation. (MF # 34). At the time of the warning his car contained storage items, boxes, computers, food, water, pillow, and a blanket. (MF #35).

On September 13, 2010, Officer Gonzales again told Jacobs-Elstein he couldn't live in his car. (MF # 36).  At the time his car contained storage boxes, personal items, computers, water, food, blanket, and a pillow. (MF # 37).  Jacobs-Elstein was not threatened or forced to do anything he did not want to do.  He was not arrested. (MF # 38).  Jacobs-Elstein went to court on the citation.  The citation was rejected. (MF # 39).

Jacobs-Elstein saw Officers Gonzales and McInnis one time between September 13, 2010 and October 31, 2010. (MF # 40).  He was sitting on the wall of the Baptist Church property when Officer McInnis allegedly said, "What are you doing here?  The next time I see you, I'm going to take you to jail." (MF # 41).  Jacobs-Elstein complained about the incident at a neighborhood meeting with Senior Lead Officer Peggy Thusing from the LAPD. Ms. Thusing told him she didn't like to hear that officers conduct themselves in that manner and asked if he wanted to file a formal complaint. (MF # 42).  Jacobs-Elstein did not file a complaint.  (MF # 43).

Jacobs-Elstein's next contact was on October 31, 2010 when he was arrested and cited for violation of LAMC § 85.02. (MF # 44).  He was sitting in his car about ten minutes and was about to get out from it. (MF # 45).  Officer Gonzales and her partner drove down the block where Jacobs-Elstein was parked, waited a few minutes, then approached him and informed him he would be arrested for violating LAMC Section 85.02. (MF # 46).  His car contained the same personal items as on prior occasions when he was warned/cited by the police. (MF # 47).  He believes he may have had a bottle of urine in his car as well. (MF # 48).  Officer Gonzales told him that he had been warned before about living in his car and that now he would be arrested.

1  (MF # 49).  The officers were not yelling, did not point a gun at him, did not threaten
2  physical violence, use force, or injure him. (MF # 50).  He was at the scene
3  approximately 20 minutes before he was transported to the station. (MF # 51).

4       The police impounded his vehicle.  Officer Gonzales stated she impounded his
5  vehicle because she was concerned about vandalism and theft of his vehicle since
6  Jacobs-Elstein lived in his car.  (MF # 52).  Jacobs-Elstein claims that two friends
7  offered to drive his vehicle away instead of being impounded.  (MF # 53).  However, a
8  video of Jacob-Elstein's arrest demonstrates that the cinematographer/friend only
9  offered to take Jacob-Elstein's keys from him, not drive the car away.  Nor is any
10 request made to the officers to drI've the car away.  Finally, there is neither a visible
11 nor audible response from Jacobs-Elstein showing his interest in having a friend drive
12 his car away.  (MF # 54).

13      Jacobs-Elstein's third citation for LAMC § 85.02 was on January 30, 2011 when
14 Officer Yoshioka issued him a citation. (MF # 55).  Jacobs-Elstein was parked in his
15 car near Penmar Park.  (MF # 56).  His car had computers, personal items, food, water,
16 boxes, blankets, and a pillow.  (MF # 57).  He had been in his car for about an hour.
17 (MF # 58).  While he does not own a dog, at that time he had a dog food bowl on the
18 passenger seat because he was dog sitting for a friend.  (MF # 59).  Officer Yoshioka
19 told him that he cannot live in his car.  (MF # 60).  Jacobs-Elstein responded, "I know I
20 can't live in my car.  I'm not living in my car" and "I have a place to live" wherein he
21 tried to show Officer Yoshioka the permission slip from Palms Court where he slept at
22 night. (MF # 61).  While Jacobs-Elstein felt Officer Yoshioka was rude to him, he was
23 not threatened or handcuffed. (MF # 62).  He was given a citation. (MF # 63 ).  He was
24 also provided shelter information. (MF # 64).  Jacobs-Elstein went to court on the
25 citation on March 17, 2011. (MF # 65).  He was advised that no criminal charges were
26 filed against him. (MF # 66).  He has not been cited since January 30, 2011.(MF # 67).

27 **d.    Bradford Eckhart**

28      Eckhart is disabled. (MF # 68)   He was cited on November 3, 2010, January 29,

1  2011, and July 19, 2011 (violation of oversize vehicle parking). (MF # 69). One ticket
2  was for violating a two-hour parking rule. (MF # 70). He received another ticket for an
3  oversize vehicle violation. (MF # 71). He also received a $50 fine for improperly
4  placing his disability placard. He never paid the fine. (MF # 72). On March 9, 2011,
5  he received another notice regarding the January citation advising him of a $68 fee.
6  (MF # 73). There was an error on his November 3, 2010 citation because the precise
7  location was not indicated. As a result, his ticket was dismissed and he did not have to
8  pay a fine. (MF # 74). No officer threatened to harm him or to take him into custody.
9  (MF # 75). He never paid the fine for the January 29, 2011 ticket. He requested an
10  administrative review and subsequently attended an in-person hearing. He eventually
11  avoided paying the fee by applying for a fee waiver. (MF # 76). He needs to attend an
12  in-person hearing for his July 19, 2011 citation. (MF # 77).

13  **e.    Patricia Warivonchik**

14  Patricia Warivonchik is not disabled. (MF # 78). Warivonchik believes she was
15  targeted by the LAPD because of the perception she was homeless. She is not
16  homeless. She owns a RV. (MF # 79). On November 13, 2010, she was driving on
17  Lincoln when her left turn signal did not turn off. (MF # 80). She was driving from
18  Santa Monica to Westchester. She had not noticed the police following her vehicle
19  until she was pulled over on Lincoln. (MF # 81). Officer Murray told her they had
20  followed her for a mile. (MF # 82). She realized that her blinker had been on for
21  approximately a mile or five to ten minutes. (MF # 83). She apologized to Officer
22  Murray about her blinker not turning off. (MF # 84). Officer Murray allegedly
23  apologized for stopping her and explained he was not a Nazi, he was just following
24  orders. (MF # 85). Officer Murray warned her about LAMC § 85.02 and told her that
25  if she was found again she would be arrested and her RV impounded. (MF # 86).
26  Warivonchik was not cited for anything. (MF # 87). She has never been cited for
27  LAMC 85.02 or pulled over since November 13, 2010. (MF # 88).

28  ///

**f.      LeRoy "Abraham" Butler**

Leroy Butler is disabled.  He and his wife own and drive a 1986 Toyota RV and a 27 foot vehicle.  The Toyota has a disability placard visible from the front window and the 27 foot vehicle has disability plates on the front and back. (MF # 89).  Butler received three parking citations.  He never met any of the issuing officers. (MF # 90). He lives outside in Venice.  (MF # 91)

The first parking ticket he received was on August 16, 2010 for violating LAMC § 80.73.2 which prohibits parking in one place for more than 72 hours. (MF # 92). Butler believes with disabled plates he is not subject to the 72 hour parking restriction. Nevertheless, he claims he moves his vehicle every 48 hours.  (MF # 93). Butler challenged the issuance of this parking citation. (MF # 94).

The second citation he received was for an oversized vehicle within 100 feet of an intersection in violation of LAMC § 80.69 issued on September 4, 2010.  (MF # 95). His mother-in-law paid his ticket.  (MF # 96).  He didn't challenge the ticket. (MF # 97).  Butler was present when it was issued but did not speak to the officer because he was some distance away from the vehicle.  (MF # 98).  Butler challenged this ticket but believes he paid the fine. (MF # 99).

Butler has never been pulled over by the police despite living in the Venice area since 1969 and owning two RVs. (MF # 100).  Butler was again cited on July 19, 2011 at 3:29 a.m. for parking an oversized vehicle on the street. (MF # 101).  His car was not there for 72 hours because it was street cleaning day.  (MF # 102).  He is challenging this ticket. (MF # 103).

**g.      William Cagle**

William Cagle is disabled. (MF #104)  He has a disabled placard clearly displayed on his vehicle at all times.  He is also homeless.  (MF # 105).  He was cited on October 17, 2010 for violation of LAMC § 85.02. (MF # 106).  He went to court for the October 17, 2010 citation. (MF # 107).  On November 3, 2010, Cagle was issued a citation for parking at an expired meter.  (MF # 108).  On November 22, 2010, he was

1  arrested and cited for violation of LAMC § 85.02. His car appeared in the same
2  condition as when he was cited on October 17, 2010.  Cagle admitted he kept a bottle
3  of urine in his car.  (MF # 109).  Cagle's car was towed because it was parked in a high
4  crime neighborhood.  The officers did not want it to be vandalized or burglarized.
5  (MF # 110).  Cagle challenged the November 3, 2010 citation. (MF # 111).
6  **h.     Luis Pacheco and Della Franco**
7       Pacheco was cited on January 14, 2011 for exceeding the 72 hour parking
8  limitation. (MF # 112).  Pacheco challenged his citation.(MF # 113).  The review
9  process resulted in the decision that the ticket was valid. (MF # 114).  Franco felt
10  threatened and targeted by the LAPD and residents of Venice because she had a RV.
11  (MF # 115).  However, no officer threatened to take them to jail or cite them in relation
12  to their RV. (MF # 116).  Officer Yoshioka never harassed them. (MF # 117).
13  **i.     Chris Taylor**
14       Chris Taylor is homeless.  (MF # 118)  Chris Taylor was cited and arrested for
15  illegally living in his vehicle on December 18, 2010 by LAPD Officers Yoshioka and
16  Murray.  (MF # 119).  Taylor had previously met Officers Yoshioka and Murray in
17  October 2010.  At that time, he was laying down in his car.  (MF # 120).  He had spent
18  the night in his car. (MF # 121).  He had all his art supplies, clothing, a pillow, and a
19  blanket. (MF # 122).  The officers explained to him that he could not live in his
20  vehicle. (MF # 123).  He was detained a total of 20 minutes but he was not cited.  (MF
21  # 124).
22       From the time of his initial warning not to live in his vehicle, Taylor saw the
23  officers twice a week and believes they looked into his car to see if he was sleeping.
24  (MF # 125).  His car was usually parked on Third and Sunset.  (MF # 126).
25       On December 18, 2010, a friend of Taylor's was standing outside Taylor's
26  vehicle while he sat inside. (MF # 127).  They were speaking together for 15 minutes.
27  (MF # 128). The police drove up to Taylor's car.  (MF # 129).  Officer Murray ordered
28  Taylor out of his car. (MF # 130). Officer Murray allegedly said "I told you it was

1  illegal to lie in your vehicle." (MF # 131). He told the officers he was not living in his

2  vehicle and that he had a card to a homeless shelter documenting that he lived there.

3  (MF # 132). Photographs depicting the condition of his vehicle were taken when he

4  was arrested. (MF # 133)  In addition to a tray of food, he had a sleeping bag, shoes,

5  clothes hangers, soda, and a bottle of urine. (MF # 134). He was in custody for five

6  hours before being released. (MF # 135). His vehicle was impounded. (MF # 136).

7  His car was impounded because it was parked in a high crime area and the officers

8  were concerned about it being vandalized or burglarized. (MF # 137). Taylor didn't

9  try to get the car out of impound because he did not have the money. (MF # 138). He

10 went to the court on the arrest and the charges were dismissed. (MF # 139).

11 **2.     Plaintiffs Cannot Prove a Violation of Any Constitutional Right and/or the**

12 **Officers Are Entitled to Qualified Immunity**

13       To decide whether a Defendant is protected by qualified immunity, a court must

14 first determine whether, "[t]aken in the light most favorable to the party asserting the

15 injury, do the facts alleged show the officer's conduct violated a constitutional right?"

16 Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).

17 If the Plaintiff's factual allegations do add up to a violation of his federal rights, then

18 the court must determine whether the right was "clearly established." The "clearly

19 established" inquiry must be "undertaken in light of the specific context of the case, not

20 as a broad general proposition . . .," with the focus being on "whether it would be clear

21 to a reasonable officer that his conduct was unlawful in the situation he confronted."

22 Ibid; Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

23 **a.     Fourth Amendment Claims**

24       Warivonchik alleges she was harassed when she was driving in Venice on

25 November 13, 2010 and pulled over for failing to turn off her left turn signal. She

26 alleges she was warned about living in her RV and told she would be arrested if they

27 found her in Venice again and that her RV would be impounded. (FAC, 12:7-18).

28 ///

1   Law enforcement officials may approach and detain citizens for community
2 caretaking purposes in a variety of circumstances without running afoul of the Fourth
3 Amendment and equivalent state constitutional provisions. See e.g., <u>Cady v.</u>
4 <u>Dombrowski</u>, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973); <u>United</u>
5 <u>States v. King</u>, 990 F.2d 1552, 1560-1561 (10th Cir. 1993).  Furthermore, there was
6 reasonable suspicion to investigate a violation of Vehicle Code sections 24252
7 (requiring vehicle lights to be maintained in good working order) and 24002
8 (prohibiting vehicle operation in unsafe condition).

9   Warivonchik admits she drove her vehicle for over a mile without turning off the
10 turn signal.  It had been on for between five to ten minutes.  It was reasonable to
11 believe that the driver may have a mechanical problem by driving with the turn signal
12 left on for a mile.  In addition, driving with the turn signal on confuses other drivers on
13 the road which can create traffic problems.  Therefore, under the community-caretaking
14 exception to the warrant requirement, it was proper to stop Warivonchik's vehicle to
15 inform her and/or investigate the reason the turn signal was left on.

16   Warivonchik complains that her personal identifiers were collected during the
17 stop.  However, initial questioning and a request for identification does not violate the
18 Fourth Amendment. <u>United States v. $25,000 U.S. Currency</u>, 853 F.2d 1501, 1505 (9th
19 Cir. Cal. 1988).  Warivonchik did not object to providing her identification.  Under the
20 circumstances, the officer could reasonably believe it was either permitted under the
21 law or she consented to having her information recorded.

22   Warivonchik's complaint she was warned about violating LAMC Section 85.02
23 and told she would be arrested and her car impounded if she was seen in Venice again
24 does not amount to constitutional violation.  Threats of arrest or verbal harassment do
25 not give rise to a constitutional violation under section 1983. See <u>Oltarzewski v.</u>
26 <u>Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987); <u>Gaut v. Sunn</u>, 810 F.2d 923, 925 (9th Cir.
27 1987).  As such, the allegations from Taylor and Jacobs-Elstein that they were
28 threatened with arrest if they violated LAMC Section 85.02 cannot form the basis for a

9

1  harassment claim.

2      Plaintiffs Desertrain, Jacobs-Elstein, Eckhart, Butler, Cagle, Taylor, Pacheco,

3  and Franco allege they were harassed by virtue of the parking citations they received.

4  (FAC, ¶¶ 10-12, 14, 15, 17, 19).  However, the mere issuance of a citation does not

5  constitute a seizure, let alone a formal arrest. See, e.g., Karam v. City of Burbank, 352

6  F.3d 1188, 1194 (9th Cir. 2003); Britton v. Maloney, 196 F.3d 24, 28-31 (1st Cir.

7  1999); DePiero v. City of Macedonia, 180 F.3d 770, 789 (6th Cir. 1999).  Based on the

8  well-established law, Plaintiffs cannot establish a violation of their Fourth Amendment

9  rights based on the issuance of parking citations.  Furthermore, either the Plaintiffs

10 never paid a fine or in the case of Butler, his mother-in-law paid a fine.  They did not

11 suffer any adverse consequence as a result of receiving the citations.

12     Next, there was probable cause to issue citations and arrest Jacobs-Elstein,

13 Taylor, and Cagle for violating of LAMC Section 85.02.  Arresting officers have

14 probable cause if, at the moment of arrest, "the facts and circumstances within their

15 knowledge and of which they had reasonably trustworthy information were sufficient

16 to warrant a prudent man in believing that the [arrested person] had committed or was

17 committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct.

18 223 (1964).  LAMC 85.02  provides, "[n]o person shall use a vehicle parked or

19 standing upon any City street or upon any parking lot owned by the City of Los

20 Angeles and under the control of the City of Los Angeles or under control of the Los

21 Angeles County Department of Beaches and Harbors as living quarters either

22 overnight, day-by-day, or otherwise."

23     In Hershey v. City of Clearwater, 834 F.2d 937 (11th Cir. 1987), the Eleventh

24 Circuit addressed the constitutionality of a city ordinance practically identical to

25 LAMC Section 85.02.  The plaintiff challenged a city's criminal ordinance that made it

26 illegal "to lodge or sleep in" a motor vehicle parked on the street. Id. at 939. Hershey

27 said that the prohibition on sleeping was unconstitutionally overbroad. However, the

28 court decided that because (1) the "or sleep" provision of the law was severable from

1  the rest of it the court did not need to pass on the constitutionality of the "or sleep"

2  clause. Id. at 939-40 & n.5.  Importantly, the Court concluded there was  probable

3  cause to arrest Hershey for "lodg[ing]" in his car.  Id.  The car included many

4  household goods including personal items and a mattress in the back of the car.  The

5  plaintiff was laying down on the mattress when an officer stopped to investigate.

6      In the present case, LAMC § 85.02 prohibits living in a vehicle during the day.

7  Plaintiffs Taylor and Jacob-Elstein had been warned about illegal living in their

8  vehicles prior to being cited or arrested.  The photographs of Plaintiffs' vehicles taken

9  at the time of their arrests and/or citations demonstrates it was reasonable to believe

10  they were living in their cars.  The vehicles contained personal items, sleeping bags,

11  food, water, and bottles of urine.  At the time of Jacobs-Elstein's arrest in October and

12  citation in January 2011 he had a dog bowl on the seat in his vehicle.  Based on the

13  decision in Hershey, there was probable cause to effect Plaintiffs' arrests and issue

14  citations.  In the alternative, the officers are entitled to qualified immunity because it

15  was not clearly established enforcing LAMC Section 85.02 would violate the

16  Constitution.  Nor was it clearly established any officer could be held civilly liable on

17  any alleged Fourth Amendment claim asserted by the Plaintiffs.

18      Jacobs-Elstein alleges on September 13, 2010, his car was searched without his

19  consent prior to being issued a citation.  The officers could search the vehicle because

20  violation of LAMC § 85.02 was in plain view.  Furthermore, the vehicle exception to

21  the warrant requirement applied.  See Chambers v. Maroney, 399 U.S. 42, 51-52, 26 L.

22  Ed. 2d 419, 90 S. Ct. 1975 (1970).  The vehicle exception has two principal

23  justifications.  First, automobiles or other vehicles can be moved quickly outside the

24  jurisdiction of the magistrate from whom the warrant must be sought.  South Dakota v.

25  Opperman, 428 U.S. 364, 367, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976).  Second, the

26  expectation of privacy in one's vehicle is reduced by the pervasive regulations

27  governing vehicles capable of traveling upon public roads. See Opperman, 428 U.S. at

28  367-68; Cady v. Dombrowski, 413 U.S. 433, 440-41, 37 L. Ed. 2d 706, 93 S. Ct. 2523

11

1    (1973).   Under the plain view and automobile exception, no warrant was required to

2    search his car.

3    **b.      The Officers Were Entitled to Impound Plaintiffs' Vehicles Under the**

4    **Community-Caretaking Exception to the Warrant Requirement**

5         Plaintiffs Jacobs-Elstein, Garcia, and Taylor allege they have a right to be free

6    from takings under the Fifth Amendment and Article I, section 7 of the California

7    Constitution when their vehicles were towed and impounded without any lawful

8    justification when they were parked on a public street.  (Second Cause of Action, FAC,

9    ¶ 37).  Contrary to Plaintiffs' citation to the Fifth Amendment, the impoundment of an

10   automobile is a seizure is analyzed under the Fourth Amendment and likewise Article I,

11   Section 13 of the California Constitution. Miranda v. City of Cornelius, 429 F.3d 858,

12   862 (9th Cir. 2005); Ramirez v. City of Buena Park, 560 F.3d 1012, 1024-25 (9th Cir.

13   2009) (citation and quotations omitted); In re Lance W., 37 Cal. 3d 873, 881 (1985).

14        A seizure conducted without a warrant is per se unreasonable under the Fourth

15   Amendment subject to a few specifically established exceptions.  Miranda, supra, at

16   865.  The impoundment of a vehicle is not rendered "reasonable" under the Fourth

17   Amendment merely because probable cause exists to believe that the driver of a vehicle

18   committed a traffic violation. Id. at 862-64. The Ninth Circuit determined that the

19   impoundment of a legally parked vehicle is not necessary to enforce traffic regulations.

20   Rather, some additional justification is required if the impound is to comport with the

21   Fourth Amendment. Id. at 864 n.4. Typically, such additional justification, is

22   demonstrated by the "community caretaking" exception to the Fourth Amendment

23   warrant requirement. Id. Under the "community caretaking" exception to the Fourth

24   Amendment warrant requirement, police officers may constitutionally impound

25   vehicles that "imped[e] traffic or threaten [] public safety and convenience." South

26   Dakota v. Opperman, 428 U.S. 364, 368-69, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).

27   "Whether an impoundment is warranted under this community caretaking doctrine

28   depends on the location of the vehicle and the police officers' duty to prevent it from

12

1  creating a hazard to other drivers or being a target for vandalism or theft." <u>Miranda</u>,
2  429 F.3d at 864

3          First, Plaintiffs' arrests were based on more than a traffic violation.
4  Nevertheless, the officers articulated reasonable grounds for impounding the Plaintiffs
5  vehicles.  The officers were concerned the cars could be vandalized or burglarized if
6  left in place due to where the cars were located in Venice.  Next, Jacobs-Elstein does
7  not have evidence to support his allegation that two people offered to drive his car
8  away for him so it would not need to be impounded.  The video taken by homeless
9  advocate Peggy Kennedy documents her making a one-time inquiry if Jacobs-Elstein
10 wanted her to take his keys.  Taking keys is not the same as offering to drive a car
11 away.  Furthermore, Jacobs-Elstein does not even acknowledge her question in the
12 video.  In addition, unlike in <u>Miranda</u>, where the husband offered to drive the family
13 car away, Ms. Kennedy has no legal relationship with Jacobs-Elstein.  As such, there is
14 no law that the officers would be required to release the vehicle to an individual with
15 no legal relationship to the owner of the car.  As such, Defendants are entitled to
16 summary judgment for impounding Plaintiffs' vehicles or they are entitled to qualified
17 immunity.

18 **c.      Plaintiffs Cannot Prove their Fifth Amendment Takings Claim**

19         Plaintiffs allege the impoundment of their cars amounts to a takings in violation
20 of the Fifth Amendment.  (FAC, ¶ 37). The Fifth Amendment to the United States
21 Constitution provides, in relevant part, that "private property [shall not] be taken for
22 public use, without just compensation." U.S. CONST. AMEND. V. "The government
23 may not be required to compensate an owner for property which it has already lawfully
24 acquired under the exercise of governmental authority other than the power of eminent
25 domain." <u>Bennis v. Michigan</u>, 516 U.S. 442, 452, 116 S. Ct. 994, 134 L. Ed. 2d 68
26 (1996). It is also clear that "the police power encompasses the government's ability to
27 seize and retain property to be used as evidence in a criminal prosecution."
28 <u>Amerisource Corp. v United States</u>, 525 F.3d 1149, 1153 (Fed.Cir. 2008) (citing

1   Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 309-10, 87 S. Ct. 1642, 18 L. Ed.

2   2d 782 (1967)).  Impounding Plaintiffs' vehicles was a lawful exercise of police power.

3        Furthermore, "[t]he Fifth Amendment does not proscribe the taking of property;

4   it proscribes taking without just compensation."  Williamson County Reg'l Planning

5   Comm'n v. Hamilton Bank, 473 U.S. 172, 194, 105 S. Ct. 3108, 87 L. Ed. 2d 126

6   (1985). Before a plaintiff may assert a federal takings claim, he must first seek

7   compensation from the state if the state has a "reasonable, certain and adequate

8   provision for obtaining compensation." Id. at 194 (internal quotations omitted).  There

9   is no evidence Plaintiffs sought compensation from the state prior to asserting their

10  takings claim in this lawsuit under the Fifth Amendment.

11  **d.      Plaintiffs' Right to Intrastate Travel Has Not Been Restricted**.

12        Plaintiffs' Second Cause of Action alleges their rights to intrastate travel was

13  violated under Article I, Section 7 of the California Constitution by the issuance of

14  citations.  (FAC, ¶ 38).   The right to intrastate travel is a recognized right under Article

15  I, sections 7 and 24 of the California Constitution. Tobe v. City of Santa Ana, 9 Cal.

16  4th 1069, 1100 (1995).  California law only recognizes a restriction on the right to

17  intrastate travel when there is a direct impact, not an incidental or indirect impact on

18  the right to travel. Id. at 1164.

19        In Tobe, the California Supreme Court rejected an argument that an anti-camping

20  ordinance violated the right to intrastate travel.  The Court stated the anti-camping

21  ordinance was nondiscriminatory on its face and was not unconstitutional "because it

22  may have an incidental impact on the right of some person to interstate or intrastate

23  travel." Id. at 1101.  "An ordinance that bans camping and storing personal

24  possessions on public property does not directly impede the right to travel." Id. at

25  1164.  The alleged wrongful issuance of the citations in violation of the disability

26  exemption placards would only be an incidental impact on Plaintiffs' right to travel, not

27  a direct impact.  Plaintiffs' argument is that they have a constitutional right to stay in

28  Venice whenever they want and store their personal belongings on the streets of Venice

1  with impunity.  Plaintiffs are wrong.  "The right to travel does not....endow citizens
2  with a 'right to live or stay where one will.'  While an individual may travel where he
3  will and remain in a chosen location, that constitutional guaranty does not confer
4  immunity against local trespass laws and does not create a right to remain without
5  regard to the ownership of the property on which he chooses to live or stay, be it public
6  or privately owned property."  Tobe, supra, 9 Cal.4th at 1103.

7  **e.**     **Equal Protection under the Fourteenth Amendment and Article I, Section 7**
8          **of the California Constitution**

9          The Equal Protection Clause of the Fourteenth Amendment mandates that
10  similarly situated persons be treated alike. City of Cleburne v. Cleburne Living Center,
11  Ind., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).  The federal and
12  state constitutional provisions are analyzed in essentially the same manner.  In re
13  Demergian, 48 Cal.3d 284, 291–292 (1989).  A plaintiff may establish an equal
14  protection claim in one of two ways. The plaintiff may show that the defendants acted
15  with the intent or purpose to discriminate against the plaintiff based on membership in
16  a protected class.  Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998).
17  Alternatively, the plaintiff may show that similarly situated individuals were treated
18  differently without a rational relationship to a legitimate state purpose.  Village of
19  Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

20          Plaintiffs cannot prove LAPD officers discriminated against them because
21  neither the homeless nor the disabled are members of a protected class.  Lee v. City of
22  Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001); Joel v. City of Orlando, 232 F.3d 1353,
23  1357 (11th Cir. 2000); Davidson v. City of Tucson, 924 F. Supp. 989, 993 (D. Ariz.
24  1996).  Next, Plaintiffs cannot demonstrate that similarly situated people were treated
25  differently.  See also Wayte v. United States, 470 U.S. 598, 608-10, 105 S. Ct. 1524, 84
26  L.Ed. 2d 547 (1985)(a mere failure of those who administer the law to treat equally all
27  person who violate the law does not constitute a denial of equal protection).  In fact,
28  Plaintiffs' argument is just the opposite.  The fact Plaintiffs are homeless and/or

1  disabled means they are not similarly situated to others.  It is their marginalized place

2  in society they contend entitles them to be exempted from the enforcement of any

3  criminal laws.  The Equal Protection Clause guarantees equal treatment, not

4  preferential treatment.

5  **f.      No Constitutional Violation Means No Harassment**

6           Plaintiffs' failure to establish a violation of any constitutional right demonstrates

7  they cannot prove a claim for harassment under Section 1983. <u>Azpitarte v. King</u>

8  <u>County</u>, 2011 U.S. Dist. LEXIS 66859, 6-7 (W.D. Wash. June 22, 2011)(citing <u>Sullivan</u>

9  <u>v. Marshall</u>, 628 F.Supp. 1080, 1083 (D. Mass. 1985) where the court pointed out that

10  "[w]hile the plaintiffs may have alleged a tort under state law, the commission of a tort

11  by a person acting under the color of state law does not create liability [under § 1983]

12  unless there is also a violation of the United States Constitution or a federal law. . . .

13  While it is true that harassment by police officers may impair the enjoyment of life in

14  all its aspects, that is true of many torts with no constitutional implications.").

15  Likewise, because Plaintiffs have not suffered a violation of any federal or state right,

16  there can be no personal liability against Captain Jon Peters in his individual capacity.

17  **3.      Plaintiffs Cannot Prove <u>Monell</u> Liability**

18           In <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 56 L. Ed. 2d 611, 98

19  S. Ct. 2018 (1978), the Supreme Court held that municipalities were "persons" under §

20  1983 and thus could be held liable if the municipality itself caused the constitutional

21  deprivation.  <u>Monell</u>, <u>supra</u>, 436 U.S. 658, 690.  The Supreme Court stated that a

22  municipality may not be held liable under § 1983 for the torts of its employees on a

23  theory of respondeat superior.  <u>Id.</u> at 690-691.  However, municipal liability may attach

24  where the execution of the municipality's official policy, practice, or custom is the

25  moving force behind the violation of the plaintiff's constitutional rights.  <u>Monell</u>,

26  <u>supra</u>, 436 U.S. at 690-691; <u>Polk County v. Dodson</u>, 454 U.S. 312, 326, 102 S. Ct. 445,

27  70 L. Ed.2d 509 (1981).  A municipality may not be held liable under section 1983

28  where no injury or constitutional violation has occurred.  <u>City of Los Angeles v. Heller</u>,

1  475 U.S. 796, 799, 89 L.Ed.2d 806, 106 S.Ct. 1571 (1986).  Plaintiffs fail to establish a

2  violation of any constitutional right.

3        Nor can Plaintiffs establish <u>Monell</u> liability under the very high deliberate

4  indifference standard.  As stated in <u>Hall v. City of Los Angeles</u>, 710 F. Supp. 2d 984

5  (C.D. Cal. 2010): "'To prove deliberate indifference, the plaintiff must show that the

6  municipality was on actual or constructive notice that its omission would likely result

7  in a constitutional violation.' <u>Id</u>. (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 841, 114 S.

8  Ct. 1970, 128 L. Ed. 2d 811 (1994)). This generally requires a showing that there was

9  both legal authority establishing that the practice was unlawful and evidence of

10  incidents of such a violation beyond those involving the plaintiff." <u>Hall</u>, <u>supra</u>, 710

11  F.Supp. 2d at 998 (citing <u>Stoot v. City of Everett</u>, 582 F.3d 910, 929-30).  There is no

12  law holding the enforcement of LAMC Section 85.02 or improperly issued parking

13  tickets amounts to deliberate indifference to establish <u>Monell</u> liability.  Moreover, with

14  respect to the homeless, the evidence is that the Venice Task Force sought to aid the

15  homeless by providing housing information, hygiene kits, and clothing.  At times,

16  housing was found for the homeless.  Between the lack of law establishing that the

17  actions of the Venice Task Force were unconstitutional coupled with the evidence the

18  LAPD attempted to aid the homeless by providing information, etc., Plaintiffs cannot

19  establish <u>Monell</u> liability.

20  **4.     Plaintiffs Cannot Prove a Violation of Civil Code Sections 54 and 55**

21        All Plaintiffs except Jacobs-Elstein, Pacheco, Franco, and Taylor allege the

22  LAPD discriminates against the homeless, disabled in the Venice area by issuing

23  citations to the homeless, disabled despite having disability placards prominently

24  displayed on their vehicles.  Plaintiffs raise claims under California Civil Code

25  Sections 54 and 55.  California Civil Code § 54 provides:

26  "(a) Individuals with disabilities or medical conditions have the same right as the

27  general public to the full and free use of the streets, highways, sidewalks, walkways,

28  public buildings, medical facilities, including hospitals, clinics, and physicians' offices,

17

1  public facilities, and other public places.......

2  (c) A violation of the right of an individual under the Americans with Disabilities Act

3  of 1990 (Public Law 101-336) also constitutes a violation of this section." California

4  Civil Code section 55 provides, "[a]ny person who is aggrieved or potentially

5  aggrieved by a violation of Section 54 or 54.1 of this code, Chapter 7 ....may bring an

6  action to enjoin the violation....."

7        In order to prove a violation of the Americans with Disabilities Act, Plaintiffs

8  must satisfy four elements: (1) they are an "individual with a disability"; (2) they are "

9  otherwise qualified to participate in or receive the benefit of some public entity's

10 services, programs, or activities"; (3) they were "either excluded from participation in

11 or denied the benefits of the public entity's services, programs, or activities, or was

12 otherwise discriminated against by the public entity"; and (4) "such exclusion, denial of

13 benefits, or discrimination was by reason of [their] disability." Thompson v. Davis,

14 295 F.3d 890, 895 (9th Cir. 2002). Notwithstanding the fact that under Civil Code

15 sections 51, et seq. evidence of intentional discrimination is not required to prove a

16 violation, Plaintiffs cannot prove the fourth element of a ADA claim. Munson v. Del

17 Taco, Inc., 46 Cal. 4th 661 (2009). Plaintiffs have no evidence that the parking tickets

18 were issued by reason of their disabilities. In fact, it was just the opposite. It was the

19 lack of awareness that Plaintiffs were exempt from some of the time limit restrictions

20 that was the reason the tickets were issued. In other words, Plaintiffs were treated just

21 like non-disabled people who violate timed parking restrictions. In the alternative,

22 there is immunity for liability for issuing the parking citations.

23       Government Code section 821.6 provides: "[a] public employee is not liable for

24 injury caused by his instituting or prosecuting any judicial or administrative proceeding

25 within the scope of his employment, even if he acts maliciously and without probable

26 cause." Section 821.6 ensures that law enforcement personnel may perform their duties

27 efficiently and effectively without harassment and fear of personal liability. See

28 Cappucio, Inc. v. Harmon, 208 Cal. App. 3d 1496, 1501 (1989). Under Government

1  Code section 815.2 (b) " Except as otherwise provided by statute, a public entity is not
2  liable for an injury resulting from an act or omission of an employee of the public
3  entity where the employee is immune from liability."

4        "Courts construe section 821.6 immunity broadly, giving it 'expansive
5  interpretation' in the service of its purpose." <u>Amylou R. v. County of Riverside</u>, 28
6  Cal. App. 4th 1205, 1208 (1994). The courts have broadly interpreted section 821.6 to
7  immunize police officers from suit for concealing evidence, <u>Randle v. City of San</u>
8  <u>Francisco</u>, 186 Cal. App. 3d 449 (1986), and for presenting false information to a
9  district attorney. <u>Asgari v. City of Los Angeles</u>, 15 Cal. 4th 744, 52 (1997). In <u>County</u>
10 <u>of Los Angeles v. Superior Court (West)</u>, 181 Cal.App.4th 218 (2d Dist. Cal. 2009), the
11 court held the immunity extends to acts taken during an investigation before instituting
12 judicial proceedings, after the close of proceedings, and even if charges are never filed.
13 <u>Ibid</u>.

14       The disabled Plaintiffs complain they have been discriminated against by the
15 wrongful issuance of parking citations for which their disability placards exempt them
16 from tickets.  Even if true, issuing a parking ticket begins the process of an
17 administrative proceeding.  <u>Love v. City of Monterey</u>, 37 Cal.App. 4th, 562, 566-67
18 (1995); Cal.Veh. Code § 40200, et seq.  Accordingly, under Government Code sections
19 821.6 and 815.2(b), the police officer defendants who issued the citations and
20 derivatively, the City of Los Angeles, are immune from such claims.

21 **5.      Plaintiffs Cannot Prove a Claim for Violation of Civil Code Section 52.1**

22       To obtain relief under Civil Code section 52.1, a defendant is liable if he or she
23 commits the following: 1. an interference with the plaintiff's constitutional rights and 2.
24 accomplishes the interference by threats, intimidation, or coercion.  <u>Venegas v. County</u>
25 <u>of Los Angeles</u>, 32 Cal.4th 820, 841–843 (2004).  Under 52.1(j), "speech alone is not
26 sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a
27 showing that the speech itself threatens violence against a specific person or group of
28 persons; and the person or group of persons against whom the threat is directed

1  reasonably fears that, because of the speech, violence will be committed against them
2  or their property and that the person threatening violence had the apparent ability to
3  carry out the threat." Civil Code Section 52.1 (j). The requirement that the threats,
4  intimidation, or coercion be violent in nature is well established. For example,
5  allegations that a plaintiff might be subjected to violence by the police, but do not
6  allege actual violence or intimidation by the threat of violence did not state a claim for
7  violation of Civil Code section 52.1. Cabesuela v. Browning-Ferris Indus., 68 Cal.
8  App. 4th 101, 111 (Cal. App. 6th Dist. 1998), superseded by statute on other grounds.
9       The violence or threat of violence must be more than a subjective fear of harm.
10 In other words, the violence contemplated by Civil Code section 52.1 must be a
11 physical harm to the plaintiff. Ritschel v. City of Fountain Valley, 137 Cal. App. 4th
12 107, 124-25 (2006). With the exception of Jacobs-Elstein, Taylor, and Cagle, no other
13 Plaintiff can establish either a violation of a constitutional right nor that it was
14 committed by violence. With respect to Jacobs-Elstein, Taylor, and Cagle, because
15 there was probable cause for their arrests, the officers were entitled to use reasonable
16 force. Edson v. City of Anaheim , 63 Cal.App.4th 1269, 1272-1273 (1998). The
17 application of force to effect an arrest by handcuffing and taking into custody is
18 insufficient to state a claim for assault and battery. See Venegas v. County of Los
19 Angeles, 153 Cal.App. 4th 1230, 1248 (2007). As such, Plaintiffs cannot prove a claim
20 for 52.1.

21 **6.    Conclusion**

22      Based on the foregoing, the City of Los Angeles Defendants respectfully request
23 an order granting summary judgment in their favor.

24

25 DATED: September 13, 2011     **CARMEN A. TRUTANICH**, City Attorney
                                **GARY G. GEUSS**, Chief Assistant City Attorney
26                              **CORY M. BRENTE**, Assistant City Attorney
                                **SUREKHA A. PESSIS**, Deputy City Attorney
27
                                By
28                                    **WENDY SHAPERO**, Deputy City Attorney
                                    *Attorneys for Defendants*, **CITY OF LOS ANGELES**, et al.

                                    20