1  **GARY G. GEUSS**, Chief Assistant City Attorney
   **CORY M. BRENTE**, Assistant City Attorney
2  **SUREKHA A. PESSIS**, Deputy City Attorney - **SBN 193206**
   **WENDY SHAPERO,** Deputy City Attorney - **SBN 198739**
3  Email: Wendy.Shapero@lacity.org
   200 North Main Street
4  6th Floor, City Hall East
   Los Angeles, CA 90012
5  Phone No.: (213) 978-7029, Fax No.: (213) 978-8785

6  *Attorneys for Defendants,* **CITY OF LOS ANGELES, JON PETERS, RANDY**
7  **YOSHIOKA, JASON PRINCE, BRIANNA GONZALES,** and **RAUL BARRON**

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11 CHEYENNE DESERTRAIN, STEVE       ) CASE NO.: CV10-09053 RGK (PJWx)
   JACOBS-ELSTEIN, BRADFORD         )   *Hon. R. Gary Klausner, Ctrm. 850, Roybal*
12 ECKHART, PATRICIA                )   *Mag. Patrick J. Walsh, Ctrm. 23*
   WARIVONCHIK, LEROY BUTLER,       )
13 WILLIAM CAGLE, TERRY             ) **DEFENDANTS CITY OF LOS**
   HENDRICKSON,                     ) **ANGELES, ET AL.'S [PROPOSED]**
14                                  ) **STATEMENT OF UNCONTROVERTED**
           *Plaintiffs,*            ) **FACTS AND CONCLUSIONS OF LAW**
15                                  ) **IN SUPPORT OF MOTION AND**
                                    ) **MOTION FOR SUMMARY JUDGMENT**
16        v.                        ) **OR PARTIAL SUMMARY JUDGMENT**
                                    ) **OR PARTIAL SUMMARY JUDGMENT**
17 CITY OF LOS ANGELES, a municipal )
   entity, DOES 1-10, as individuals, ) [Fed.R.Civ.Proc. 56 (b)]
18                                  )
                                    ) [Defendants' Notice of Motion and Motion
19         *Defendants.*            ) for Summary Judgment, Proposed Order,
                                    ) Declarations of Jason Prince, Brianna
20 _____  ) Gonzales, Randy Yoshioka, and Wendy
                                    ) Shapero, and Exhibits Filed Concurrently
21                                  ) Herewith]

22                                    Date:        October 17, 2011
                                      Time:        9:00 a.m.
23                                    Courtroom:   850

24

25 Defendants **CITY OF LOS ANGELES, JON PETERS, RANDY YOSHIOKA,**

26 **JASON PRINCE, BRIANNA GONZALES,** and **RAUL BARRON** submit the

27 following Proposed Statement of Uncontroverted Facts and Conclusions of Law in

28 support of their Motion for Summary Judgment:

                                    1

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 1. In 2010, the Venice area was experiencing an increase in crime due to a large criminal transient population.  In addition, community members were complaining about people living in their cars and oversize vehicles in residential areas that were responsible for leaving trash on the streets. | Deposition of LAPD Captain Jon Peters, dated August 26, 2011, ("Peters Depo.") pp. 5:12-16, 14:17-20, 17:8-14, 21:13-23:8, 23:16-24:1, and 59:14-22., Exh. 1 to Declaration of Wendy Shapero filed concurrently herewith ("Shapero Decl."), ¶ 2. |
| 2. In response, the Pacific Division created a task force by adding officers to supplement the work of the Senior Lead Officers. | Peters Depo., pp. 25:6-26:21; 62:25-63:15; 68:14-25; 71:20-72:15; 84:7-85:11 and Exhibit 3 - Operational Plan referenced therein, Exh. 1 to Shapero Decl., ¶ 2. |
| 3. As part of addressing the issue, the LAPD researched ways to implement the Streets to Homes program.  This included identifying parking lots where people in vehicles could live in their cars overnight in the Venice area. | Peters Depo., pp. 27:2-29:18, Exh. 1 to Shapero Decl., ¶ 2. |
| 4. In addition, the Pacific Division sought to work with church groups to help provide information about  social services to the homeless. | Peters Depo., pp. 32:11-33:9; 38:23-41:3, 41:4-42:1, and Exhibit 1 referenced therein, Exh. 1 to Shapero Decl., ¶ 2. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 5. LAPD's Pacific Division distributes hygiene kits and clothing for the homeless. It has also found some housing for the homeless. | Peters Depo., 45:7-46:1 and 46:20-47:4, Exh. 1 to Shapero Decl., ¶ 2. |
| 6. Cheyenne Desertrain is homeless and disabled. | First Amended Complaint dated April 15, 2011 in the instant matter ("FAC"), ¶ 10 |
| 7. She owns a recreational vehicle ("RV") and a 1987 Mercedes 300 which is in poor condition. | Deposition of Cheyenne Desertrain dated August 9, 2011 ("Desertrain Depo."), pp. 27:21-23, 28:15-23, 117:2-22, Exh. 2 to Shapero Decl., ¶ 3. |
| 8. When away from her RV, she was issued a parking ticket by non-defendant LAPD Officer Quesada on September 13, 2010 for violation of Los Angeles Municipal Code § 80.69(B)(vehicles six feet height or more within 100 feet of intersection). | Desertrain Depo., pp. 32:14-33:8 and Exhibit 4 (parking citation # 1087101540) referenced therein, Exh. 2 to Shapero Decl., ¶ 3. |
| 9. She believes the ticket was unlawful because her RV was 44 feet away from the sign post that limits vehicles over six feet and the arrow on the sign was pointing in the opposite direction from where her vehicle was parked. | Desertrain Depo., pp. 34:20-35:5 and 35:17-37:24, Exh. 2 to Shapero Decl., ¶ 3. |
| 10. Her vehicle had a disability placard on the front and back. | Desertrain Depo., p. 52:6-9, Exh. 2 to Shapero Decl., ¶ 3. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 11.   On October 16, 2010, her RV was parked on Hampton Street after 6:00 p.m. | Desertrain Depo., pp. 54:8-18 and 56:14-24, Exh. 2 to Shapero Decl., ¶ 3. |
| 12.   Later that evening, Desertrain believes she was the victim of a drive-by kicking by two LAPD bike patrol officers. | Desertrain Depo., 53:5-13 and 66:4-24, Exh. 2 to Shapero Decl., ¶ 3. |
| 13.   Desertrain was inside her RV when she heard a thump outside her vehicle around 7:00 or 7:30 p.m. | Desertrain Depo., pp. 52:12-20 and 54:19-24, Exh. 2 to Shapero Decl., ¶ 3. |
| 14.   While not sure who the officers were, Desertrain believes it was Officer Quesada, the officer who issued the first ticket. | Desertrain Depo., pp. 60:2-9 and 61:3-62:24, Exh. 2 to Shapero Decl., ¶ 3. |
| 15.   She never spoke to the officers and she was not cited for anything. | Desertrain Depo., pp. 66:1-3 and 66:25-67:2, Exh. 2 to Shapero Decl., ¶ 3. |
| 16.   On November 3, 2010, she was issued a citation for violation of LAMC § 80.69(C) being parked in excess of 2 hours. | Desertrain Depo., 80:18-81:8 and Exhibit 7 (citation # 1087397102, dated November 3, 2010) referenced therein, Exh. 2 to Shapero Decl., ¶ 3. |
| 17.   Her RV was parked on Hampton south of Rose Avenue which has posted time limit parking signs. | Desertrain Depo., pp. 83:2-6, 85:8-10, and 86:3-16, Exh. 2 to Shapero Decl., ¶ 3 |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 18. Desertrain confronted LAPD Officer Prince about why he was issuing her a citation when her disabled plates exempted her. He allegedly told her he was instructed to issue a citation to any RV. | Desertrain Depo., pp. 81:10-82:2, 86:17-22, and 90:11-91:11, Exh. 2 to Shapero Decl., ¶ 3 |
| 19. Officer Prince was professional, did not threaten her, and didn't force her to do anything. | Desertrain Depo., pp. 91:18-25 and 101:15-17, Exh. 2 to Shapero Decl., ¶ 3 |
| 20. Desertrain challenged the ticket. | Desertrain Depo., pp. 92:4-93:23 and Exhibit 8 (letter dated January 20, 2011 contacting Parking Violations Bureau) referenced therein, Exh. 2 to Shapero Decl., ¶ 3 |
| 21. The ticket was eventually dismissed because she had handicapped plates. | Desertrain Depo., pp. 93:24-94:5, 95:16-20, and 96:3-97:12, Exh. 2 to Shapero Decl., ¶ 3 |
| 22. She never paid any fines in relation to either of the two citations issued. | Desertrain Depo., pp. 97:14-98:7, Exh. 2 to Shapero Decl., ¶ 3 |
| 23. Officer Prince testified that he made a mistake when he issued the citation on 11-3-10. | Declaration of Jason Prince dated September 12, 2011 ("Prince Decl.") filed concurrently herewith, ¶ 8. |
| 24. He did not know that the disabled plates permitted the disabled to park in excess of time limits posted on signs. | Prince Decl., ¶¶ 8 - 10. |
| 25. Had he known this, he would not have issued the citation. | Prince Decl., ¶¶ 8 - 10. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 26. He denies telling Desertrain he was required to issue citations to all RVs. | Prince Decl., ¶ 7. |
| 27. Jacobs-Elstein is not disabled but he is homeless. | FAC, ¶ 11. |
| 28. Jacobs-Elstein was primarily living in his vehicle from December 2007 until September 13, 2010. | Deposition of Steve Jacobs-Elstein dated August 9, 2011 ("Jacobs-Elstein Depo."), p. 19:10-12 and Exhibit 3 referenced therein, Exh. 3 to Shapero Decl., ¶ 4. |
| 29. In 2009, he was informed by a LAPD officer that it was illegal to live in his car. At the beginning of 2010, Jacobs-Elstein found private property to park on to sleep at night. | Jacobs-Elstein Depo., pp. 23:8-24:2 and 34:5-25, Exh. 3 to Shapero Decl., ¶ 4. |
| 30. Jacobs-Elstein received three citations for violation of LAMC § 85.02 which prohibits the use of a parked vehicle on city streets for living. The first citation he received was on September 13, 2010 from LAPD Officer Gonzales when he had been in his car a few hours. | Jacobs-Elstein Depo., pp. 13:10-14:2, and Exhibit 7 referenced therein, 59:1-60:8, 70:20-71:13; 72:2-8 , Exh. 3 to Shapero Decl., ¶ 4.; Declaration of Brianna Gonzales ("Gonzales Decl.") filed concurrently herewith, ¶¶ 4-9 and photographs referenced therein. |
| 31. Prior to this citation, Jacobs-Elstein had previously met Officers Gonzales and McInnis when he was in his car. | Jacobs-Elstein Depo., 60:12-61:13, and 62:7-9 , Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. |

6

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 32. Officer Gonzales warned him he was not allowed to live in his vehicle. | Jacobs-Elstein Depo., 63:13-20 and 67:24-68:1 , Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. |
| 33. At the time of the warning, he was lying back and relaxing his vehicle. | Jacobs-Elstein Depo., pp. 63:25-64:13 , Exh. 3 to Shapero Decl., ¶ 4. |
| 34. Officer Gonzales did not issue him a citation. | Jacobs-Elstein Depo., p. 68:5-6 , Exh. 3 to Shapero Decl., ¶ 4. |
| 35. At the time of the warning his car contained storage items, boxes, computers, food, water, pillow, and a blanket. | Jacobs-Elstein Depo., pp. 68:25-69:18 , Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. |
| 36. On September 13, 2010, Officer Gonzales again told Jacobs-Elstein he couldn't live in his car. | Jacobs-Elstein Depo., p. 74:14-21, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. |
| 37. At the time his car contained storage boxes, personal items, computers, water, food, blanket, and a pillow. | Jacobs-Elstein Depo., pp. 75:25-76:5 , Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. |
| 38. Jacobs-Elstein was not threatened or forced to do anything he did not want to do.  He was not arrested. | Jacobs-Elstein Depo., p. 79:7-18, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. |
| 39. Jacobs-Elstein went to court on the citation.  The citation was rejected. | Jacobs-Elstein Depo., pp. 81:3-24 and 83:5-84:3, Exh. 3 to Shapero Decl., ¶ 4. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 40. Jacobs-Elstein saw Officers Gonzales and McInnis one time between September 13, 2010 and October 31, 2010. | Jacobs-Elstein Depo., p. 88:5-19 , Exh. 3 to Shapero Decl., ¶ 4. |
| 41. He was sitting on the wall of the Baptist Church property when Officer McInnis allegedly said, "What are you doing here?  The next time I see you, I'm going to take you to jail." | Jacobs-Elstein Depo., pp. 88:23-89:2, Exh. 3 to Shapero Decl., ¶ 4. |
| 42. Jacobs-Elstein complained about the incident at a neighborhood meeting with Senior Lead Officer Peggy Thusing from the LAPD. Ms. Thusing told him she didn't like to hear that officers conduct themselves in that manner and asked if he wanted to file a formal complaint. | Jacobs-Elstein Depo., pp.171:22-173:22, Exh. 3 to Shapero Decl., ¶ 4. |
| 43. Jacobs-Elstein did not file a complaint. | Jacobs-Elstein Depo., pp. 171:22-173:22, Exh. 3 to Shapero Decl., ¶ 4. |
| 44. Jacobs-Elstein's next contact was on October 31, 2010 when he was arrested and cited for violation of LAMC § 85.02. | Jacobs-Elstein Depo., p. 93:2-19, 140:6-16, and Exhibit 15 referenced therein, Exh. 3 to Shapero Decl., ¶ 4; Gonzales Decl., ¶¶ 10-11. |
| 45. He was sitting in his car about ten minutes and was about to get out from it. | Jacobs-Elstein Depo., pp. 93:23-94:6, 106:2-13, and 111:6-10, Exh. 3 to Shapero Decl., ¶ 4. |

8

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 46. Officer Gonzales and her partner drove down the block where Jacobs-Elstein was parked, waited a few minutes, then approached him and informed him he would be arrested for violating LAMC Section 85.02. | Jacobs-Elstein Depo., 97:13-98:4 and 102:18-20, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 10-17 and photographs referenced therein. |
| 47. His car contained the same personal items as on prior occasions when he was warned/cited by the police. | Jacobs-Elstein Depo., p. 99:24-100:15, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 10-17 and photographs referenced therein. |
| 48. He believes he may have had a bottle of urine in his car as well. | Jacobs-Elstein Depo., p. 203:2-10, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 10-17 and photographs referenced therein. |
| 49. Officer Gonzales told him that he had been warned before about living in his car and that now he would be arrested. | Jacobs-Elstein Depo., p. 105:16-23, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 10-17 and photographs referenced therein. |
| 50. The officers were not yelling, did not point a gun at him, did not threaten physical violence, use force, or injure him. | Jacobs-Elstein Depo., 111:11-113:15 |
| 51. He was at the scene approximately 20 minutes before he was transported to the station. | Jacobs-Elstein Depo., pp. 118:18-119:3, Exh. 3 to Shapero Decl., ¶ 4. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 52. The police impounded his vehicle. Officer Gonzales stated she impounded his vehicle because she was concerned about vandalism and theft of his vehicle since Jacobs-Elstein lived in his car. | Gonzales Decl., ¶¶ 18-20 and DVD referenced therein. |
| 53. Jacobs-Elstein claims that two friends offered to drive his vehicle away instead of being impounded | See Verified Response to Interrogatories by Plaintiff Jacob-Elstein No 8, Exhibit 4 to Shapero Decl., ¶ 5; and Gonzales Decl., ¶¶ 18-20 and DVD referenced therein. |
| 54. However, a video of Jacob-Elstein's arrest demonstrates that the cinematographer/friend only offered to take Jacob-Elstein's keys from him, not drive the car away. Nor is any request made to the officers to drive the car away. Finally, there is neither a visible nor audible response from Jacobs-Elstein showing his interest in having a friend drive his car away. . | Gonzales Decl., ¶¶ 18-20 and DVD referenced therein. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 55. Jacobs-Elstein's third citation for LAMC § 85.02 was on January 30, 2011 when Officer Yoshioka issued him a citation. | Jacobs-Elstein Depo., p. 156:12-21 and Exhibit 22 (Citation # 95546 dated January 30, 2011, 168:7-17) referenced therein, Exh. 3 to Shapero Decl., ¶ 4.; Declaration of Randy Yoshioka ("Yoshioka Decl.") filed concurrently herewith, ¶¶ 20-24, and photographs referenced therein. |
| 56. Jacobs-Elstein was parked in his car near Penmar Park. | Jacobs-Elstein Depo., pp. 156:22-157:21, Exh. 3 to Shapero Decl., ¶ 4. |
| 57. His car had computers, personal items, food, water, boxes, blankets, and a pillow. | Jacobs-Elstein Depo., pp. 157:24-158:6, Exh. 3 to Shapero Decl., ¶ 4.; Yoshioka Decl., ¶¶ 20-24, and photographs referenced therein. |
| 58. He had been in his car for about an hour. | Jacobs-Elstein Depo., p. 158:8-11, Exh. 3 to Shapero Decl., ¶ 4. |
| 59. While he does not own a dog, at that time he had a dog food bowl on the passenger seat because he was dog sitting for a friend. | Jacobs-Elstein Depo., pp. 191:25-193:1, Exh. 3 to Shapero Decl., ¶ 4.; Yoshioka Decl., ¶¶ 20-24, and photographs referenced therein. |
| 60. Officer Yoshioka told him that he cannot live in his car. | Jacobs-Elstein Depo., p. 162:2-4, Exh. 3 to Shapero Decl., ¶ 4.; Yoshioka Decl., ¶¶ 20-24, and photographs referenced therein. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 61. Jacobs-Elstein responded, "I know I can't live in my car. I'm not living in my car" and "I have a place to live" wherein he tried to show Officer Yoshioka the permission slip from Palms Court where he slept at night. | Jacobs-Elstein Depo., p. 162:12-19, Exh. 3 to Shapero Decl., ¶ 4. |
| 62. While Jacobs-Elstein felt Officer Yoshioka was rude to him, he was not threatened or handcuffed. | Jacobs-Elstein Depo., p. 163:1-17, Exh. 3 to Shapero Decl., ¶ 4. |
| 63. He was given a citation. | Jacobs-Elstein Depo., p. 165:15-18, Exh. 3 to Shapero Decl., ¶ 4; Yoshioka Decl., ¶¶ 20-24, and photographs referenced therein. |
| 64. He was also provided shelter information. | Jacobs-Elstein Depo., p. 193:2-13, Exh. 3 to Shapero Decl., ¶ 4. |
| 65. Jacobs-Elstein went to court on the citation on March 17, 2011. | Jacobs-Elstein Depo., p. 169:16-17, Exh. 3 to Shapero Decl., ¶ 4. |
| 66. He was advised that no criminal charges were filed against him. | Jacobs-Elstein Depo., p. 170:1-10, Exh. 3 to Shapero Decl., ¶ 4. |
| 67. He has not been cited since January 30, 2011. | Jacobs-Elstein Depo., pp. 170:20-171:2, Exh. 3 to Shapero Decl., ¶ 4. |
| 68. Eckhart is disabled. | FAC, ¶ 12. |
| 69. He was cited on November 3, 2010, January 29, 2011, and July 19, 2011 (violation of oversize vehicle parking). | Deposition of Bradford H. Eckhart dated August 16, 2011 ("Eckhart Depo."), pp. 16:1-6, 85:24-86:12, 89:3-12, and 102:15-19, Exh. 5 to Shapero Decl., ¶ 6. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 70.   One ticket was for violating a two-hour parking rule. | Eckhart Depo., p. 42:22-25, Exh. 5 to Shapero Decl., ¶ 6. |
| 71.   He received another ticket for an oversize vehicle violation. | Eckhart Depo., p. 43:1-4, Exh. 5 to Shapero Decl., ¶ 6. |
| 72.   He also received a $50 fine for improperly placing his disability placard.  He never paid the fine. | Eckhart Depo., p. 55:1-17, Exh. 5 to Shapero Decl., ¶ 6. |
| 73.   On March 9, 2011, he received another notice regarding the January citation advising him of a $68 fee. | Eckhart Depo., p. 68:12-17, Exh. 5 to Shapero Decl., ¶ 6. |
| 74.   There was an error on his November 3, 2010 citation because the precise location was not indicated.  As a result, his ticket was dismissed and he did not have to pay a fine. | Eckhart Depo., pp. 50:3-14 and 51:11-52:8, Exh. 5 to Shapero Decl., ¶ 6. |
| 75.   No officer threatened to harm him or to take him into custody. | Eckhart Depo., p. 112:13-20, Exh. 5 to Shapero Decl., ¶ 6. |
| 76.   He never paid the fine for the January 29, 2011 ticket.  He requested an administrative review and subsequently attended an in-person hearing. He eventually avoided paying the fee by applying for a fee waiver. | Eckhart Depo., pp. 69:9-72:8 and 81:9-20, Exh. 5 to Shapero Decl., ¶ 6. |
| 77.   He needs to attend an in-person hearing for his July 19, 2011 citation. | Eckhart Depo., pp. 90:23-91:2, Exh. 5 to Shapero Decl., ¶ 6. |

13

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 78.   Patricia Warivonchik is not disabled. | Deposition of Patricia Warivonchik dated August 12, 2011 ("Warivonchik Depo.") filed concurrently herewith, p. 10:2-4, Exh. 6 to Shapero Decl., ¶ 7. |
| 79.   Warivonchik believes she was targeted by the LAPD because of the perception she was homeless.  She is not homeless.  She owns a RV. | Warivonchik Depo., p. 10:5-25, Exh. 6 to Shapero Decl., ¶ 7. |
| 80.   On November 13, 2010, she was driving on Lincoln when her left turn signal did not turn off. | Warivonchik Depo., p. 11:17-23, Exh. 6 to Shapero Decl., ¶ 7; Yoshioka Decl., ¶¶ 25-26. |
| 81.   She was driving from Santa Monica to Westchester.  She had not noticed the police following her vehicle until she was pulled over on Lincoln. | Warivonchik Depo., pp. 27:25-29:1 and 30:17-25, Exh. 6 to Shapero Decl., ¶ 7; Yoshioka Decl., ¶¶ 25-26. |
| 82.   Officer Murray told her they had followed her for a mile. | Warivonchik Depo., p. 31:1-7, Exh. 6 to Shapero Decl., ¶ 7; Yoshioka Decl., ¶¶ 25-26. |
| 83.   She realized that her blinker had been on for approximately a mile or five to ten minutes. | Warivonchik Depo., p. 32:3-25, Exh. 6 to Shapero Decl., ¶ 7. |
| 84.   She apologized to Officer Murray about her blinker not turning off. | Warivonchik Depo., pp. 36:24-37:3, Exh. 6 to Shapero Decl., ¶ 7. |
| 85.   Officer Murray allegedly apologized for stopping her and explained he was not a Nazi,  he was just following orders. | Warivonchik Depo., p. 39:8-25, Exh. 6 to Shapero Decl., ¶ 7. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 86.   Officer Murray warned her about LAMC § 85.02 and told her that if she was found again she would be arrested and her RV impounded. | Warivonchik Depo., pp. 40:19-41:5, and Exhibit 2 (mistakenly identified as Exhibit 1) referenced therein [Bates stamp 105 photograph of Warivonchik's RV on the date she was stopped and warned by Officer Murray], and 44:12-45:4, 45:5-11, Exh. 6 to Shapero Decl., ¶ 7. |
| 87.   Warivonchik was not cited for anything. | Warivonchik Depo., p. 38:14-17, Exh. 6 to Shapero Decl., ¶ 7; Yoshioka Decl., ¶26. |
| 88.   She has never been cited for LAMC 85.02 or pulled over since November 13, 2010. | Warivonchik Depo., p. 48:11-18, Exh. 6 to Shapero Decl., ¶ 7. |
| 89.   Leroy Butler is disabled.  He and his wife own and drive a 1986 Toyota RV and a 27 foot vehicle.  The Toyota has a disability placard visible from the front window and the 27 foot vehicle has disability plates on the front and back. | FAC, ¶ 14. |
| 90.   Butler received three parking citations.  He never met any of the issuing officers. | Deposition of Leroy Butler dated August 12, 2011 ("Butler Depo.") filed concurrently herewith, p. 15:23-25, Exh. 7 to Shapero Decl., ¶ 8. |
| 91.   He lives outside in Venice. | Butler Depo., p. 23:2-14, Exh. 7 to Shapero Decl., ¶ 8. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 92. The first parking ticket he received was on August 16, 2010 for violating LAMC § 80.73.2 which prohibits parking in one place for more than 72 hours. | FAC, ¶ 14; Butler Depo., p. 16:3-25, 47:4-17 and Exhibit 6 referenced therein (citation issued on August 16, 2010), Exh. 7 to Shapero Decl., ¶ 8. |
| 93. Butler believes with disabled plates he is not subject to the 72 hour parking restriction. Nevertheless, he claims he moves his vehicle every 48 hours. | Butler Depo., pp. 18:11-22, and 20:21-21:5, Exh. 7 to Shapero Decl., ¶ 8. |
| 94. Butler challenged the issuance of this parking citation. | Butler Depo., pp. 32:12-34:3 and Exhibit 5 referenced therein (letter sent to parking bureau complaining of wrongly issued tickets), Exh. 7 to Shapero Decl., ¶ 8. |
| 95. The second citation he received was for an oversized vehicle within 100 feet of an intersection in violation of LAMC § 80.69 issued on September 4, 2010. | Butler Depo., 21:6-13, 28:4-24 and Exhibit 4 referenced therein, 29:12-24, Exh. 7 to Shapero Decl., ¶ 8. |
| 96. His mother in law paid his ticket. | Butler Depo., p. 30:2-18, Exh. 7 to Shapero Decl., ¶ 8. |
| 97. He didn't challenge the ticket. | Butler Depo., p. 31:2-14, Exh. 7 to Shapero Decl., ¶ 8. |
| 98. Butler was present when it was issued but did not speak to the officer because he was some distance away from the vehicle. | Butler Depo., pp. 37:11-18 and 44:5-10, Exh. 7 to Shapero Decl., ¶ 8. |

16

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 99. Butler challenged this ticket but believes he paid the fine. | Butler Depo., pp. 44:19-22 and 45:15-20, Exh. 7 to Shapero Decl., ¶ 8. |
| 100. Butler has never been pulled over by the police despite living in the Venice area since 1969 and owning two RVs. | Butler Depo., p. 50:5-8, Exh. 7 to Shapero Decl., ¶ 8.; FAC, ¶ 14. |
| 101. Butler was again cited on July 19, 2011 at 3:29 a.m. for parking an oversized vehicle on the street. | Butler Depo., p. 50:9-23, 50:9-20 and Exhibit 9 referenced therein, Exh. 7 to Shapero Decl., ¶ 8. |
| 102. His car was not there for 72 hours because it was street cleaning day. | Butler Depo., p. 52:7-20, Exh. 7 to Shapero Decl., ¶ 8. |
| 103. He is challenging this ticket. | Butler Depo., p. 57:1-22, 67:14-23 and Exhibit 10 referenced therein, Exh. 7 to Shapero Decl., ¶ 8. |
| 104. William Cagle is disabled. | FAC, ¶ 15. |
| 105. He has a disabled placard clearly displayed on his vehicle at all times. He is also homeless. | FAC, ¶ 15. |
| 106. He was cited on October 17, 2010 for violation of LAMC § 85.02. | Deposition of William Cagle dated August 16, 2011 ("Cagle Depo.") filed concurrently herewith, pp. 44:8-12 and 45:6-9, Exh. 8 to Shapero Decl., ¶ 9; Yoshioka Decl., ¶¶ 6-9 and photographs attached thereto. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 107.  He went to court for the October 17, 2010 citation. | Cagle Depo., pp. 68:11-69:15, Exh. 8 to Shapero Decl., ¶ 9; Yoshioka Decl, ¶¶ 6-9 and photographs attached therein. |
| 108.  On November 3, 2010, Cagle was issued a citation for parking at an expired meter. | Cagle Depo., pp. 72:9-73:25, Exh. 8 to Shapero Decl., ¶ 9. |
| 109.  On November 22, 2010, he was arrested and cited for violation of LAMC § 85.02. His car appeared in the same condition as when he was cited on October 17, 2010.  Cagle admitted he kept a bottle of urine in his car. | Cagle Depo., p. 136:5-10, Exh. 8 to Shapero Decl., ¶ 9; Yoshioka Decl., ¶¶ 10-11. |
| 110.  Cagle's car was towed because it was parked in a high crime neighborhood. The officers did not want it to be vandalized or burglarized. | Cagle Depo., pp. 33:1-17, 99:20-100:19, and 129:1-14, Exh. 8 to Shapero Decl., ¶ 9; Yoshioka Decl., ¶ 11. |
| 111.  Cagle challenged the November 3, 2010 citation. | Cagle Depo., pp. 79:2-80:4, Exh. 8 to Shapero Decl., ¶ 9 |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 112. Pacheco was cited on January 14, 2011 for exceeding the 72 hour parking limitation. | Deposition of Luis Pacheco dated August 17, 2011 ("Pacheco Depo.") filed concurrently herewith, pp. 16:7-10 and 25:17-19, Exh. 9 to Shapero Decl., ¶ 10; Deposition of Della Franco dated August 17, 2011 ("Franco Depo.") filed concurrently herewith, p. 17:7-8, Exh. 10 to Shapero Decl., ¶ 11. |
| 113. Pacheco challenged his citation. | Pacheco Depo., pp. 45:2-46:1, Exh. 9 to Shapero Decl., ¶ 10. |
| 114. The review process resulted in the decision that the ticket was valid. | Pacheco Depo., p. 48:21-25, Exh. 9 to Shapero Decl., ¶ 10 |
| 115. Franco felt threatened and targeted by the LAPD and residents of Venice because she had an RV. | Franco Depo., 12:3-10 and 16:16-20, Exh. 10 to Shapero Decl., ¶ 11. |
| 116. However, no officer threatened to take them to jail or cite them in relation to their RV. | Franco Depo., p. 25:4-10, Exh. 10 to Shapero Decl., ¶ 11. |
| 117. Officer Yoshioka never harassed them. | Franco Depo., p. 63:14-17, Exh. 10 to Shapero Decl., ¶ 11. |
| 118. Chris Taylor is homeless. | Deposition of Chris Taylor dated August 11, 2011 ("Taylor Depo."), p. 16:20-21, Exh. 11 to Shapero Decl., ¶ 12 |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 119.  Chris Taylor was cited and arrested for illegally living in his vehicle on December 18, 2010 by LAPD Officers Yoshioka and Murray. | FAC, ¶ 19, Deposition of Chris Taylor dated August 11, 2011 ("Taylor Depo."), pp. 18:23-19:11, attached hereto as Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. |
| 120.  Taylor had previously met Officers Yoshioka and Murray in October 2010. At that time, he was laying down in his car. | Taylor Depo., pp. 56:1-9 and 57:1-23, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. |
| 121.  He had spent the night in his car. | Taylor Depo., p. 56:8-25, Exh. 11 to Shapero Decl., ¶ 12 |
| 122.  He had all his art supplies, clothing, a pillow, and a blanket. | Taylor Depo., pp. 58:18-59:25, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. |
| 123.  The officers explained to him that he could not live in his vehicle. | Taylor Depo., p. 61:20-24, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. |
| 124.  He was detained a total of 20 minutes but he was not cited. | Taylor Depo., p. 66:17-23, Exh. 11 to Shapero Decl., ¶ 12. |
| 125.  From the time of his initial warning not to live in his vehicle, Taylor saw the officers twice a week and believes they looked into his car to see if he was sleeping. | Taylor Depo., pp. 66:24-67:21, Exh. 11 to Shapero Decl., ¶ 12. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 126. His car was usually parked on Third and Sunset. | Taylor Depo., p. 68:6-13, Exh. 11 to Shapero Decl., ¶ 12. |
| 127. On December 18, 2010, a friend of Taylor's was standing outside Taylor's vehicle while he sat inside. | Taylor Depo., p. 77:10-14, Exh. 11 to Shapero Decl., ¶ 12. |
| 128. They were speaking together for 15 minutes. | Taylor Depo., p. 77:21-24, Exh. 11 to Shapero Decl., ¶ 12. |
| 129. The police drove up to Taylor's car. | Taylor Depo., p. 79:21-23, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. |
| 130. Officer Murray ordered Taylor out of his car. | Taylor Depo., p. 80:18-24, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. |
| 131. Officer Murray allegedly said "I told you it was illegal to lie in your vehicle." | Taylor Depo., p. 85:17-21, Exh. 11 to Shapero Decl., ¶ 12. |
| 132. He told the officers he was not living in his vehicle and that he had a card to a homeless shelter documenting that he lived there. | Taylor Depo., p. 89:20-90:6, Exh. 11 to Shapero Decl., ¶ 12. |
| 133. Photographs depicting the condition of his vehicle were taken when he was arrested. | Taylor Depo., pp. 89:12-19, 92:23-93:1, 110:4-117:21, and Exhibit 15 referenced therein, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. |

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 134.  In addition to a tray of food, he had a sleeping bag, shoes, clothes hangers, soda, and a bottle of urine. | Taylor Depo., p. 106:11-21, Exh. 11 to Shapero Decl., ¶ 12.; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. |
| 135.  He was in custody for five hours before being released. | Taylor Depo., p. 101:4-6, Exh. 11 to Shapero Decl., ¶ 12. |
| 136.  His vehicle was impounded. | Taylor Depo., p. 102:20-22, Exh. 11 to Shapero Decl., ¶ 12. |
| 137.  His car was impounded because it was parked in a high crime area and the officers were concerned about it being vandalized or burglarized. | Yoshioka Decl., ¶ 19. |
| 138.  Taylor didn't try to get the car out of impound because he did not have the money. | Taylor Depo., p. 105:13-24, Exh. 11 to Shapero Decl., ¶ 12. |
| 139.  He went to the court on the arrest and the charges were dismissed. | Taylor Depo., pp. 107:19-24, and 108:25-109:2, Exh. 11 to Shapero Decl., ¶ 12. |

**CONCLUSIONS OF LAW**

**FIRST CAUSE OF ACTION FOR VIOLATION OF THE FOURTH AMENDMENT AND CALIFORNIA CONSTITUTION ARTICLE I, SECTION 13 BY PLAINTIFFS DESERTRAIN, JACOBS-ELSTEIN, WARIVONCHIK, CAGLE, TAYLOR, AND GARCIA**

1.      Defendants are entitled to summary judgment because Plaintiffs cannot prove they were unreasonably detained, searched, cited, or arrested under the Fourth Amendment or Article I, Section 13 of the California Constitution.  In the

22

alternative, the defendant officers are entitled to qualified immunity for the claims alleged under 42 U.S.C. Section 1983 and immunity under Government Code section 821.6 for all state law claims relating to the issuance of citations.

**SECOND CAUSE OF ACTION FOR VIOLATION OF THE FIFTH AMENDMENT AND ARTICLE I, SECTION 7 OF THE CALIFORNIA CONSTITUTION BROUGHT BY ALL PLAINTIFFS**

1. The Defendant officers were entitled to impound plaintiffs' vehicles under the community-caretaking exception to the warrant requirement under the Fourth Amendment. In the alternative, the defendant officers are entitled to qualified immunity for the claims alleged under 42 U.S.C. Section 1983 and immunity under Government Code section 821.6.

2. Plaintiffs cannot prove their right to intrastate travel has been violated under federal or state law.

3. Plaintiffs cannot prove a violation of the Takings Clause of the Fifth Amendment.

**THIRD CAUSE OF ACTION FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND ARTICLE I, SECTION 13 OF THE CALIFORNIA CONSTITUTION BY ALL PLAINTIFFS**

1. Plaintiffs cannot prove a violation of the Equal Protection Clause because there is no evidence of intentional discrimination based on their being homeless and/or disabled. Further, Plaintiffs cannot demonstrate that similarly situated people were treated differently from themselves. In the alternative, the defendant officers are entitled to qualified immunity for the claims alleged under 42 U.S.C. Section 1983

**FOURTH AND FIFTH CAUSES OF ACTION FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12132 AND THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794**

1. Based on representations made by Plaintiffs' counsel in emails, Plaintiffs are not proceeding on the federal disability claims. (See Declaration of Wendy Shapero and Exhibits attached thereto). However, even if the ADA/Rehabilitation Act

1  claims were being pursued, Defendants would be entitled to summary judgment

2  because there is no evidence of intentional discrimination.

3  **SIXTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CIVIL CODE**

4  **SECTION 52.1 BY ALL PLAINTIFFS**

5  1.    Defendants are entitled to summary judgment because Plaintiffs did not suffer a

6         violation of a constitutional or statutory right.  Further, Plaintiffs cannot prove the

7         violation of any alleged right was accomplished by threats, coercion, or

8         intimidation.

9  **SEVENTH AND EIGHTH CAUSES OF ACTION FOR VIOLATION OF CIVIL**

10 **CODE SECTIONS 54 AND 55 BY ALL PLAINTIFFS EXCEPT JACOBS-**

11 **ELSTEIN, PACHECO, AND FRANCO**

12 1.    Defendants are entitled to summary judgment because they are immune from all

13        claims related to the issuance of parking citations under Government Code section

14        821.6.  Further, Plaintiffs cannot prove the alleged unlawful actions were taken

15        against them by virtue of Plaintiffs' disabilities.

16 **NINTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF**

17 1.    Plaintiffs' inability to prove any violation of law precludes their entitlement to

18        injunctive relief.

19

20 DATED: September 13, 2011    **CARMEN A. TRUTANICH,** City Attorney
                                 **GARY G. GEUSS,** Chief Assistant City Attorney
21                               **CORY M. BRENTE,** Assistant City Attorney
                                 **SUREKHA A. PESSIS,** Deputy City Attorney
22

23                               By _____

24                                   **WENDY SHAPERO,** Deputy City Attorney

25                               *Attorneys for Defendants,* **CITY OF LOS ANGELES,**
                                 **JON PETERS, RANDY YOSHIOKA, JASON**
26                               **PRINCE, BRIANNA GONZALES,** and **RAUL**
                                 **BARRON**
27

28

                                     24