CAROL A. SOBEL   SBN 84483
429 Santa Monica Boulevard, Ste. 550
Santa Monica, CA  90401
T. 310 393-3055  F. 310 393-3605
E. carolsobel@aol.com

BARRETT S. LITT  SBN 45527
LITT, ESTUAR & KITSON LLP
1055 Wilshire Boulevard, Ste 1880
Los Angeles, CA 90017
T. 213 386-3114   F. 213 380-4585
E. blitt@littlaw.com

LEGAL AID FOUNDATION
OF LOS ANGELES
SUSAN MILLMANN  SBN 92417
1640 5th Street,  Ste 124
Santa Monica, CA 90401
T. 310 899-6200  F. 310 899-6208
E. smillmann@lafla.org

MICHAEL S. RAPKIN   SBN 67220
SCOTT B. RAPKIN   SBN 261867
LAW OFFICE OF MICHAEL RAPKIN
233 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
T.  310 319 5465   F. 310 319 5355
E.  scottrapkin@rapkinesq.com

# IN THE UNITED STATES DISTRICT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CHEYENNE DESERTRAIN, et al., | ) CASE NO. CV 10-09053 RGK (PJWx) |
| Plaintiffs, | ) MEMORANDUM IN SUPPORT OF |
| vs. | ) MOTION FOR SUMMARY ) ADJUDICATION |
| CITY OF LOS ANGELES, et al., | ) Date: October 17, 2011 |
| Defendants. | ) Time: 9:00 a.m. ) Ctrm:        Roybal 850 |
| | Hon. R. Gary Klausner |

# TABLE OF CONTENTS

I.   INTRODUCTION .......................................................................... 1

II.  THE STANDARD ON SUMMARY ADJUDICATION ...................... 1

III. STATEMENT OF FACTS ............................................................. 2

    A. Cheyenne Desertrain ............................................................... 2

    B. Steve Jacobs-Elstein ............................................................... 2

    C. Chris Taylor .......................................................................... 3

    D. William Cagle ........................................................................ 4

    E. Patricia Warivonchik .............................................................. 4

    F. Bradford Eckhart ................................................................... 5

    G. Leroy Butler .......................................................................... 5

    H. Della Franco and Luis Pacheco ............................................... 5

    I. The City Policies at Issue ........................................................ 6

    J. Defendants ............................................................................ 6

IV.  LAMC SECTION 85.02 IS UNCONTSITUTIONALLY VAGUE ....... 6

    A. LAMC Section 85.02 Is unconstitutionally Vague On Its Face ..... 7

    B. LAMC Section 85.02 Criminalizes "Vagrancy ........................... 9

V.   LAMC Section 85.02 VIOLATES BOTH THE FUNDAMENTAL RIGHT .... 11
    TO TRAVEL AND MOVEMENT AND EQUAL PROTECTION

    A. LAMC Section 85.02 Violates the Right to Travel and Movement .... 11

    B. LAMC Section 85.02 Violates Equal Protection .......................... 13

        1. LAMC Section 85.02 is not narrowly tailored to address crime ..... 13

        2. LAMC Section 85.02 is not narrowly tailored to promote aesthetics ... 14

i

C. Section 85.02 Even Fails a Rational Basis Test ................... 14

VI. THE ARRESTS OF AJCOBS-ELSTEIN, TAYLOR AND CAGLE, THE .... 15
SEIZURE OF THEIR VEHICLES AND THE DETENTION O
WARIVONCHIK VIOLATE THE FOURTH AMENDMENT

VII. CITATIONS ISSUED TO DISABLED PLAINTIFFS FOR LOCAL ....... 16
PARKING REGULATIONS VIOLATE STATE LAW

VIII. SUMMARY ADJUDICATION IS PROPER ON THE MONELL CLAIM ... 18

IX. SUMMARY ADJUDICATION IS PROPER ON CIV. CODE Section 54 ... 19

X. SUMMARY ADJUDICATION IS PROPERTY ON CIVIL CODE Section 52.1 ... 20

XI. SUMMARY JUDGMENT IS PROPER AGAINST TH CITY ON THE ...... 20
STATE LAW CLAIMS BASED ON "RESPONDEAT SUPERIOR"

XII. CONCLUSION ................................................ 20

1

TABLE OF AUTHORITIES

2

Federal Cases

3

*Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986)                    12

4

*Brendlin v. California,* 551 U.S. 249 (2007)                                            15

5

*Bryan v. United States*, 524 U.S. 184, 195 (1998)                                      17

6

*California v. Hodari*, 499 U.S. 621 (1991)                                              15

7

*Chew v. Gates*, 27 F.3d 1432, 1450 (9th Cir. 1994)                                      16

8

9

*City of Chicago v. Morales*, 527 U.S. 41, 53, 56, 58, 59 (1999)      6, 7, 8, 9, 10, 11, 14

10

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446-47 (1985)           15

11

*Diaz v. Brewer*, ___ F.3d___ , Cir. No. 10-16797, Slip Opinion at 16906
(9th Cir. Sept. 6, 2011)

12

                                                                                14-15, 15

13

*Dubner v. City & County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001)           15

14

*Dunn v. Blumstein*, 405 U.S. 330, 340 (1972)                                           12

15

*Edgerly v. City and County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010)        20

16

*Grossman v. City of Portland*, 33 F.3d 1200, 1203-1204, 1209 (9th Cir. 1994)    15-16, 16, 19

17

*Gerritsen v. City of Los Angeles*, 994 F.2d 570 (9th Cir. 1993)                        19

18

*Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)                                     18

19

20

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)           7

21

*Hoye v. City of Oakland*, 2011 U.S. App. LEXIS 15541, *29 (9th Cir. July 28, 2011)      7

22

*Johnson v. Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002)                              12

23

*Jones v. City of Los Angeles*,  444 F.3d 1118, 1136 (9th Cir. 2006)            3, 4, 7, 8, 13

24

25

*King v. New Rochelle Mun. Housing Authority*, 442 F.2d 646, 648 (2d Cir. 1971)          12

26

*Kolender v. Lawson*, 461 U.S. 352, 358 (1983)                                    6, 8, 9, 10

27

*Lawrence v. Texas*, 539 U.S. 558, 580 (2003)                                           15

28

iii

*Lutz v. City of York, Pa.,* 899 F.2d 255, 268 (3rd Cir. 1990) 12

*Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) 19

*Monell v. New York City Dept. of Soc. Services*, 436 U.S. 658, 708 (1978) 18, 20

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) 18

*Nunez v. City of San Diego*, 114 F.3d 935, 944 & N. 6 (9th Cir. 1997) 12, 13

*Pacific Fruit Express Co. v. Akron, Canton & Youngstown RR. Co.,* 524 F.2d 1025 (9th Cir. 1975) 1

*Palko v. Connecticut*, 302 U.S. 319, 325-327 (1937) 11

*Papachristou v. Jacksonville*, 405 U.S. 156, 161-162, 163,165, 170 (1972) 6-7, 7, 8, 9, 10, 11

*Plyler v. Doe*, 457 U.S. 202, 216-17 (1982) 13

*Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (*en banc*) 20

*Roska v. Peterson*, 328 F.3d 1230, 1252 (10th Cir. 2003), (*aff'd and remanded on other grounds*), 437 F.3d 964 (2006) 16

*Schall v. Martin*, 467 U.S. 253, 264 (1984) 13

*Screws v. United States*, 325 U.S. 91 (1945) 10

*Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990) 12

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) 18

*United States v. Hodson,* 77 U.S. (10 Wall.) 395, 409, 19 L. Ed. 937 (1870) 17

*United States v. Orduno-Martinez*, 561 F.3d 1134, 1138 n.2 (10th Cir. 2009) 17

*Williams v. Fears*, 179 U.S. 270, 274 (1900) 11

*Winters v. New York*, 333 U.S. 507, 540 (1948) 11

**Federal Statutes**

Federal Rules of Civil Procedure Sections 56(a), (b) 1

Federal Rules of Civil Procedure Section 65(d)(2) 1

**California Constitution**

Calif. Constitution Art.I, Section 7, 13      1, 12

**California Cases**

*People v. Garth*, 234 Cal.App.3d 1797, 1799, 1800 (1991)      16

*People v. Lopez*, 197 Cal.App.3d 93, 101 (1987)      17-18, 18

*Rumford v. City of Berkeley*, 31 Cal.3d 545, 550 (1982)      16

*Spicer v. City of Camarillo*, 195 Cal.App.4th 1423, 1425 (2011)      17

*Tobe v. City of Santa Ana*, 9 Cal.4th 1069 (1995)      1, 12

*Venegas v. County of Los Angeles*, 32 Cal.4th 820, 841, 843 (2004)      20

*Wooldridge v. Mounts*, 199 Cal.App.2d 620, 623-624 (1962)      17

**California Statutes**

California Civil Code Section 52.1      20

California Civil Code  Section 54.1      19

California Civil Code  Section 54.1(e)      19

California Govt. Code Section 815.2      20

California Vehicle Code Section 22507(a)      16

California Vehicle Code Section 22511.5      16, 17

California Vehicle Code Section 22511.5(a)(1)(A)      17

California Vehicle Code Section 22511.5(a)(1)(B)      17

California Vehicle Code Section 22511(a)(1)(B)(2)      17

**Local Ordinances**

Los Angeles Municipal Code Section 41.18(d)      3, 7

Los Angeles Municipal Code Section 42.15                                               3

Los Angeles Municipal Code Section 63.93                                               3

Los Angeles Municipal Code Section 80.69(b)                                           17

Los Angeles Municipal Code Section 80.69(c)                                           17

Los Angeles Municipal Code Section 80.69(d)                                           17

Los Angeles Municipal Code Section 80.69.4(a)                                     16, 17

Los Angeles Municipal Code Section 85.02                                          *passim*

**Other Cases**

*Brandmiller v. Arreola*, 199 Wis. 2d528, 544 N.W. 2d 894, 899 (Wisc. 1966)          12

**Treatises and Other Authorities**

*Homeless in a Modern Urban Setting*, 10 Fordham Urb. L. J. 749, 754 n.17 (1982)      9

Risa Gubuloff, *Vagrancy, Abortion & Fundamental Rights*,
62 STAN. L. REV. 1361, 1371 (2010)                                                   10

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO BEFORE TRIAL
(Rutter Group 2010), Sections 14:33, 14:37                                            1

1 W. Blackstone, *Commentaries on the Laws of England* 130 (1765)                    11

*Webster's Collegiate Dict*, 3d ed.                                                   8

vi

## I.     INTRODUCTION

Plaintiffs seek a declaration that the City's policies and practices, codified in the Municipal Code and implemented by the Venice Homeless Outreach Task Force, violate fundamental rights under the federal and state Constitution.[1]  Cagle, Jacobs-Elstein, Taylor, Warivonchik, Franco and Pacheco ask that Los Angeles Municipal Code §85.02 be held unconstitutional on its face and as applied.  This case does not involve an issue of trespass or a claimed right to "camp" on property regardless of its ownership or ordinary use.[2]  Rather, Plaintiffs have tried in vain to comply with sweeping law that forces upon them a "Hobson's choice": leave Los Angeles altogether or risk citations, arrest and prosecution if they stay.  This is so because the "crime" is completed by mere presence in a vehicle lawfully parked on a public street or parking lot with Plaintiffs' belongings inside when they have no other home.  Plaintiffs Desertrain, Butler, Cagle and Eckhart as disabled drivers have been targeted for parking citations under municipal laws to which they are exempt.  Plaintiffs are entitled to summary adjudication on the legal issues in this case and to a declaration that defendants have violated their rights.

## II.    THE STANDARD ON SUMMARY ADJUDICATION

"Upon a showing that there is no genuine issue of material fact as to particular claim(s) ..., the court may grant summary judgment in the party's favor 'on all *or part* thereof.' [FRCP 56(a), (b) [Citations.]" (Italics in original). Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO BEFORE TRIAL (Rutter Group 2010), §14:33. A ruling may issue on "liability alone although there is a genuine issue as to the amount of damages. [FRCP 65(d)(2)]" *Id.* at §14:37. *Pacific Fruit Express Co. v. Akron, Canton & Youngstown RR. Co.*, 524 F.2d 1025 (9th Cir. 1975).

---

[1] Calif. Constitution Art. I, §§7, 13 claims are analogous to the federal claims.

[2] *Cf. Tobe v. City of Santa Ana*, 9 Cal.4th 1069 (1995) (anti-camping law).

III.   **STATEMENT OF FACTS**

**A.   Cheyenne Desertrain:** Desertrain is a disabled individual who suffers from respiratory and musculature problems. Social Security disability of about $900 a month is her sole income. This amount, though small, disqualifies her as a single person from getting food stamps. She lost her home when she could no longer afford the rent. She has been targeted because she drives a small camper. Since the Venice Task Force was initiated in 2010, she has been cited for multiple municipal parking violations even though she has special disability license plates, which qualify to prohibit local laws restraining state law disabled driver protections. She has been followed by the police and detained on the pretext of a broken brake light. She is afraid that, if she parks in Venice, she will continue to be harassed and issued citations despite being a disabled driver. Before, she went to the Venice Boardwalk every day to visit friends and because the air helped her respiratory condition. Now, she is afraid to park there and only comes to the City when she can get a ride with someone else. SSF#  .

**B.   Steve Jacobs-Elstein:** Plaintiff lived in Los Angeles when he lost his business of 10 years and then his home in late 2007. Dec. of Jacobs-Elstein ¶2. All he had left was a small SUV and a few possessions. His income is solely General Relief of little more than $200 a month. *Id.* at ¶3. Initially, he slept in his car at night on public streets. When an officer told him he could not do so, he looked up the law, then tried to comply. *Id.* at ¶4. He applied for private and public non-profit housing assistance over a year ago. *Id.* at 16; Ex. 16. Based on reading §85.02 and review of local resources provided by the officers (*id.* at ¶4:6-10), none of which were viable (*id.* at ¶¶19-27), he thought he was obeying the law if he did not park on a public street or parking lot "overnight", staying with permission on private sites. He stayed at a motel for a few weeks until he found other private property to park at night. Ex.13,14. He has no place to keep his property other than in his car. When he parked on the street in the day to go about his business, he was told by defendants that he was still a criminal since his property was in the car. He has been cited, arrested, booked, and his vehicle towed.

1  Dec. at ¶¶6-15; Ex.17,20,22,28. Even if he stays in a shelter, he still violates §85.02 in

2  the day if seen in his car, lawfully parked, with his belongings. SSF# . He receives

3  services in the City, some from County offices, and must park on streets for

4  appointments. The only time he does not violate §85.02 is if he gets services in Santa

5  Monica. Dec. ¶29,30. He fears another arrest, so he tries to avoid the police. *Id.* at ¶30.

6      **C.**    **Christopher Taylor:** Taylor drove a small car from Ohio to sell his art on

7  the Venice Boardwalk. SSF# . After being warned by police that he could not sleep

8  in his vehicle, he stayed at the Winter Shelter in Culver City. *Id.* The shelter is closed

9  during the day. At 5:00 a.m., everyone is bused back to Venice. *Id.* If the bus to the

10  shelter was full or he missed it, or in months when the Winter Shelter was not open,

11  Taylor slept on the sidewalk as allowed by the settlement in *Jones v. City of Los*

12  *Angeles,*[3] using a sleeping bag he kept in his car. SSF# . But *Jones* only permits sitting

13  or sleeping on a sidewalk between 9:00 p.m. and 6:00 a.m. Ex. . At 6:00 a.m. in the

14  winter there is no where he can be. The public parks and library - both of which he

15  frequented – are not open at 5:00 a.m., and, indeed, it is unlawful to be on library

16  grounds until 9:00 a.m. LAMC §63.93h. He can't sit on the Boardwalk after 6:00 a.m.

17  or he will be cited under LAMC §41.18(d). Vendors may not set up on the Boardwalk

18  until 9:00 a.m. LAMC §42.15. He paid for a storage facility, where he kept most of his

19  property and art work. It was not open at 6:00 a.m. SSF# . So, when the *Jones*

20  immunity ended, or after he left the shelter at 5:00 a.m., at times he sat in his car,

21  waiting for the storage facility to open to get his art and go to the Boardwalk. On the

22  day he was arrested and his car towed, he was sitting in the backseat, talking to a friend

23  standing on the sidewalk. It was raining out. *Id.* He had not slept in his car. SSF# .

24

25      **D.**    **William Cagle:** Cagle is a disabled individual who suffers from congestive

26

27       [3] 444 F.3d 1118, 1136 (9th Cir. 2006) (LAMC §41.18(d), ban on sitting, lying or sleeping on a public sidewalk or street not enforceable at night), vacated on settlement,

28  F.3d (2007). Exhibit is a copy of the *Jones* settlement.

heart failure, causing fluid build-up in his legs. He cannot walk more than a block or two or stand for long without suffering pain and shortness of breath. A disabled placard was clearly displayed on his vehicle at all times. He has lived in Venice since 1979 and lived with his mother she died in 1993, after which he became homeless. His sole source of income is about $930 a month from SSI, which is not enough to meet basic needs, including rent, food, insurance, vehicle maintenance, and some medications not covered by insurance. He slept on the sidewalk at night consistent with *Jones*, but in the day he would sometimes rest in his car because of his illness. He was arrested and his car impounded for violating §85.02 while resting one morning. He could not afford to get his van out of impound. He has also been cited for parking violations from which he is exempt based on disability. The harassment has caused him stress. SSF#.

   **E.   Patricia Warivonchik:** Plaintiff is a long time resident of the Venice area. For the past 5 years, she stayed on private church property in Santa Monica nightly. She drove a 1973 camper the size of a small pick-up truck with a camper shell. She regularly traveled to Los Angeles, including Venice, to visit friends, go to the Boardwalk, or sell her ceramics at craft fairs in the area. In November, 2010, she was pulled over by defendants while driving through Venice early in the morning, on the basis that her left-turn signal was on for almost a mile. While it is against the law to make a turn without a directional signal,[4] no Vehicle Code section makes it unlawful to leave a turn signal on. As she pulled to the curb in response to a police siren, she noticed her left signal on, turned it off and turned on her right turn signal. The signals were working and she was not cited. Even so, she was detained and questioned for more than 20 minutes, required to give personal information, and threatened that if the officers saw her again in the area in her vehicle she would be arrested pursuant to §85.02. She was at the public meeting where Chief Beck announced the Task Force and enforcement of §85.02, so she knew what was occurring in Venice but thought she was

---

[4] *See* Appendix B.

1  safe since she slept in Santa Monica.  She sold her vehicle and left the area after this

2  incident for fear of arrest.  She wants to return to her home of more than 30 years but

3  fears doing so due to §85.02 enforcement.

4      **F.**    **Bradford Eckhart:** Eckhart has been a resident of Venice for nearly 20

5  years.  In 1996, he was injured in a car accident, leaving him with pins and a plate in his

6  right heel and chronic pain.  He is unable to stand for long times and often uses a cane

7  to walk.  Prior to the injury, he was a teacher's assistant with autistic children.  His only

8  source of income now is about $950 a month from SSI.  He drives a van with disability

9  license plates on the front and back.  He has been cited under City laws for parking at

10  an expired meter and parking an oversized vehicle.  He fears that he will continue to be

11  targeted by the police and issued baseless tickets.  He has been unable to find shelter as

12  he has a therapeutic dog and no shelter will permit him to bring the dog. SSF#   .

13      **G.**    **Leroy Butler:** Butler has lived in Venice for 41 years, since he was

14  honorably discharged from the Army.  He is a long-time, well-known artist and

15  musician on the Venice Boardwalk. He suffered an injury to his knee while in the army

16  and is disabled.  His disability income of $835.00 is all that he and his wife get.  His

17  vehicle has disabled license plates, front and back.  Still, he has repeatedly been cited

18  for municipal parking violations.  He is concerned that he will continue to be cited for

19  violations that do not apply to disabled drivers under state law.  SSF##   .

20      **H.**    **Della Franco and Luis Pacheco**: Franco and Pacheco live with their

21  young child in an apartment in Venice.  Until recently, they owned a small camper,

22  which they used to go to various art festivals around California.  They sold the camper

23  because of the ongoing harassment.  They kept a note on their dashboard, stating that

24  they were housed and giving their phone number.  Though they used the vehicle every

25  day for work, they were cited for parking longer than 72 hours in one spot.  They

26  received a "Warning of Enforcement Action" for violation of §85.02.  Because of the

27  harassment and fear that their vehicle would be impounded, they sold it. SSF#   .

28      **I.**    **The City Policies at Issue:** Plaintiffs were targeted after a public meeting

1  in late September, 2010, at which LAPD Chief Beck announced 21 extra officers for

2  Pacific Division to focus on purported "quality of life" crimes in the area, including

3  "illegal lodging" in vehicles. Ex.    SSF##   . The City assured a three-prong approach

4  called "Streets to Homes," with services, safe parking spaces, and enforcement of

5  criminal laws only against those unwilling to accept services or park in designated

6  areas. *Id.* and SSF##   . To date, no safe parking areas have been opened, the services

7  are virtually non-existent, but enforcement has occurred with full force. Each plaintiff

8  has been arrested, cited, detained or threatened with arrest or detention based on the

9  plan announced by Chief Beck at the Town Hall meeting and implemented through the

10  Venice Homeless Outreach Task Force. The "mission" of the Homeless Outreach Task

11  Force "is to effect arrests of individuals who are violating local and state codes." SSF#

12  . For those with vehicles who are homeless, the plan involves enforcement of local

13  laws in a vigorous and unlawful manner, exacerbating egregious flaws in §85.02 and

14  citing homeless disabled drivers in violation of state law. SSF## .

15  **J.    Defendants:** The individual defendants include the Captain who approved

16  the decision to enforce state laws in the unlawful manner done here. SSF#   . Among

17  other decisions, Capt. Peters broadened individual discretion of the officers as to how

18  to enforce LAMC §85.02. SSF#   . Officers Gonzales and Yoshioka were responsible

19  for citing and arresting plaintiffs pursuant to §85.02 and impounding their vehicles. SSF

20  ##   . Officer Prince was responsible for enforcing local parking regulations in a

21  manner that violated state law and discriminated against disabled drivers. SSF ##   .

22  **IV.    LAMC §85.02 IS UNCONSTITUTIONALLY VAGUE**

23      By its plain terms, §85.02 outlaws innocent behavior and provides inadequate

24  notice of what is a violation of the law. *City of Chicago v. Morales*, 527 U.S. 41 (1999),

25  *Kolender v. Lawson*, 461 U.S. 352 (1983), and *Papachristou v. Jacksonville*, 405 U.S.

26

27

28

1  156 (1972), all compel the conclusion that LAMC §85.02 is unconstitutionally vague.[5]

2  **A.   LAMC §85.02 Is Unconstitutionally Vague On Its Face**

3  A criminal law may be held vague on two independent bases. "First, it may fail
4  to provide the kind of notice that will enable ordinary people to understand what
5  conduct it prohibits; second, it may authorize and even encourage arbitrary and
6  discriminatory enforcement." *Morales*, 527 U.S. at 56. LAMC §85.02 bars using public
7  streets or parking lots as "living quarters either overnight day-by-day, or otherwise."
8  Plaintiffs have tried to comply with §85.02 but the plain words and the City's
9  application of §85.02 permit no safe harbor for a person who is homeless and parks a
10  vehicle with personal property in it anytime, anywhere, on City property. *Cf. Jones*,
11  444 F.3d at 1136 (LAMC §41.18(d), banning sleeping on sidewalk or street, not
12  enforceable at night).[6] As in *Morales*, §85.02 "'is not an ordinance that simply regulates
13  business behavior and contains a scienter requirement.'" 527 U.S. at 55, citing *Hoffman*
14  *Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). "It is a criminal
15  law that contains no mens rea requirement and infringes on constitutionally protected
16  rights. [Citations.]" *Id.* It "increases the arsenal of the police" by allowing arrests on
17  "evidence" that does not otherwise evince a crime. *Papachristou* at 165.

18  *Morales* addressed the same interests as here: a rise in crime that prompted
19  citizen complaints. *Id.* at 46. Despite this important interest and Chicago's attempt to
20  limit the law by issuing guidelines purporting to establish limitations on the
21  enforcement discretion of police officers to ensure against arbitrary or discriminatory
22  application, *id.* at 48, the ordinance was struck as impermissibly vague because, as here,

23

24  ———————————

   [5] Unlike similar laws in other cities, §85.02 does not limit the type of vehicle or
25  time it applies, or define key terms of "living quarters," "day-by-day," or "otherwise."
26  It is completely devoid of definitions, standards or guidelines. *See* Appendix A.

27     [6] No limiting constructions of the ordinance exist, let alone an authoritative
28  construction, that the Court must consider in evaluating a facial challenge to §85.02.
   *Hoye v. City of Oakland*, 2011 U.S. App. LEXIS 15541, *29 (9th Cir. July 28, 2011).

1) it failed to provide fair notice of prohibited conduct and 2) it failed to establish minimum guidelines for enforcement. Whether standing on a sidewalk, resting in a public park, or sitting in a legally parked car, "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *Morales*, 527 U.S. at 53. The law in *Morales* criminalized the right to "loiter" on a street corner for innocent purposes. LAMC §85.02 outlaws more: it bans parking on public property or sitting in a vehicle in the City – with some unspecified list of items in it – for <u>any</u> purpose if the driver does not have another place to live. This is so even if a person stays in a homeless shelter at night, sleeps on the sidewalk consistent with *Jones*, or sleeps with permission on private property.

The only clarity in §85.02 is the ban on being in a vehicle "overnight." Plaintiffs fairly understood this to mean that they could not sleep at night in their vehicles on public property. The bar to "living" in a vehicle on City streets from "day- by-day or otherwise" is not defined and devoid of enforcement guidelines. Even if a common meaning could be given to the phrase "day-by-day," the term "otherwise" strips the law of any certainty or limits on the discretion of the police.[7] "When vagueness permeates the text of such a law, it is subject to a facial attack." *Morales*, 527 U.S. at 55. A law that fails to set standards for the police and public that are sufficient to guard against arbitrary deprivation of liberty is impermissibly vague. *Kolender*, 461 U.S. at 358.

Section 85.02 "makes criminal activities which by modern standards are normally innocent." *Papachristou*, 405 U.S. at 163. Defendants know that the law is difficult to understand and enforce, SSF#  , but that realisation has not resulted in limits on the sweep of enforcement. A person need not sleep in a vehicle on public property at night. As defendants stated, they look for evidence that a person is doing acts in a vehicle that would otherwise be done at home. No minimum or set number of items converts

---

[7] "Otherwise": "something or anything else." *Webster's Collegiate Dict.,* 3d ed.

1   innocent conduct into criminal conduct. For example, defendants testified that §85.02
2   is violated if clothes, blankets, computers, food, or other items are kept in a car. SS#
3   . Yet, they concede, as they  must, no law makes it illegal for a person to have any of
4   these items in a car. SS# Defendants also testified that §85.02 may be violated if a
5   person listens to the radio, eats, or naps in his car while legally parked. SS# But, again,
6   they concede no law makes any of this illegal. SS#

7        The City's main reply to this concern about fair notice is that violators are  given
8   a warning first and a list of  "resources." But the claim that "[w]hatever problem is
9   created by a law that criminalizes conduct people normally believe to be innocent is
10  solved when persons receive actual notice from a police order of what they are expected
11  to do" is "unpersuasive." *Morales*, 527 U.S. at 58. "[T]he purpose of the fair notice
12  requirement is to enable the ordinary citizen to conform his or conduct to the law. 'No
13  one may be required at peril of life, liberty or property to speculate as to the meaning
14  of penal statutes.' [Citation.] ..." *Id.* at 58. Since an officer may issue an order only
15  after prohibited conduct has already occurred, "it cannot provide the kind of advance
16  notice that will protect the putative [habitater] from being ordered [to leave the public
17  street]. Such an order cannot retroactively give adequate warning of the boundary
18  between the permissible and the impermissible applications of the law." *Id.* at 59 (edits
19  added). The law is "impermissibly vague *because* it fails to establish standards for the
20  police and public that are sufficient to guard against the arbitrary deprivation of liberty
21  interests." *Id.* at 52 (emphasis added). As in *Morales, Kolender* and *Papachristou*,
22  §85.02 is facially unconstitutional regardless of any later gloss applied by Defendants.

23        **B.   LAMC §85.02 Criminalizes "Vagrancy"**

24        Significantly, the precedents relied on to invalidate the ordinance in *Morales*
25  arose from efforts to force homeless people out of towns. *Id.* at 54, citing *Papachristou*,
26  405 U.S. at 161-62 and *Homeless in a Modern Urban Setting*, 10 Fordham Urb. L. J.
27  749, 754 n.17 (1982). Vagrancy laws have long been used by police "as a form of social
28  control over diverse groups of people and toward a number of different ends. ... [To]

1  exclude and punish poor strangers, incapacitate apparent threats to social order, [and]
2  prevent the commission of incipient crime[.]" Risa Gubuloff, *Vagrancy, Abortion &*
3  *Fundamental Rights,* 62 STAN. L. REV. 1361, 1371 (2010) (edits supplied). Whether
4  labeled homeless, indigent or vagrant, laws punishing innocent conduct by those who
5  lack a home are intolerable.  No express intent to target a specific group is required
6  before such laws may be held unconstitutional. *See Kolender*, 461 U.S. at 358.

7       In *Papchristou*, the Supreme Court declared vagrancy laws anachronistic and past
8  their time.  The law invalidated in *Papachristou* "fail[ed] to give a person of ordinary
9  intelligence fair notice that his contemplated conduct [was] forbidden by the statute and
10  ...[citations] encourage[d] arbitrary and erratic arrests and convictions." 405 U.S. at
11  162.  The ordinance criminalized such common and legal activities as "nightwalking"
12  or "wandering or strolling from place to place." *Id.* at 163, 168 (edits supplied).  Many
13  people, particularly the poor, could not avoid violating this law. "The poor among us,
14  the minorities, the average householder are not in business and not alerted to the
15  regulatory schemes of vagrancy laws; and we assume they would have no
16  understanding of their meaning and impact if they read them.  Nor are they protected
17  from being caught in the vagrancy net by the necessity of having a specific intent to
18  commit an unlawful act." *Id.* at 163, citing *Screws v. United States*, 325 U.S. 91 (1945).

19       Similarly, §85.02 casts a wide net, "making easy the roundup of so-called
20  undesirables," 405 U.S. at 171, who, in this case, are homeless.  Lacking guidelines to
21  define "habitating" in a vehicle, §85.02 "necessarily entrusts lawmaking to the moment-
22  to-moment judgment of the policeman on his beat." *Morales*, 527 U.S. at 60, citing
23  *Kolender*, 461 U.S. at 359.  It criminalizes innocent acts and makes it impossible for
24  homeless persons to avoid violating the law.  The vehicle may be their last refuge with
25  no other place to keep their possessions.  Yet, they risk violating §85.02 even if they do
26  not sleep in their cars at night unless they get rid of their personal property, or their
27  vehicle. SSF#    . Ironically, while plaintiffs have been arrested for keeping their
28  property in a lawfully parked vehicle, no law would prevent them from keeping these

1  same items in a shopping cart or a suitcase on the sidewalk.  SSF#   .  Similarly, they

2  could, read, eat or listen to the radio while picnicking or sitting in a park.

3      Each officer is purposely given full discretion, but little training, to decide what

4  violates §85.02, producing "arbitrary and erratic arrests." *Papachristou*, 405 U.S. at

5  162.  SSF ##   .  In sum, "[d]efiniteness is designedly avoided so as to allow the net

6  to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes

7  of police and prosecution, although not chargeable with any particular offense." *Id.* at

8  166, citing *Winters v. New York*, 333 U.S. 507, 540 (1948).  "[W]here ... there are no

9  standards governing the exercise of the discretion granted by the ordinance, the scheme

10  permits and encourages an arbitrary and discriminatory enforcement of the law."

11  *Papachristou*, 450 U.S. at 170 (citation omitted).  "It results in a regime in which the

12  poor and the unpopular are permitted [to be in their vehicle]...only at the whim of any

13  police officer." *Id.*

## V.  LAMC §85.02 VIOLATES BOTH THE FUNDAMENTAL RIGHT TO TRAVEL AND MOVEMENT AND EQUAL PROTECTION

### A.  LAMC §85.02 Violates the Right to Travel and Movement

16      The "'right to remove from one place to another according to inclination' [i]s 'an

17  attribute of personal liberty' protected by the Constitution." *Morales*, 527 U.S. at 53

18  (edit supplied), citing *Williams v. Fears*, 179 U.S. 270, 274 (1900), and *Papachristou*,

19  405 U.S. at 164.  The Fourteenth Amendment Due Process Clause especially protects

20  those fundamental rights and liberties which are, objectively, deeply grounded in our

21  Nation's history and tradition and implicit in the concept of ordered liberty, to the

22  degree that neither liberty nor justice would exist if they were sacrificed. *Palko v.*

23  *Connecticut*, 302 U.S. 319, 325-327 (1937).  The "right to move 'to whatsoever place

24  one's own inclination may direct'" is implicit in a democratic society and a hallmark

25  of personal liberty under the common law. *See Morales*, 527 U.S. at 54, quoting 1 W.

26  Blackstone, Commentaries on the Laws of England 130 (1765).  Such a liberty interest

27

28

1  exists here.[8]

2      The Supreme Court has not decided a case involving a claim of <u>intrastate</u> travel;

3  however, the lower courts have recognized such a right. Indeed, "[i]t would be

4  meaningless to describe the right to travel between states as a fundamental precept of

5  personal liberty and not to acknowledge a correlative constitutional right to travel

6  within a state." *King v. New Rochelle Mun. Housing* Authority, 442 F.2d 646, 648 (2d

7  Cir. 1971). "The right to travel locally through public spaces and roadways – perhaps

8  more than any other right secured by substantive due process – is an everyday right, a

9  right we depend on to carry out our daily life activities.[9] It is, at its core, a right of

10  function." *Johnson v. Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002) ("Constitution

11  protects a right to travel locally through public spaces and roadways").

12      A "law implicates the right to travel when it actually deters such travel,

13  [citations], when impeding travel is its primary objective, [citations], or when it uses

14  'any classification which serves to penalize the exercise of that right.'" *Attorney*

15  *General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986), citing *Dunn v.*

16  *Blumstein*, 405 U.S. 330, 340 (1972). Section 85.02's impact is neither indirect nor

17  incidental. It "deters" and "penalizes" a cardinal right, making it unlawful for a

18  homeless person to park or stand a vehicle of any type on a public street or parking lot

19  anywhere in the City, at any time and for any length of time, if some unenumerated

20

---

21      [8] The right to travel, including intrastate travel, is protected by Article I, sec. 7

22  of the California Constitution. *Tobe*, 9 Cal.4th at 1100.

23      [9] *See Nunez v. City of San Diego*, 114 F.3d 935, 944 & n.6 (9th Cir. 1997)

24  (juvenile curfew law invalidated on vagueness, overbreadth, equal protection and
substantive due process grounds;"rights of movement and travel" were "integral" to the

25  court's analysis of whether the law impermissibly burdens minors' fundamental rights);
*Lutz v. City of York, Pa.*, 899 F.2d 255, 268 (3rd Cir. 1990) (right to travel locally is a

26  liberty interest analyzed as substantive due process); *Spencer v. Casavilla*, 903 F.2d

27  171, 174 (2d Cir. 1990) ("right to travel freely within a single state"); *Brandmiller v.
Arreola*, 199 Wis. 2d 528, 544 N.W.2d 894, 899 (Wisc. 1966) ("right to travel includes

28  the right to move freely about one's neighborhood, even in an automobile").

property is in the vehicle.  So long as Plaintiffs have no place to leave what little they have left in this world, they may not park in the City even to appear on a citation, visit a friend, or seek services at a place in the pamphlet defendants give with a warning about §85.02.  Once parked, the "crime" is complete. SSF#  .

Jacobs-Epstein, Taylor and Cagle ceased sleeping in their vehicles at night to comply with the law. SSF#  . But since they still lacked a home, it was an impossibility. They kept their few belongings in their cars, so they committed a crime just by "parking or standing" their cars on a City street.  No similar law is violated if the same items are kept in a shopping cart.  A homeless person may "live" on the streets and even sleep on sidewalks at night pursuant to *Jones*.  He may keep his property on the sidewalk.  But if he keeps these same items in a rightfully owned and registered vehicle, §85.02 is violated, whether he stops briefly or remains in the City.

**B.     LAMC §85.02 Violates Equal Protection**

Under Fourteenth Amendment analysis, a law is subject to strict scrutiny analysis for violation if it disadvantages a "suspect class" or impinges on a "fundamental right." *Nunez*, 114 F.3d at 944, quoting *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982).  Since, as explained, the ordinance impinges on the "fundamental right" of freedom of movement and travel, §85.02 is subject to strict scrutiny: it must be narrowly tailored to promote a compelling governmental interest with sufficient nexus between the stated government interest and the restrictions created by the law. *Nunez*, 114 F.3d at 946, citing *Plyler*, 457 U.S. at 217.  Section 85.02 fails on all counts. It is not narrowly tailored to prevent crime or promote aesthetics and there is insufficient nexus between the prohibited conduct and any compelling state interest.

**1.     LAMC §85.02 is not narrowly tailored to address crime**

While the City has a "legitimate and compelling state interest" in protecting a community from crime, *Schall v. Martin*, 467 U.S. 253, 264 (1984), since §85.02 bans legal conduct such as reading, eating or listening to music while lawfully parked on a City street by someone who is homeless, it is not narrowly tailored to that end.  A person may lawfully maintain his property overnight or day-to-day in a shopping cart

on sidewalks in the City - including next to a plaintiff's vehicle – without violating any law. SSF# . Just as crime prevention could not save the loitering law in *Morales*, (507 U.S. at 46), §85.02 is not narrowly tailored. Chicago's ordinance failed because it forbade innocent conduct. *Id.* at 64. The same is true here whether one "loiters" on a sidewalk or in a legally parked vehicle.

### 2.   LAMC 85.02 is not narrowly tailored to promote aesthetics.

LAMC §85.02 is not narrowly tailored to an interest in aesthetics. Specific laws that prevent litter and restrict dumping sewage or rubbish bear a sufficient nexus to the substantial government interest in aesthetics. But a sweeping law that prevents parking or stopping on City streets if a person "lives" in their vehicle at any time is not narrowly tailored. The "aesthetic" impact is the same whether a homeless person keeps his property in a car while sleeping in a shelter at night, or a person keeps books, food, clothes and other items in his car while sleeping in an apartment.

### C.   Section 85.02 Even Fails a Rational Basis Test

For the reasons that §85.02 lacks a compelling interest, it creates an irrational classification between those who keep belongings in their vehicles but have a residence and those who keep property in their vehicles but do not have a home. It is also irrational to assume that one who is homeless and keeps his belongings in a vehicle is more likely to engage in criminal acts than one who is homeless and stands next to the car with property in a shopping cart. This irrational classification infringes on Plaintiffs' right to drive to, or remain in, the City. If officers assigned to the Venice Taskforce observe a vehicle with certain items in it – personal papers, books, clothes, blankets, food – they ask if the person lives in their vehicle. Someone with a fixed residence would answer "no," even if they had all of these items in the car. This distinction irrationally criminalizes parking in the City for those who keep property in a legally parked vehicle only if the driver is homeless.

In *Diaz v. Brewer*, no rational basis was found for a classification of employee partner benefits on the basis of sexual orientation, even though there was no entitlement to health care benefits. *Diaz v. Brewer*, ___ F.3d ___, Cir. No. 10-16797, Slip Opinion

at 16906 (9th Cir. Sept. 6, 2011).  Affirming a preliminary injunction, the Circuit cited to "long standing equal protection jurisprudence holding that 'some objectives, such as a bare ... desire to harm a politically unpopular group, are not legitimate state interests.'"  *Id.* at 16909, quoting *Lawrence v. Texas,* 539 U.S. 558, 580 (2003) (O'Connor, J., concurring) (rational basis test more searching when a classification adversely affects unpopular groups) (citation in *Lawrence* omitted); citing also to *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 446-47 (1985) (zoning law prohibiting group home for developmentally disabled violated equal protection under rational basis test: government "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational"; "desire to harm a politically unpopular group ... [is] not [a] legitimate state interest").

## VI.  THE ARRESTS OF JACOBS-ELSTEIN, TAYLOR AND CAGE, THE SEIZURE OF THEIR VEHICLES AND THE DETENTION OF WARIVONCHIK VIOLATE THE FOURTH AMENDMENT[10]

The Fourth Amendment prohibits the unreasonable "seizure" of a person.  A seizure without sufficient cause violates plaintiffs' constitutional rights.  *California v. Hodari,* 499 U.S. 621 (1991).  The burden of proof is initially on defendants to establish probable cause in each instance.  *Dubner v. City & County of San Francisco,* 266 F.3d 959, 965 (9th Cir. 2001).

With a deliberately tortured construction of §85.02 permitting no means of compliance by a person who is not housed short of leaving Los Angeles, Plaintiffs were seized, warned, cited, and/or arrested for violations of §85.02 despite the fact that none slept in his or her vehicle at night on public streets or City owned parking lots.  Jacobs-Elstein, Taylor and Cage had their vehicles seized when they were arrested.  In each instance, defendants lacked probable cause to seize plaintiffs or their vehicles.  An arrest pursuant to a law patently violative of fundamental constitutional rights violates the Fourth Amendment.  *Grossman v. City of Portland,* 33 F.3d 1200, 1209 (9th Cir.

---

[10] Although Warivonchik was not arrested, it is indisputable that "[w]hen a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment." *Brendlin v. California,* 551 U.S. 249 (2007).

1994). Moreover, when a statute is enforced "in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance," the arrest is unreasonable "even if there is no clear case law declaring the ordinance or the particular officer's conduct unconstitutional." *Id.* at 1210, citing *Chew v. Gates*, 27 F.3d 1432, 1450 (9th Cir. 1994). *See also, Roska v. Peterson*, 328 F.3d 1230, 1252 (10th Cir. 2003) (no qualified immunity for removing child from parents without due process), *aff'd and remanded on other grounds*, 437 F.3d 964 (2006).

Here, defendants applied a law that had fallen into desuetude and was purposely revived and enforced with no limitation to be sure that they could arrest plaintiffs if they were even near their vehicles at night or day. Jacobs-Elstein was arrested moments after he parked on a street to walk a friend's dog [SSF# ]; Taylor was arrested as he was sitting in the car to get out of the rain and talking to a friend [SSF# ], and Cagle was seized while awake and resting because of his disability. SSF# .

## VII. CITATIONS ISSUED TO DISABLED PLAINTIFFS FOR LOCAL PARKING REGULATIONS VIOLATE STATE LAW

At the September 23, 2010 Town Hall meeting, Department of Transportation officials stated that they would strictly enforce all parking restrictions in the Venice neighborhood. SSF# ; Ex. . Also in 2010, the City passed an ordinance restricting oversized vehicle parking between 2 a.m. and 6 a.m. on streets where signs were posted. LAMC §80.69. Parking regulation is a matter of state preemption. *Rumford v. City of Berkeley*, 31 Cal.3d 545, 550 (1982). Municipalities may act in this realm only with expressly delegated authority to enact local laws. *People v. Garth*, 234 Cal.App.3d 1797, 1799, 1800 (1991). Vehicle Code §22507(a) authorizes local laws; however, §22511.5 prohibits local laws restricting disabled driver protections in VC §22507(a).[11]

---

[11] These are also also set out on the DMV website: "Disabled Person Parking Privileges." (http://dmv.ca.gov/pubs/brochures/fast_facts/ffvr07.htm)

16

Even though each of their vehicles had plainly visible current disability plates or a disability placard,[12] Plaintiffs Desertrain, Butler, Cagle and Eckhart were repeatedly cited by the City. *Spicer v. City of Camarillo*, 195 Cal.App.4th 1423, 1425 (2011), recently considered disability exceptions in VC §22511.5 in relation to local laws banning parking more than 72-hours in one place. Emphasizing that the plain words are the best indicator of legislative intent, *id.* at 1427, the Court noted that §22511.5 clearly states that, where posted street signs restrict parking, disabled persons may park no matter the limits enacted by a local entity. *Id* at 1425.

A local entity may not pass laws that conflict with the Vehicle Code. *Wooldridge v. Mounts*, 199 Cal.App.2d 620, 623-624 (1962). Section 22511.5(a)(1)(A) exempts disabled drivers with disability plates or placards from LAMC §80.69(b) (preferential parking) SSF#   (Bates 212]), §80.69(d) (vehicle height limits within 100 feet of intersection) and §80.69.4(a) (oversized vehicles restricted 2 a.m. and 6 p.m. in posted areas). Section 22511.5(a)(1)(B) exempts them from §80.69(c) (posted time limits), and VC §22511(a)(1)(B)(2) excuses plaintiffs from putting money in a meter.

It matters not that City employees were ignorant of the law.[13] "As a rule, if a defendant is presumed to know the law, we must expect as much from law enforcement. *See United States v. Hodson, 77 U.S. (10 Wall.) 395, 409, 19 L. Ed. 937 (1870)* ('Everyone is presumed to know the law.')." *United States v. Orduno-Martinez,* 561 F.3d 1134, 1138 n.2 (10th Cir. 2009). *See also Bryan v. United States*, 524 U.S. 184, 195 (1998) ("ignorance of the law is no excuse"). In *People v. Lopez*, 197 Cal.App.3d

---

[12] Plaintiffs were cited for violating LAMC §80.69(b) (parking restricted by permit); §80.69(c) (longer than posted time limit); §80.69(d) (vehicles six feet or higher at specified times); and §80.69.4(a) ("oversize" vehicle ban). *See* Appendix C.

[13] Defendants produced nothing for training on Vehicle Code exemptions for disabled drivers. The only evidence proffered is defendant Prince's testimony that he was not aware of these provisions. SSF#   . Tellingly, no defense is given for its Department of Transportation employees, whose sole job is to enforce parking laws.

1   93, 101 (1987), the defendant was arrested for an open container in a parking lot, but
2   the Vehicle Code prohibited only an open container on a highway, so the officer's
3   reading of the law was unreasonable. The Court explained the strong public policy for
4   officers to know the laws they enforce; else, there would be a strong motive to be
5   ignorant of the laws. *Id.* "[A] reasonably competent public official should know the law
6   governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

7   **VIII.  SUMMARY ADJUDICATION IS PROPER ON THE MONELL CLAIM**

8        Defendant City is liable for Plaintiffs' injuries because they result from
9   implementation of its official policies and established customs. *Monell v. New York City*
10  *Dep't. of Soc. Services*, 436 U.S. 658, 708 (1978) (Powell, J., concurring). Plaintiffs'
11  injuries resulted from deliberate enforcement of City ordinances that threatened and,
12  ultimately, 1) culminated in the citation and arrests of Jacobs-Elstein, Taylor and Cagle,
13  and 2) the detention of Warivonchik. These same enforcement policies led to a citation
14  and threats of citation and arrest for Franco and Pacheco, and resulted in multiple
15  citations to Desertrain, Butler, Cagle and Eckhart. Not only was the injury to plaintiffs
16  a result of written policies (municipal ordinances) in this instance, but the decision to
17  apply the laws in question to target plaintiffs and others believed to be living in their
18  vehicles was a decision ratified by LAPD Chief Beck at a public town hall meeting on
19  September 23, 2010, where he announced the commitment of 21 additional officers to
20  Venice to carry out the enforcement efforts, especially the aggressive use of LAMC
21  §85.02. SSF# . *See e.g., Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding*
22  *modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) (plaintiff may establish
23  municipal liability by, *inter alia*, proving that a city employee committed the alleged
24  constitutional violation pursuant to a formal government policy).

25       For those detained, cited and/or arrested for a purported violation of §85.02, their
26  claim "does not stem from an absence of probable cause to arrest, but from the alleged
27  unconstitutionality of the ordinance justifying the arrest. Therefore, [even] a finding of

28

1 probable cause under the ordinance in no way renders the arrest 'privileged,' or

2 immunizes the defendants from liability. Instead, if the ordinance is unconstitutional,

3 [Plaintiffs] suffered constitutional injury despite the ordinance's applicability to [their]

4 conduct." *Grossman*, 33 F.3d at 1203-1204, citing *Gerritsen v. City of Los Angeles,*

5 994 F.2d 570 (9th Cir. 1993) (edits supplied).  LAMC §85.02 is "patently violative of

6 fundamental constitutional principles," *Grossman*, 33 F.3d at 1209, both on its face and

7 as applied, so that "any person of reasonable prudence would be bound to see its flaws."

8 *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).  Those "flaws" are exacerbated by the

9 City's willful enforcement strategy formulated and executed through the Venice

10 Homeless Outreach Task Force to cite and arrest plaintiffs for <u>any</u> alleged offense.

11 **IX.    SUMMARY ADJUDICATION IS PROPER ON CIV. CODE §54**

12         California Civil Code §54.1 codifies the rights of disabled individuals concerning

13 a number of issues, including transportation.   Section 54.1(e) makes clear that the

14 protections of this section include the parking exceptions and accommodations for

15 disabled drivers.   Originally enacted in 1968, the 1996 amendment to the statute

16 redesignated the former subsection (d) as the current section (e), providing that a

17 "license plate or disabled placard" must be shown when required as enforcement of

18 "disabled persons parking violations." *Section 54.1, Notes re Amendments*.  With the

19 1992 amendments, the Legislature provided a statement of intent to strengthen

20 California law on disability rights where it did not equal federal standards, but also to

21 retain any greater protections in state law. *Id.*

22         Under California law, the disabled plaintiffs are entitled to all "advantages"

23 provided by law, which is not limited to a physical accessibility claim.   Here, the

24 disabled plaintiffs have been targeted for citations under municipal laws applied in

25 excess of the City's authority under state law to regulate parking on City streets. These

26 actions by defendant City and its agents prevents plaintiffs from free access to the

27

28

streets. State law provides an absolute exemption for plaintiffs from each of the local laws under which they have been cited.

## X.    SUMMARY ADJUDICATION IS PROPER ON CIVIL CODE §52.1

California Civil Code §52.1 prohibits interference or attempts to interfere with the exercise of statutory or constitutional rights by "threats, intimidation or coercion." It requires no proof of "'discriminatory animus,' i.e., [no] intent to threaten or coerce another in violation of their constitutional rights" based on some invidious ground." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 841 (2004) (edit supplied). Plaintiffs need only show, and have shown, that interference or attempted interference with their federal or state constitutional or statutory rights by "threats, intimidation or coercion." *Venegas*, 32 Cal.4th at 843.

## XI.   SUMMARY JUDGMENT IS PROPER AGAINST THE CITY ON THE STATE LAW CLAIMS BASED ON "RESPONDEAT SUPERIOR"

The City is vicariously liable for the individual defendants' acts. California "'has rejected the *Monell* rule and imposes liability on [cities] under the doctrine of respondeat superior for acts of [city] employees.' *See Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) (citing Cal. Govt. Code § 815.2)." *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010).

## XII.  CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for summary adjudication on the claims set forth above should be granted.

Dated: September 14, 2011                    Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL
LEGAL AID FNDN. OF LOS ANGELES
LITT, ESTUAR & KITSON
LAW OFFICES OF MICHAEL S. RAPKIN

/s/

By: CAROL A. SOBEL
Attorneys for Plaintiffs