CAROL A. SOBEL   SBN 84483
429 Santa Monica Boulevard, Ste. 550
Santa Monica, CA  90401
T. 310 393-3055   F. 310 393-3605
E. carolsobel@aol.com

BARRETT S. LITT  SBN 45527
LITT, ESTUAR & KITSON LLP
1055 Wilshire Boulevard, Ste 1880
Los Angeles, CA 90017
T. 213 386-3114   F. 213 380-4585
E. blitt@littlaw.com

LEGAL AID FOUNDATION
   OF LOS ANGELES
SUSAN MILLMANN  SBN 92417
1640 5th Street,  Ste 124
Santa Monica, CA 90401
T. 310 899-6200  F. 310 899-6208
E. smillmann@lafla.org

MICHAEL S. RAPKIN   SBN 67220
SCOTT B. RAPKIN   SBN 261867
LAW OFFICE OF MICHAEL RAPKIN
233 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
T.  310 319 5465   F. 310 319 5355
E.  scottrapkin@rapkinesq.com

# IN THE UNITED STATES DISTRICT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CHEYENNE DESERTRAIN, et al.,<br><br>            Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, a muni-<br>cipal entity, DOES I-10, as individuals,<br><br>            Defendants. | ) CASE NO. CV 10-09053 RGK (PJWx)<br>)<br>) PLAINTIFF'S MEMORANDUM OF<br>) POINTS AND AUTHORITIES IN<br>) OPPOSITION TO DEFENDANTS'<br>) MOTION FOR SUMMARY<br>) JUDGMENT<br>)<br>) Date: October 17, 2011<br>) Time: 9:00 a.m.<br>   Ctrm: Roybal 850 (Hon. Judge Klausner) |

# TABLE OF CONTENTS

I.   SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . 1

II.  PLAINTIFFS HAVE ESTABLISHED VIOLATIONS
     OF THEIR CONSTITUTIONAL RIGHTS; AT MINIMUM,
     THERE ARE DISPUTED MATERIAL FACTS
     ON EACH CLAIM   . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   No Officer is Entitled to Qualified Immunity for the
          Seizure of Plaintiffs Jacobs-Elstein, Cagle, Taylor
          and Warivonchik in Violation of Their Fourth
          Amendment Rights  . . . . . . . . . . . . . . . . . . . 1

          1.   No probable cause existed to arrest plaintiffs   . . . . . 1

          2.   No basis existed for Warivonchik's
               prolonged detention   . . . . . . . . . . . . . . . 2

          3.   The Community Caretaking Exception is
               Inapplicable . . . . . . . . . . . . . . . . . . 6

          4.   Section §85.02 is impermissibly vague and
               sets a trap . . . . . . . . . . . . . . . . . . . 8

          5.   The individual defendants are not entitled
               To qualified immunity . . . . . . . . . . . . . . 8

          6.   There are disputed material facts as to
               whether Capt. Peters is liable as a supervisor   . . . . . 9

     B.   Plaintiffs Have Established a Violation of Their
          Right to Travel . . . . . . . . . . . . . . . . . . . . . 10

X.   THERE IS A MATERIAL ISSUE IN DISPUTE
     REGARDING WHETHER PLAINTIFFS CAN
     ESTABLISH MONELL LIABILITY . . . . . . . . . . . . . . . 14

X.   PLAINTIFFS HAVE DEMONSTRATED
     THEIR §52.1 CLAIMS   . . . . . . . . . . . . . . . . . . . 15

X.   DEFENDANTS CAN CLAIM NO STATE
     IMMUNITIES FOR VIOLATING CIVIL CODE §54   . . . . . . . 17

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

*Anderson v. Creighton,*
3
    483 U.S. 635, 640 (1987)                            9
4
*Anderson v. Liberty Lobby, Inc.,*
5
    477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
6
*Cady v. Dombrowski,*
    413 U.S. 433, 441 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
7
*California v. Hodari,*
8
    499 U.S. 621 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
9
*Center for Bio-Ethical Reform,Inc. v. Los Angeles,*
10
    533 F.3d 780 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*Chew v. Gates,*
11
    27 F.3d 1432, 1450 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
12
*City of Chicago v. Morales,*
13
    527 U.S. 41, 58 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9,10
14
*City of Oklahoma v. Tuttle,*
    471 U.S. 808 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
15
*Clay v. Conlee,*
16
    815 F.2d 1164, 1170 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
17
*Cole v. Doe 1 Through 2 Officers of City of Emeryville Police Dept.,*
    387 F.Supp. 2d 1084, 1003 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . 16
18
*Cuviello v. City of Stockton,*
19
    2009 U.S. Dist. LEXIS 4896, *56 (E.D. CA. 2006). . . . . . . . . . . . . . . . 16
20
*Dubner v. City & County of San Francisco,*
21
    266 F.3d 959, 965 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
*Dunn v. Blumstein,*
22
    405 U.S. 330, 338 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
23
*Fairley v. Luman,*
24
    281 F.3d 913, 916 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
25
*Florida v. Royer,*
    460 U.S. 491, 500 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
26
*Francis v. California,*
27
    2004 U.S. Dist. LEXIS 16816, *33-34 (N.D. Ca. 2004) . . . . . . . . . . . . . 17

28

*Graham v. Connor,*
    490 U.S. 386, 397 (1989) ................................... 7

*Grossman v. City of Portland,*
    33 F.3d 1200, 1209 (9th Cir. 1994) ............................. 1,2

*Harlow v. Fitzgerald,*    18
    457 U.S. 800 (1982)

*Hershey v. City of Clearwater,*
    834 F.2d 937 (11th Cir. 1987) ................................ 4

*Joel v. City of Orlando,*
    232 F.3d 1353 (11th Cir. 2000) ............................... 13

*Johnson v. Board of Police Comm'rs,*
    351 F.Supp.2d 929 (E.D. Mo. 2004) ........................... 12

*Johnson v. City of Cincinnati,*
    310 F.3d at 497-98 (6th Cir. 2002) ........................... 10

*Joyce v. City and County of San Francisco,*
    846 F.Supp. 843, 848 (N.D. Cal. 1994) ...................... 4,5,13

*Karam v. City of Burbank,*
    352 F.3d 1188, 1194 ........................................ 2

*Kent v. Dulles,*
    357 U.S. 116, 126 (1958) ................................... 10

*Kolender v. Lawson,*
    461 U.S. 352, 358 (1983) ................................... 8

*Liberal v. Estrada,*
    632 F.3d 1064, 1071 (9th Circuit 2011) ........................ 3

*Lonberg v. City of Riverside,*
    300 F.Supp.2d 942 (C.D. CA. 2004) .......................... 18,19

*Miranda v. City of Cornelius,*
    429 F.3d 858 (9th Cir. 2005) ................................ 7

*Monell v. New York City Dept. of Social Services,*
    436 U.S. 658 (1978) ....................................... 15

*Nunez v. City of San Diego,*
    114 F.3d 935, 944 (1997) ................................... 14

*Owens v. City of Independence,*
    445 U.S. 622, 652 (1980) ................................... 15

*Polk County v. Dodson,*

454 U.S. 312, 326 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Roska v. Peterson*,
    328 F.3d 1230, 1252 (10th Cir. 2003),
    *aff'd and remanded on other grounds*,
    437 F.3d 964 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Roulette v. City of Seattle*,
    850 F. Supp. 1442, 1448 (W.D. Wash. 1994) . . . . . . . . . . . . . . . . . . . . .  13

*Stone v. Agnos*,
    960 F.2d 893, 895 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4,5

*U.S. v. Arvizu*,
    534 U.S. 26, 273 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*U.S. v. Brignoni-Ponce*,
    422 U.S. 873, 878 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*U.S. v. Duguay*,
    93 F.3d 346, 352 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*U.S. v. Enslin*,
    327 F.3d 788, 795 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2-3

*U.S. v. Rodriquez-Morales*,
    929 F.2d 780 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*U.S. v. Sharpe*,
    470 U.S. 675, 686 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*U.S. v. Torres-Sanchez*,
    83 F.3d 1123, 1129 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*U.S. v. Washington*,
    387 F.3d 1060, 1068 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*U.S. v. Willis*,
    431 F.3d 709, 714 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*West v. Atkins*,
    487 U.S. 42, 108 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

**California State Cases**

*Cabesuela v. Browning-Ferris-Indu.*,
    68 Cal.App. 4th 101 (1998), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*City of Barstow v. Mohave Water Agency*,
    23 Cal.4th 1244 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*City of Los Angeles v. City of San Fernando,*
    14 Cal.3d 199, 276-77 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gatto v. County of Sonoma,*
    98 Cal.App.4th 744, 751-52 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gillan v. City of San Marino,*
    147 Cal.App. 4th 1033, 1050-51 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Regents of University of California v. Superior Court (Regan),*
    17 Cal.3d 533, 536 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Shoemaker v. Myers,*
    2 Cal.App.4th 1407, 1424-25 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tobe v. City of Santa Ana,*
    9 Cal.4th 1069, 1100 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*Venegas v. County of Los Angeles,*
    32 Cal.4th 820 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17

*Williams v. Horvath,*
    16 Cal. 3d 834, 838 (1976)                  18

*Whitworth v. City of Sonoma,*
    2004 WL 2106606 (Cal.App. Sept 22, 2004) . . . . . . . . . . . . . . . . . . . . . . 16

**Federal Rules**
Fed. Rules of Civ. Proc. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**California Statutes**
Civ. Code §51.7                          17
Civil Code §52.                     15,16,17,18,19
Civil Code §52(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Civil Code §54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Civil Code §54.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18
Civil Code §54.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Civil Code §55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Civil Code §1007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ___
Govt. Code §815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Govt. Code §821.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Govt. Code §19683 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Penal Code §647(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

**Los Angeles Municipal Code Ordinances**

Los Angeles Municipal Code §85.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Other Sources**

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC.
BEFORE TRIAL (Rutter Group 2010), §14:240 . . . . . . . . . . . . . . . . . . . . . . . . 1

Plaintiffs incorporate the arguments, authorities and evidence submitted in support of their cross-motion for partial summary judgment or, in the alternative, summary adjudication.

## I.  SUMMARY JUDGMENT STANDARD

"Summary judgment cannot be granted where a dispute exists as to some 'material facts.'" [FRCP 56(a) (amended 2010)]. Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL (Rutter Group 2010), §14:240. "'Material' facts are those which, under applicable substantive law, *may affect the outcome* of the case: '[T]he substantive law will identify which facts are material.'" *Id.* citing (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Where there are disputes over facts that may affect the outcome of a case based on governing law, the court is precluded from granting summary judgment. *Id.*

## II.  PLAINTIFFS HAVE ESTABLISHED VIOLATIONS OF THEIR CONSTITUTIONAL RIGHTS; AT MINIMUM, THERE ARE DISPUTED MATERIAL FACTS ON EACH CLAIM

### A.  No Officer is Entitled to Qualified Immunity for the Seizure of Plaintiffs Jacobs-Elstein, Cagle, Taylor and Warivonchik in Violation of Their Fourth Amendment Rights

#### 1.  No probable cause existed to arrest plaintiffs

A seizure without sufficient cause violates plaintiffs' constitutional rights. *California v. Hodari*, 499 U.S. 621 (1991). The burden of proof is initially on defendants to establish probable cause in each instance. *Dubner v. City & County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001). Three plaintiffs were arrested pursuant to a law patently violative of fundamental constitutional rights, in contravention of the Fourth Amendment. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). *See* Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment/Summary Adjudication ("Pl. Mem.") at pp.15-16.

Moreover, when a statute is enforced "in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the

ordinance," the arrest is unreasonable "even if there is no clear case law declaring the ordinance or the particular officer's conduct unconstitutional." *Id.* at 1210, citing *Chew v. Gates*, 27 F.3d 1432, 1450 (9th Cir. 1994). *See also, Roska v. Peterson*, 328 F.3d 1230, 1252 (10th Cir. 2003) (no qualified immunity for removing child from parents without due process), *aff'd and remanded on other grounds*, 437 F.3d 964 (2006). In this instance, plaintiffs were arrested despite the fact that they proffered evidence that they were staying at a shelter or slept with permission on private property. Yet, defendants told plaintiffs that was irrelevant and mere presence on a public street with personal belongings in a vehicle was a crime. Pl. Statement of Disputed and Omitted Facts ("SDOF") #14 . There are material disputed facts in this instance regarding the constitutionality of the law, as well as the manner in which defendants enforced it in light of the well-established constitutional principles applicable to this case.

Plaintiffs Jacobs-Elstein, Cagle and Taylor were all arrested, handcuffed, booked and incarcerated by defendants. Def. SSF ## 44, 109, 135. Jacobs-Elstein was ordered out of his car on a second occasion and directed to stand on the sidewalk with an officer while other officers searched his vehicle prior to issuing a citation. SDOF #47; Jacobs-Elstein Dec. at ¶7. Anyone ordered to get our his car and stand on a sidewalk would understand that his liberty was restrained. This, alone, distinguishes his situation from the plaintiff in *Karam v. City of Burbank*, 352 F.3d 1188, 1194, who was at a City Council meeting when she was issued a citation - noting more - and argued that the requirement she appear in court constituted an ongoing "seizure."

### 2. No basis existed for Warivonchik's prolonged detention

"The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Enslin*, 327 F.3d 788, 795 (9th Cir. 2003) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Defendants "restrict[ed] the liberty" of

Warivonchik when they pulled her over. *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004) (edit added) (internal citation omitted). *United States v. Sharpe,* 470 U.S. 675, 686 (1985) requires officers to "diligently pursue[] a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Liberal v. Estrada,* 632 F.3d 1064, 1071 (9th Circuit 2011).  So, even if the original stop of Warivonchik was lawful, her continued detention was not.

The decision in *Center for Bio-Ethical Reform* is on point.  The detention in that case was in part related to a search of the vehicle of the activists based on the claim that the van's emergency lights might be malfunctioning. *Center for Bio-Ethical Reform, Inc. v. Los Angeles*, 533 F.3d 780, 797-98 (9th Cir. 2008). The court rejected this rational since, as here, even if true, it would not establish a Vehicle Code violation. *Id.* at 798. The deputies were denied qualified immunity for "unreasonably detain[ing] [the plaintiffs] at the scene." *Id.* at 799 (edit added).

Similarly, *Liberal* affirmed the denial of summary judgment to individual defendants on qualified immunity grounds. Repeating the rule in *Florida v. Royer,* 460 U.S. 491, 500 (1983), *Liberal* held that even a detention of 20 minutes may be found unreasonable if not based on continuing "reasonable suspicion." 632 F.3d at 1080-81, citing *United States v. Torres-Sanchez,* 83 F.3d 1123, 1129 (9thCir. 1996). In *Liberal,* officers "knew everything that they needed to know within five to ten minutes of the stop's initiation." 632 F.3d at 1081. Here, they should have known it within seconds, yet detained Warivonchik for about 20 minutes, ultimately threatening her with arrest for §85.02. "[O]nce it became clear that no Vehicle Code violations had taken place, the [officers] were no longer authorized to detain [Warivonchik] based on a reasonable suspicion that any particular crime had been committed." *Center for Bio-Ethical Reform,* 533 F.3d at 796.   These decisions establish that the cases defendants cite to justify Warivonchik's seizure are inapt.   All involve instances where officers were called to the scene of a traffic accident.  Once

3

there, they discovered evidence of another crime while preparing accident reports, justifying a continuing detention. That is not the case here.

Defendants' reliance on *Hershey v. City of Clearwater*, 834 F.2d 937 (11th Cir. 1987) to argue that §85.02 is clear fails.[1]  First, as *Hershey* stated, the court was not deciding the constitutional challenge, so any expression of what it might have decided is dicta.   Second, even as to the constitutional challenge in *Hershey* was different and involved no right to travel claim because the law there did not prevent "parking" or "standing" a vehicle on City property.   By contrast, with respect to the vagueness challenge, every federal court in California to decide this issue has recognized that "lodging" necessarily includes the key element of "sleeping" in a vehicle at night. *See Stone v. Agnos*, 960 F.2d 893, 895 (9th Cir. 1992) and *Joyce v. City and County of San Francisco*, 846 F.Supp. 843, 848 (N.D. Cal. 1994).  This is the only reasonable construction of §85.02. Plaintiffs are presumed to know the laws. *See* Pl. Mem. at 17. They correctly and rightfully assumed that if they ceased sleeping in their vehicles at night on public property, they would not be violating §85.02.

Tellingly, defendants previously provided notice to homeless individuals of California Penal Code §647(e). Ex. 1. This statute makes it a "misdemeanor to lodge in any place, whether public or private without the permission of the owner."   *Stone*, 960 F.2d at 895.   In *Stone*, the City of San Francisco instructed, persons who had slept in the Civic Center Plaza to leave because they were violating Cal. Penal Code 647 (e).  *Id.* at 894.  In *Joyce*, the City

---

[1] The irony of defendants' position is that, even if plaintiffs follow defendants' directives and utilize resources in the Homeless Outreach Task Force resource handout, as Jacobs-Elstein and Taylor did, they are still in violation of the law.  And, even if they stayed at Dockweiler Beach for $55 a night, if they left there and parked anywhere else in the City on public property, they would violate §85.02. *See Jacobs-Elstein* Dec. at ¶¶21:5-10, 26, 28:23-28, 29-30.

provided referral slips to homeless individuals for shelters in an effort to aid the homeless against violating Cal. Penal Code 647 (e). 846 F.Supp. at 848. *Stone* and *Joyce* direct that Pen. Code §647(e) could be avoided by sleeping in a permissible area and daytime presence in the City, with one's belongings, did not violate the law. There is no such possibility here.

Here, no plaintiff slept in a prohibited area. When they learned of §85.02, each found what they thought was a way to comply and ceased sleeping in their vehicle on public property. They either stayed on private property, in a shelter, or on the sidewalk in conformity with *Jones*. Based on reading the law, each believed that discontinuing sleeping at night in their vehicles on public property would avoid a citation under §85.02. *See e.g.,* SDOF #62 (Jacobs-Elstein Dec. ¶4:6-10). Taylor even rented a storage unit to avoid a §85.02 citation. But even obtaining storage facilities, sleeping on private property, a shelter or a sidewalk as permitted by *Jones* could not prevent repeated citations and, ultimately, arrest for violating §85.02.

The pivotal aspect of LAMC 85.02 that differentiates it from §647(e) is that, short of leaving the City or getting rid of their vehicle, plaintiffs cannot comply with the law regardless of where they slept or stored their belongings, even if they used some of the resources listed in the Local Outreach Resource Information packet. SDOF #14; *Cf., Joyce*, 846 F.Supp.at 848. LAMC §85.02 prohibits the *parking* or *standing* of a vehicle on a public street or parking lot if that vehicle contains personal property and the owner is homeless. It is impossible to comply with the law as long one has no fixed place to live. Laws prohibiting "lodging" can be complied with as long as the individual finds a permissible place to sleep overnight. If a person cannot afford rent, there is no way to comply with §85.02 as written and applied short of leaving the City or getting rid of the vehicle and keeping the same property in a shopping cart.

5

Material disputed facts exist as to whether §85.02 is a total ban on mere presence in the City by one who is homeless and keeps belongings in a vehicle.

### 3.   The Community Caretaking Exception is Inapplicable

The community caretaking exception to the Fourth Amendment does not apply for three reasons: first, it fails as to Warivonchik since she violated no Vehicle Code provision when she forgot to turn her directional off at 7:00 a.m. with no traffic in the area. Def. SSF#49. There is no assertion by defendants that she drove erratically or did anything other than leave on her turn signal. Yet, even if the "community caretaking" exception could justify the initial stop, it cannot excuse a continued detention of Warivonchik for the purpose of seeing if there was a possible §85.02 violation.   As defendant Yoshioka testified, on the plain face of §85.02 it requires that the vehicle be parked or standing, and since Warivonchik was moving on the road when they first contacted her, there was no reason to believe she violated §85.02. SDOF## 57,63.

Defendants assert the unremarkable proposition that "law enforcement officials may approach and detain citizens." Def. Mem p.9.   But, the community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *U.S. v. Rodriquez-Morales*, 929 F.2d 780 (1991) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)).   And, first there must be a valid traffic stop based on reasonable suspicion that the individual was violating traffic laws under the Fourth Amendment. *U.S. v. Willis*, 431 F.3d 709, 714 (2005) (citing *U.S. v. Arvizu*, 534 U.S. 26, 273 (2002)).   There was none here. Even if defendants suspected Warivonchik might have a mechanical problem

6

1 with her signal (Def. Mem p.9), that belief was dispelled since it worked
2 properly when she turned on her right blinker to pull to the curb.[2] SDOF #50.

3 Second, the "community caretaking" exception does not apply to the
4 impoundment of any plaintiffs' vehicle following his arrest. In *Miranda v.*
5 *City of Cornelius*, 429 F.3d 858 (9th Cir. 2005), the Court reversed a grant of
6 summary judgment to the defendants, holding that there was no basis to believe
7 that impoundment would avert any threat to public safety. As explained in
8 *Miranda*, "[t]he police's authority to search and seize property when acting in
9 its role as 'community caretaker' has a different source than its authority to
10 search and seize property to investigate criminal activity." *Id.* at 863. If
11 impoundment is "'required any time the arrestee is carted off to jail, regardless
12 of whether another person could have removed the car and readily eliminated
13 any traffic congestions, parking violation, or road hazard[,]'" the exception
14 would swallow the Fourth Amendment rule. Id. at 865, quoting *United States*
15 *v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996).

16 A "policy of impounding the car without regard to whether the defendant
17 can provide for its removal is patently unreasonable if the ostensible purpose
18 for impoundment is for the 'caretaking' of the streets." *Id.* Here, at least for
19 plaintiff Jacobs-Elstein, a friend arrived on the scene, asked for the keys and
20 could readily have removed the lawfully parked vehicle, if necessary.
21 SDOF#48 (Dec. of Kennedy at ¶4-5); Def. video.[3] Defendant Gonzales has
22 submitted a declaration stating that she did not know that asking for the keys

23
24 [2] Defendants also claim that the community caretaking exception to the Fourth
25 Amendment justified the stop because "driving with the turn signal on confuses other
drivers on the road which can create traffic problems." *Id.*

26 [3] Defendant Gonzales testified that she towed Mr. Jacobs-Elstein's vehicle
27 because it was important to him – "his home" - and that she liked him. But her
subjective intent and "good intentions" are irrelevant to the question of qualified
28 immunity. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

1 meant the person would take the vehicle away, if necessary. Def. Ex.
2 (Gonzales Dec. at ¶11). There is a material disputed fact based on the video
3 submitted by Defendants, and the Kennedy and Gonzales declarations.

4     Defendants contend that they impounded the vehicles to protect them
5 from vandalism. All three plaintiffs' vehicles were parked legally when they
6 were towed. There is no reason to believe that their vehicles would be any
7 more likely to be subject to vandalism than anyone else's parked on the same
8 blocks. Their vehicles could have been left there for 72 hours without
9 violating any law. LAMC §80.73.2.

10         **4. Section §85.02 is impermissibly vague and sets a trap**

11     As set forth in plaintiffs' moving papers, §85.02 is an unconstitutionally
12 vague statute that both fails to give fair warning of what it prohibits so that a
13 person can conform his or her conduct to the law and, at the same time, sets no
14 limits on the exercise of discretion in enforcement by the officer on the beat.
15 *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999), *Kolender v. Lawson*, 461
16 U.S. 352, 358 (1983). The declaration of defendant Gonzales only underscores
17 this problem. Although she was "made aware that prosecutors liked to see a
18 prior warning before a citation or booking took place in relation to the
19 enforcement of LAMC Section 85.02," (Gonzales Dec. at ¶7:27-28), no such
20 warning was required and a citation could issue if the individual was seen at
21 his car at all. *Id.* at ¶7:26-27. So, even the attempt to provide notice declared
22 insufficient in *Morales* is lacking here. *See* Pl. Mem. p.9.

23         **5. The individual defendants are not entitled to qualified immunity**

24     Plaintiffs have established in their moving papers that no individual
25 defendant is entitled to qualified immunity in this instance. In this instance, a
26 reasonable officer would have known that s/he could not enforce §85.02 as
27 defendants did against individuals who, as Taylor did, slept at a shelter, ate
28 meals and showered there, maintained a storage facility for the bulk of his

possessions, and spent all day every day at the Boardwalk with visits to the local library.[4] SDOF ##30,31. The law prohibiting arrest and removal for "vagrancy" was well established. Pl. Mem. IV B at pp.9-11. No reasonable officer would believe that s/he could apply a local ordinance in a manner that violated the constitutional protection to "loiter" in a public forum for innocent purposes, whether standing on a sidewalk as in *Morales*, 527 U.S. at 41, or sitting in a car during daylight for a short period of time. Pl. Mem. at pp. 9. It makes no difference that "the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

While the qualified immunity doctrine protects an officer's reasonable mistake of fact, there is no immunity based on a mistake of law.

### 6.    There are disputed material facts as to whether Capt. Peters is liable as a supervisor

Supervisory liability is distinct from *Monell* liability any may be imposed without a determination of municipal liability. *City of Oklahoma v. Tuttle*, 471 U.S. 808,    (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). It includes liability for both "culpable action or inaction in the training, supervision or control of ... subordinates." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). In this case, Capt. Peters was the command officer in charge. He approved the Task Force directive incorporating his "Four C's" as the parameters of what officers could or could not do in carrying out the Task Force assignment. SDOF #6; (Peters Depo. pp. 82:1-83:11 and Ex.3 to Pl. Mem.). He was present at every formal training, which occurred annually and lasted only a brief period, basically doing nothing more than reciting the

---

[4] Defendants knew that Taylor did not spend much time in his car since they had tried to catch him but did not. On the morning of his arrest, he was sitting in his car because it was raining outside. SDOF #30. Most people would do the same to get out of the rain.

statutory language. SDOF #10. He set the policy for the Task Force, including the training. *See West v. Atkins*, 487 U.S. 42, 108 (1988). A reasonable jury could find that he is liable as a supervisor. Peters commended Officer Yoshioka on a number of occasions for making arrests for violations of LAMC §85.02. SDOF # 67.

**B.    Plaintiffs Have Established a Violation of Their Right to Travel**

The Constitution protects the "'right to remove from one place to another according to inclination'" as an "'attribute of personal liberty.'" *Morales*, 527 U.S. at 53 (internal citation omitted). It follows that "an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage.'" *Johnson v. City of Cincinnati*, 310 F.3d at 497-98 (6th Cir. 2002) (quoting *Kent v. Dulles*, 357 U.S. 116, 126 (1958); *see also, Dunn v. Blumstein*, 405 U.S. 330, 338 (1972) ("freedom to enter *and abide*") (emphasis added).

Plaintiffs allege that their right to travel is violated not simply because of citations issued in direct violation of disability exemptions under the Vehicle Code, but also by LAMC §85.02's absolute ban on parking or standing a vehicle on public streets or in public parking lots in the City at any time, even momentarily, for any purpose, anywhere in the City if the vehicle owner is otherwise homeless. "Enforcing [LAMC 85.02] against individuals who do not live in an apartment or house and who use their vehicles for transportation violates due process and the right to Intrastate travel." FAC at ¶ 8.

Section 85.02 is readily distinguishable from the anti-camping and sleeping ordinance upheld in *Tobe v. City of Santa Ana*, 9 Cal.4th 1069, 1100 (1995).[5] *Tobe* considered a municipal law that banned camping and storing

---

[5] Significantly, *Tobe* did not decide whether the Santa Ana ordinance might fail an as-applied challenge. "[T]he Court of Appeal did not distinguish between involuntarily being homeless, and involuntarily engaging in conduct that violated the

personal possessions on public property. *Id.* at 1164. So long as individuals did not camp or store their belongings on public property, even if they were homeless they could "stand" their possessions – whether in a shopping cart, suitcase, or backpack – on public property day or night. 9 Cal.4th at 1107-08. Plaintiffs cannot do that, even momentarily, without risk of arrest if their property is in a vehicle, no matter what their purpose for being in Los Angeles.

On its face and as applied, §85.02 differentiates between those who own a vehicle and live in a traditional residence and those who own a vehicle and do not have a brick and mortar home. In *Tobe*, "[n]either the language of the ordinance nor [evidence submitted by petitioners] support[ed] a conclusion that *a person may be convicted and punished under the ordinance solely on the basis that he or she has no fixed place of abode.*" *Id.* at 1105 n.19 (emphasis added). *Tobe* prohibited anyone from camping on public property. The opposite is true here. The "crime" is committed once a person who is homeless, but has a vehicle with some possessions in it, "parks" or "stands" the vehicle on public property for any reason, regardless of whether they sleep in a shelter at night, or stay in another City at night which has no similar ban. It makes no difference if the person lawfully sleeps in a public park by day and stays up all night reading. In sum, LAMC §85.02 goes far beyond "discouragement" and "cannot be applied without trenching upon constitutionally protected rights." *Id.* at 1102.

---

ordinance. The court assumed that an involuntarily homeless person who involuntarily camps on public property may be convicted or punished under the ordinance. That question, which the Court of Appeal and the dissent address, and which might be raised in an as applied challenge to the ordinance, is not before us because plaintiffs offered no evidence that the ordinance was being applied in that manner. We express no opinion on the proper construction of the ordinance, in particular on whether the conduct it prohibits must be 'willful,' or on whether or in what circumstances a necessity defense is available." 9 Cal.4th at 1105 n.19.

Section 85.02 is identical in effect to the conduct held unconstitutional in *Johnson v. Board of Police Comm'rs*, 351 F.Supp.2d 929 (E.D. Mo. 2004), where homeless persons were arrested while "eating, sitting, or standing in public places in the Downtown area," physically removed from the Downtown area by police," and "told that they were not wanted in certain Downtown areas." *Id.* at 949. Here, not only have plaintiffs presented evidence that defendants seek to exclude them from Venice, by its plain terms §85.02 excludes them from parking or standing their vehicles <u>anywhere</u> in the City.

The indisputable testimony in this case is that defendants directly threatened Warivonchik, Taylor, Cagle and Jacobs-Elstein with arrest if these plaintiffs were even seen parked on a public street, no matter what their purpose for being there. SDOF#61. None of the plaintiffs slept in their vehicles at night on a public street or parking lot in the City of Los Angeles. SDOF#62. Each was engaged in innocent conduct at the time, which would not have been a crime but for the fact that they had personal property in their lawfully parked (or in the case of Warivonchik, moving) vehicles because they had no regular residence. SSF#61. If someone parked next to Taylor had a home, but was talking to a friend while sitting in his car because it was raining out, they would not be cited, even if they had a sleeping bag, book and some food in the car. Similarly, if a housed person parked next to Jacobs-Elstein and sat in his car with a friend's dog while listening to the radio, he would not be cited under LAMC §85.02, even if he sat there for hours since there is no law that makes this conduct a crime.

This case does not present facts similar to those in *Joyce v. City and County of San Francisco*, where the court found the plaintiffs could not sustain an Eighth Amendment claim because almost half of all shelter referral slips were requested and only a quarter of the total available beds were used. With respect to LAMC §85.02, even staying in a shelter at night, as Mr. Taylor did, does not alleviate criminal liability. *See also Joel v. City of Orlando*, 232 F.3d

1353 (11ᵗʰ Cir. 2000) (finding availability of shelter beds made camping voluntary).[6] Unlike *Roulette v. City of Seattle*, challenging an ordinance that prohibited sitting or lying on sidewalks during the day, there are not "numerous options of places to sit or lie down." 850 F. Supp. 1442, 1448 (W.D. Wash. 1994), affirmed 78 F.3d 1425 (1996). Section 85.02 forbids all "parking" or "standing" of a vehicle on any public property, any time of day, anywhere in the City, if the vehicle is operated by a homeless person and contains any personal belongings.[7] Defendants' enforcement policies reinforce this limitless construction of §85.02. *Cf. Joyce,* 846 F. Supp. at 863 (police guidelines directed that use of a bedroll alone was insufficient to violate the "camping" ordinance).

Compounding their miscomprehension of the right to travel argument, Defendants apply an incorrect analysis to plaintiffs' equal protection argument. Under Fourteenth Amendment analysis, a law is subject to strict scrutiny if it disadvantages a "suspect class" or impinges on a "fundamental right." *Nunez v. City of San Diego,* 114 F.3d 935, 944 (1997). Plaintiffs do not contend that homeless individuals are a suspect class. Instead, as explained in their Motion

---

[6]     In fact, none of the four plaintiffs alleging that §85.02 is unconstitutional both on its face and as applied to them sleep at night in his or her vehicle on public property in the City. There is no assertion or evidence by the City to the contrary.

[7]     Defendants' wrongly assert that Plaintiffs seek "a constitutional right to stay in Venice whenever they want and store their personal belongings on the streets of Venice without impunity." Def. Memorandum at 14-15. Plaintiffs seek to exercise their right to travel and park their lawfully owned and operated vehicles on the public streets of Los Angeles, including Venice, without citation and arrest simply because they have no fixed place of abode and have some property in their car. Taylor rented a storage unit and had very few items in his car. SDOF#31. Warivonchik was only driving through the City. SDOF#57. Cagle had a few boxes in his vehicle. Def. Ex. 2 (Yoshioka Dec.). Jacobs-Elstein had a few boxes, computers and some clothes. SDOF#64. All could have "store[d] their personal belongings on the streets of Venice without impunity" if using a shopping cart, but not a vehicle. SSF#25.

13

1  for Summary Adjudication, the equal protection argument is rooted in the
2  fundamental right to travel.  Under strict scrutiny, and even under a rationale
3  review standard, LAMC §85.02 fails.

4      Section 85.02 cannot meet strict scrutiny because it is not narrowly
5  tailored to promote a compelling governmental interest with sufficient nexus
6  between the stated government interest and the restrictions created by the law.
7  *Nunez*, 114 F.3d at 94.  It cannot satisfy a rational basis test because targeting
8  homeless individuals who have managed to hold on to their lawfully owned
9  and operated vehicles in an effort to eliminate crime or preserve the aesthetics
10 of Venice is completely ineffective.  There is no evidence that any of the
11 plaintiffs were committing crimes.  In fact, the officers all testified that they
12 observed the plaintiffs to see if they were parking their vehicles with some of
13 the following items in their vehicles: blankets, pillows, books, a radio, food,
14 water, clothing, computers, or boxes with miscellaneous belongings.  *See e.g.,*
15 SDOF #24.  Parking a vehicle with these types of items in it without other
16 culpable conduct does not make that individual susceptible to crime.  It is
17 irrational to attribute crime to a  person who parks his vehicle with his
18 belongings in the car.  Although some vehicles with these items may be untidy,
   a more narrow law could be passed to address this issue.

## III.  THERE IS A MATERIAL ISSUE IN DISPUTE REGARDING WHETHER PLAINTIFFS CAN ESTABLISH MONELL LIABILITY

20     Even if the individual defendants are granted qualified immunity, the
21 City may still be liable for the enforcement of §85.02, whether it is found to be
22 unconstitutional on its face or as applied through the Venice Homeless
23 Outreach Task Force.  *Monell v. New York City Dept. of Social Services*, 436
24 U.S. 658 (1978).  In *Owens v. City of Independence*, 445 U.S. 622, 652 (1980),
25 the Supreme Court held that a municipality could be found liable for a §1983
26 violation even if its officers acted in good faith and were granted qualified
27 immunity.  *See also Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002).

Indeed, even if the individual defendants are not found to have caused a constitutional injury, the municipality may still be liable. *Owens*, 445 U.S. at 648-652, 657-658; *accord, Fairley*, 281 F.3d at 916-17.

In this instance, plaintiffs can show that their injuries resulted from policies codified in the Municipal Code (§85.02) and the establishment of the Venice Task Force, with its specific purpose of arresting individuals suspected of violating LAMC §85.02. SDOF #1 (Ex. 1 to Pl. Mem.). The City's express intention to enforce a law that they knew was problematic was announced by no less than the Chief of Police at a Town Hall meeting on September 23, 2010. SDOF #66 (Ex. 1 (video)). Moreover, the officers assigned to the Task Force were instructed to enforce "quality of life" laws in the Venice area, but given woefully inadequate training. Ex. 1, 2.

## IV. PLAINTIFFS HAVE DEMONSTRATED THEIR §52.1 CLAIMS

Defendants contend that plaintiffs cannot state claims under California Civil Code §52.1 because, primarily, they cannot establish evidence of "violence" `by the officers against them. Simply put, that is not what the law requires and this argument, routinely made by defendants, has been expressly rejected by the California Supreme Court. Still, defendants continue to cite *Cabesuela v. Browning-Ferris-Indu.*, 68 Cal.App. 4th 101 (1998), even though it has been overruled by the decision in *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004), and superceded by legislative amendments.

"The language of section 52.1 provides remedies for 'certain misconduct that interferes with' federal or state laws, if accompanied by threats, intimidation, or coercion, and whether or not state action is involved. ..." *Id.* at 843. Applying this principle, courts have held that, even in the absence of excessive force, "[u]se of law enforcement authority to effectuate a stop, detention...., and search can constitute" a threat, intimidation or coercion. *Cole v. Doe 1 Through 2 Officers of City of Emeryville Police Dept.*, 387 F.Supp. 2d

1084, 1003 (N.D. Cal. 2005). It is "the particular coercive power of law enforcement officers [that] has led courts to impose liability when detention, rather than violence, is threatened." *Cuviello v. City of Stockton*, 2009 U.S. Dist. LEXIS 4896, *56 (E.D. CA. 2006). "The threat of detention or arrest is included in the plain meaning of 'coercion.'" *Id.,* citing *Cole, supra* at 1103. *See also, Whitworth v. City of Sonoma*, 2004 WL 2106606 (Cal.App. Sept 22, 2004) (police officer physically barring a person from entering a meeting is a form of "coercion" under section 52.1, even if no force is used).[8]

The statutory requirement of interference or attempted interference with federal or state statutory or constitutional rights by "threat, intimidation, or coercion" is to be broadly construed. *Venegas*, 32 Cal.4th at 843. Moreover, "nothing in Civil Code section 52.1 requires any showing of actual intent to discriminate." *Venegas,* 32 Cal.4th at 841. Plaintiffs need only show that constitutional or statutory rights are implicated and that the interference or attempt to interfere with the exercise of those rights was done by "threats, intimidation or coercion." *Id.* at 843 (Baxter, J., concurring). As Justice Baxter noted, "although the proscribed conduct is...delineated by the requirement that it be delivered in the form of a threat, intimidation, or coercion, it should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right, *including mere technical statutory violations, as incorporating a threatening, coercive, or intimidating verbal or written component*." *Id.* at 850-51 (Baxter, J. concurring) (edits and emphasis added). Plaintiffs have met this showing of "threatening, coercive, or intimidating" verbal and written action by defendants.

---

[8] The district court in *Cole* relies explicitly upon the "persuasive reasoning' of *Whitworth* despite the fact that California law bars citation in state courts to unpublished decisions. *Cole*, 387 F.Supp.2d at 1103 n.7.

Plaintiffs are not required to allege or prove that violence was used against them. A cardinal rule of statutory interpretation is "expresio unius est exclusivo alterius." Violence is an element of an offense under Civil Code §51.7, but the word does not appear in §52. *Francis v. California*, 2004 U.S. Dist. LEXIS 16816, *33-34 (N.D. Ca. 2004), citing the legislative history of §52.1 and *Venegas*. Interpreting "threats, intimidation or coercion" to require physical violence imports a threshold element not apparent directly or indirectly from the statutory language. "Threats," or "intimidation," or "coercion," are by definition different in degree from physical violence. That is apparently why §52(b)(2) prescribes damages of $25,000 for §51.7 violations and only $4,000 for §52.1 violations. *See Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 751-52 (2002).

## V.   DEFENDANTS CAN CLAIM NO STATE IMMUNITIES FOR VIOLATING CIVIL CODE §54.

Defendants claim that they are not liable for violating §54.1 since Defendants issued Plaintiffs tickets as a result of their "lack of awareness that Plaintiffs were exempt from some of the time limit restrictions." The only evidence supporting this claim is the self-serving declaration of Officer Prince. Ignorance of the law, particularly as to the Vehicle Code, is no excuse. Pl. Mem. at 17. Plaintiff Desertrain confronted Prince when he was writing the citations and informed him that her disability license plate exempted her from the time restriction posted on the street sign. SDOF #68. In response, he informed Desertrain that he was instructed to ticket all RVs in the area. SDOF #69. Moreover, defendants submitted no evidence regarding the bulk of the citations issued to Desertrain, Cagle, Eckhart, and Butler by other City employees with the Department of Transportation.[1] At a minimum, there are disputed material facts as to whether these citations were done as enforcement

---

[1] Civil Code §55 provides for injunctive relief only. So, even if any immunity applied to liability for the §54 claim, no immunities apply to prospective relief. Immunities apply to damages only. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

against suspected homeless persons living in vehicles, a primary purpose of the Venice Task Force and one City ordinance under which each was cited.

Section 54.1 expressly protects parking exceptions and accommodations for disabled drivers. Defendants' unlawful acts are not shielded by any state statutory immunities.    Immunity statutes have wide, but not universal, applicability and may not be applicable when they conflict with other state statutory provisions. "If so, the statutory liabilities must prevail." *Shoemaker v. Myers*, 2 Cal.App.4th 1407, 1424-25 (1992) (holding *Cal. Govt. Code* §821.6 does not immunize public officials from violations of *Cal. Govt. Code* §19683); see also *Gillan v. City of San Marino*, 147 Cal.App. 4th 1033, 1050-51 (2007) (Govt. Code §821.6 is not a complete defense to violations of Civ. Code §52). With particular relevance for plaintiffs' disability violation, *Lonberg v. City of Riverside*, 300 F.Supp.2d 942 (C.D. CA. 2004) held that Govt. Code §815 is not a shield City from Civ. Code §54.3 liability.

Sections 821.6 and 815 were designed to eliminate liability based upon common law torts. *See Williams v. Horvath*, 16 Cal. 3d 834, 838 (1976); Legislative Committee Comment - Senate to Section 815. Accordingly, §815.2 (b) provides that: "*Except as otherwise provided by statute*, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (emphasis added).

Here, Plaintiffs do not allege a common law tort claim; rather, like the plaintiff in *Lonberg*, they allege a violation of a statute: Cal. Civ. Code §54. Section 54 is a general statute applicable to a public entity. *Lonberg*, 300 F.Supp.2d at 947. *See also Regents of University of California v. Superior Court (Regan)*, 17 Cal.3d 533, 536 (1976) ("person, association, copartnership or corporation" included public entity); *City of Los Angeles v. City of San Fernando*, 14 Cal.3d 199, 276-77 (1975), disapproved on other grounds in *City*

18

1 of *Barstow v. Mohave Water Agency*, 23 Cal.4th 1244 (2000) (term "person,
2 firm or corporation" in Civ. Code §1007 includes governmental agencies).

3     Similarly, there is no immunity from liability under California Civil
4 Code §52.1. As the California Supreme Court emphasized in *Venegas*, "the
5 legislative history of Assembly Bill No. 2683 (1989-1990 Reg. Sess.), which
6 added the remedy of damages to *Civil Code section 52.1*, makes no mention of
7 immunity whether created by statute or court decision."

8 <center>**CONCLUSION**</center>

9
10     For all of the foregoing reasons, defendants' motion for summary
11 judgment should be denied.

12 Dated: September 26, 2011        Respectfully submitted,

13
14         LAW OFFICE OF CAROL A. SOBEL

            /S/

15         By: CAROL A. SOBEL
16         Attorneys for Plaintiffs

17
18
19
20
21
22
23
24
25
26
27
28