CAROL A. SOBEL  SBN 84483
429 Santa Monica Boulevard, Ste. 550
Santa Monica, CA  90401
T. 310 393-3055  F. 310 393-3605
E. carolsobel@aol.com

BARRETT S. LITT  SBN 45527
LITT, ESTUAR & KITSON LLP
1055 Wilshire Boulevard, Ste 1880
Los Angeles, CA 90017
T. 213 386-3114  F. 213 380-4585
E. blitt@littlaw.com

LEGAL AID FOUNDATION
   OF LOS ANGELES
SUSAN MILLMANN  SBN 92417
1640 5th Street, Ste 124
Santa Monica, CA 90401
T. 310 899-6200  F. 310 899-6208
E. smillmann@lafla.org

MICHAEL S. RAPKIN  SBN 67220
SCOTT B. RAPKIN  SBN 261867
LAW OFFICE OF MICHAEL RAPKIN
233 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
T. 310 319 5465  F. 310 319 5355
E. scottrapkin@rapkinesq.com

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEYENNE DESERTRAIN, et al., | CASE NO.: CV10-09053 RGK (PJWx) |
| *Plaintiffs,* | |
| v. | PLAINTIFFS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT |
| CITY OF LOS ANGELES, et al., | |
| | Date:        October 17, 2011 |
| *Defendants.* | Time:        9:00 a.m. |
| | Courtroom:  850 (Hon. R. Gary Klausner) |

Plaintiffs submit this statement of genuine issues pursuant to Central District of California Local Rule 56-2 in opposition to the motion for summary judgment filed by Defendants.

The first table below corresponds to the facts and supporting evidence presented by the moving party in the Statement of Unconstroverted Facts. The second table sets forth additional material facts and supporting evidence showing a genuine issue.

1

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 1. In 2010, the Venice area was experiencing an increase in crime due to a large criminal transient population. In addition, community members were complaining about people living in their cars and oversize vehicles in residential areas that were responsible for leaving trash on the streets. <br><br> Deposition of LAPD Captain Jon Peters, dated August 26, 2011, ("Peters Depo.") pp. 5:12-16, 14:17-20, 17:8-14, 21:13-23:8, 23:16-24:1, and 59:14-22., Exh. 1 to Declaration of Wendy Shapero filed concurrently herewith ("Shapero Decl."), ¶ 2. | UNDISPUTED |
| 2. In response, the Pacific Division created a task force by adding officers to supplement the work of the Senior Lead Officers. <br><br> Peters Depo., pp. 25:6-26:21; 62:25-63:15; 68:14-25; 71:20-72:15; 84:7-85:11 and Exhibit 3 - Operational Plan referenced therein, Exh. 1 to Shapero Decl., ¶ 2. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 3. As part of addressing the issue, the LAPD researched ways to implement the Streets to Homes program. This included identifying parking lots where people in vehicles could live in their cars overnight in the Venice area. Peters Depo., pp. 27:2-29:18, Exh. 1 to Shapero Decl., ¶ 2. | UNDISPUTED |
| 4. In addition, the Pacific Division sought to work with church groups to help provide information about social services to the homeless. Peters Depo., pp. 32:11-33:9; 38:23-41:3, 41:4-42:1, and Exhibit 1 referenced therein, Exh. 1 to Shapero Decl., ¶ 2. | UNDISPUTED |
| 5. LAPD's Pacific Division distributes hygiene kits and clothing for the homeless. It has also found some housing for the homeless. Peters Depo., 45:7-46:1 and 46:20-47:4, Exh. 1 to Shapero Decl., ¶ 2. | UNDISPUTED |
| 6. Cheyenne Desertrain is homeless and disabled. First Amended Complaint dated April 15, 2011 in the instant matter ("FAC"), ¶ 10 | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 7. She owns a recreational vehicle ("RV") and a 1987 Mercedes 300 which is in poor condition.<br><br>Deposition of Cheyenne Desertrain dated August 9, 2011 ("Desertrain Depo."), pp. 27:21-23, 28:15-23, 117:2-22, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |
| 8. When away from her RV, she was issued a parking ticket by non-defendant LAPD Officer Quesada on September 13, 2010 for violation of Los Angeles Municipal Code § 80.69(B)(vehicles six feet height or more within 100 feet of intersection).<br><br>Desertrain Depo., pp. 32:14-33:8 and Exhibit 4 (parking citation # 1087101540) referenced therein, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |
| 9. She believes the ticket was unlawful because her RV was 44 feet away from the sign post that limits vehicles over six feet and the arrow on the sign was pointing in the opposite direction from where her vehicle was parked.<br><br>Desertrain Depo., pp. 34:20-35:5 and 35:17-37:24, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 10.   Her vehicle had a disability placard on the front and back.<br><br>Desertrain Depo., p. 52:6-9, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |
| 11.   On October 16, 2010, her RV was parked on Hampton Street after 6:00 p.m.<br><br>Desertrain Depo., pp. 54:8-18 and 56:14-24, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |
| 12.   Later that evening, Desertrain believes she was the victim of a drive-by kicking by two LAPD bike patrol officers.<br><br>Desertrain Depo., 53:5-13 and 66:4-24, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |
| 13.   Desertrain was inside her RV when she heard a thump outside her vehicle around 7:00 or 7:30 p.m.<br><br>Desertrain Depo., pp. 52:12-20 and 54:19-24, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |
| 14.   While not sure who the officers were, Desertrain believes it was Officer Quesada, the officer who issued the first ticket.<br><br>Desertrain Depo., pp. 60:2-9 and 61:3-62:24, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 15.    She never spoke to the officers and she was not cited for anything.<br><br>Desertrain Depo., pp. 66:1-3 and 66:25-67:2, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |
| 16.    On November 3, 2010, she was issued a citation for violation of LAMC § 80.69(C) being parked in excess of 2 hours.<br><br>Desertrain Depo., 80:18-81:8 and Exhibit 7 (citation # 1087397102, dated November 3, 2010) referenced therein, Exh. 2 to Shapero Decl., ¶ 3. | UNDISPUTED |
| 17.    Her RV was parked on Hampton south of Rose Avenue which has posted time limit parking signs.<br><br>Desertrain Depo., pp. 83:2-6, 85:8-10, and 86:3-16, Exh. 2 to Shapero Decl., ¶ 3 | UNDISPUTED |
| 18.    Desertrain confronted LAPD Officer Prince about why he was issuing her a citation when her disabled plates exempted her.  He allegedly told her he was instructed to issue a citation to any RV.<br><br>Desertrain Depo., pp. 81:10-82:2, 86:17-22, and 90:11-91:11, Exh. 2 to Shapero Decl., ¶ 3 | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 19.    Officer Prince was professional, did not threaten her, and didn't force her to do anything.<br><br>Desertrain Depo., pp. 91:18-25 and 101:15-17, Exh. 2 to Shapero Decl., ¶ 3 | UNDISPUTED |
| 20.    Desertrain challenged the ticket.<br><br>Desertrain Depo., pp. 92:4-93:23 and Exhibit 8 (letter dated January 20, 2011 contacting Parking Violations Bureau) referenced therein, Exh. 2 to Shapero Decl., ¶ 3 | UNDISPUTED |
| 21.    The ticket was eventually dismissed because she had handicapped plates.<br><br>Desertrain Depo., pp. 93:24-94:5, 95:16-20, and 96:3-97:12, Exh. 2 to Shapero Decl., ¶ 3 | UNDISPUTED |
| 22.    She never paid any fines in relation to either of the two citations issued.<br><br>Desertrain Depo., pp. 97:14-98:7, Exh. 2 to Shapero Decl., ¶ 3 | UNDISPUTED |
| 23.    Officer Prince testified that he made a mistake when he issued the citation on 11-3-10.<br><br>Declaration of Jason Prince dated September 12, 2011 ("Prince Decl.") filed concurrently herewith, ¶ 8. | UNDISPUTED |

7

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 24. He did not know that the disabled plates permitted the disabled to park in excess of time limits posted on signs.<br>Prince Decl., ¶¶ 8 - 10. | UNDISPUTED |
| 25. Had he known this, he would not have issued the citation.<br>Prince Decl., ¶¶ 8 - 10. | UNDISPUTED |
| 26. He denies telling Desertrain he was required to issue citations to all RVs.<br>Prince Decl., ¶ 7. | UNDISPUTED |
| 27. Jacobs-Elstein is not disabled but he is homeless.<br>FAC, ¶ 11. | UNDISPUTED |
| 28. Jacobs-Elstein was primarily living in his vehicle from December 2007 until September 13, 2010.<br>Deposition of Steve Jacobs-Elstein dated August 9, 2011 ("Jacobs-Elstein Depo."), p. 19:10-12 and Exhibit 3 referenced therein, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |

8

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 29. In 2009, he was informed by a LAPD officer that it was illegal to live in his car. At the beginning of 2010, Jacobs-Elstein found private property to park on to sleep at night.<br><br>Jacobs-Elstein Depo., pp. 23:8-24:2 and 34:5-25, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 30. Jacobs-Elstein received three citations for violation of LAMC § 85.02 which prohibits the use of a parked vehicle on city streets for living. The first citation he received was on September 13, 2010 from LAPD Officer Gonzales when he had been in his car a few hours.<br><br>Jacobs-Elstein Depo., pp. 13:10-14:2, and Exhibit 7 referenced therein, 59:1-60:8, 70:20-71:13; 72:2-8 , Exh. 3 to Shapero Decl., ¶ 4.; Declaration of Brianna Gonzales ("Gonzales Decl.") filed concurrently herewith, ¶¶ 4-9 and photographs referenced therein. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 31.    Prior to this citation, Jacobs-Elstein had previously met Officers Gonzales and McInnis when he was in his car. <br> Jacobs-Elstein Depo., 60:12-61:13, and 62:7-9 , Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. | UNDISPUTED |
| 32.    Officer Gonzales warned him he was not allowed to live in his vehicle. <br> Jacobs-Elstein Depo., 63:13-20 and 67:24-68:1, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. | UNDISPUTED |
| 33.    At the time of the warning, he was lying back and relaxing his vehicle. <br> Jacobs-Elstein Depo., pp. 63:25-64:13 , Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 34.    Officer Gonzales did not issue him a citation. <br> Jacobs-Elstein Depo., p. 68:5-6 , Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
| --- | --- |
| 35.  At the time of the warning his car contained storage items, boxes, computers, food, water, pillow, and a blanket.<br><br>Jacobs-Elstein Depo., pp. 68:25-69:18 , Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. | UNDISPUTED |
| 36.  On September 13, 2010, Officer Gonzales again told Jacobs-Elstein he couldn't live in his car.<br><br>Jacobs-Elstein Depo., p. 74:14-21, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. | UNDISPUTED |
| 37.  At the time his car contained storage boxes, personal items, computers, water, food, blanket, and a pillow.<br><br>Jacobs-Elstein Depo., pp. 75:25-76:5, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. | UNDISPUTED |
| 38.  Jacobs-Elstein was not threatened or forced to do anything he did not want to do.  He was not arrested.<br><br>Jacobs-Elstein Depo., p. 79:7-18, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 4-9 and photographs referenced therein. | DISPUTED: Mr. Jacobs-Elstein was forced to exit his vehicle while officers searched his car without consent, which he did not want to do.<br><br>Jacobs-Elstein Dec. at ¶6-7. |

11

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 39.  Jacobs-Elstein went to court on the citation.  The citation was rejected. Jacobs-Elstein Depo., pp. 81:3-24 and 83:5-84:3, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 40.  Jacobs-Elstein saw Officers Gonzales and McInnis one time between September 13, 2010 and October 31, 2010. Jacobs-Elstein Depo., p. 88:5-19 , Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 41.  He was sitting on the wall of the Baptist Church property when Officer McInnis allegedly said, "What are you doing here?  The next time I see you, I'm going to take you to jail." Jacobs-Elstein Depo., pp. 88:23-89:2, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |

12

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 42. Jacobs-Elstein complained about the incident at a neighborhood meeting with Senior Lead Officer Peggy Thusing from the LAPD. Ms. Thusing told him she didn't like to hear that officers conduct themselves in that manner and asked if he wanted to file a formal complaint. Jacobs-Elstein Depo., pp.171:22-173:22, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 43. Jacobs-Elstein did not file a complaint. Jacobs-Elstein Depo., pp. 171:22-173:22, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 44. Jacobs-Elstein's next contact was on October 31, 2010 when he was arrested and cited for violation of LAMC § 85.02. Jacobs-Elstein Depo., p. 93:2-19, 140:6-16, and Exhibit 15 referenced therein, Exh. 3 to Shapero Decl., ¶ 4; Gonzales Decl., ¶¶ 10-11. | UNDISPUTED |
| 45. He was sitting in his car about ten minutes and was about to get out from it. Jacobs-Elstein Depo., pp. 93:23-94:6, 106:2-13, and 111:6-10, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 46. Officer Gonzales and her partner drove down the block where Jacobs-Elstein was parked, waited a few minutes, then approached him and informed him he would be arrested for violating LAMC Section 85.02. Jacobs-Elstein Depo., 97:13-98:4 and 102:18-20, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 10-17 and photographs referenced therein. | UNDISPUTED |
| 47. His car contained the same personal items as on prior occasions when he was warned/cited by the police. Jacobs-Elstein Depo., p. 99:24-100:15, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 10-17 and photographs referenced therein. | UNDISPUTED |
| 48. He believes he may have had a bottle of urine in his car as well. Jacobs-Elstein Depo., p. 203:2-10, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 10-17 and photographs referenced therein. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 49.   Officer Gonzales told him that he had been warned before about living in his car and that now he would be arrested.<br><br>Jacobs-Elstein Depo., p. 105:16-23, Exh. 3 to Shapero Decl., ¶ 4.; Gonzales Decl., ¶¶ 10-17 and photographs referenced therein. | UNDISPUTED |
| 50.   The officers were not yelling, did not point a gun at him, did not threaten physical violence, use force, or injure him.<br><br>Jacobs-Elstein Depo., 111:11-113:15 | UNDISPUTED |
| 51.   He was at the scene approximately 20 minutes before he was transported to the station.<br><br>Jacobs-Elstein Depo., pp. 118:18-119:3, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 52.   The police impounded his vehicle. Officer Gonzales stated she impounded his vehicle because she was concerned about vandalism and theft of his vehicle since Jacobs-Elstein lived in his car.<br><br>Gonzales Decl., ¶¶ 18-20 and DVD referenced therein. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 53.  Jacobs-Elstein claims that two friends offered to drive his vehicle away instead of being impounded<br><br>See Verified Response to Interrogatories by Plaintiff Jacob-Elstein No 8, Exhibit 4 to Shapero Decl., ¶ 5; and Gonzales Decl., ¶¶ 18-20 and DVD referenced therein. | UNDISPUTED |
| 54.  However, a video of Jacob-Elstein's arrest demonstrates that the cinematographer/friend only offered to take Jacob-Elstein's keys from him, not drive the car away.  Nor is any request made to the officers to drive the car away.  Finally, there is neither a visible nor audible response from Jacobs-Elstein showing his interest in having a friend drive his car away.<br><br>Gonzales Decl., ¶¶ 18-20 and DVD referenced therein. | UNDISPUTED |

16

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 55.  Jacobs-Elstein's third citation for LAMC § 85.02 was on January 30, 2011 when Officer Yoshioka issued him a citation.<br><br>Jacobs-Elstein Depo., p. 156:12-21 and Exhibit 22 (Citation # 95546 dated January 30, 2011, 168:7-17) referenced therein, Exh. 3 to Shapero Decl., ¶ 4.; Declaration of Randy Yoshioka ("Yoshioka Decl.") filed concurrently herewith, ¶¶ 20-24, and photographs referenced therein. | UNDISPUTED |
| 56.  Jacobs-Elstein was parked in his car near Penmar Park.<br><br>Jacobs-Elstein Depo., pp. 156:22-157:21, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 57.  His car had computers, personal items, food, water, boxes, blankets, and a pillow.<br><br>Jacobs-Elstein Depo., pp. 157:24-158:6, Exh. 3 to Shapero Decl., ¶ 4.; Yoshioka Decl., ¶¶ 20-24, and photographs referenced therein. | UNDISPUTED |
| 58.  He had been in his car for about an hour.<br><br>Jacobs-Elstein Depo., p. 158:8-11, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 59.   While he does not own a dog, at that time he had a dog food bowl on the passenger seat because he was dog sitting for a friend. Jacobs-Elstein Depo., pp. 191:25-193:1, Exh. 3 to Shapero Decl., ¶ 4.; Yoshioka Decl., ¶¶ 20-24, and photographs referenced therein. | UNDISPUTED |
| 60.   Officer Yoshioka told him that he cannot live in his car. Jacobs-Elstein Depo., p. 162:2-4, Exh. 3 to Shapero Decl., ¶ 4.; Yoshioka Decl., ¶¶ 20-24, and photographs referenced therein. | UNDISPUTED |
| 61.   Jacobs-Elstein responded, "I know I can't live in my car.  I'm not living in my car" and "I have a place to live" wherein he tried to show Officer Yoshioka the permission slip from Palms Court where he slept at night. Jacobs-Elstein Depo., p. 162:12-19, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 62.   While Jacobs-Elstein felt Officer Yoshioka was rude to him, he was not threatened or handcuffed. Jacobs-Elstein Depo., p. 163:1-17, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 63.    He was given a citation.<br><br>Jacobs-Elstein Depo., p. 165:15-18, Exh. 3 to Shapero Decl., ¶ 4; Yoshioka Decl., ¶¶ 20-24, and photographs referenced therein. | UNDISPUTED |
| 64.    He was also provided shelter information.<br><br>Jacobs-Elstein Depo., p. 193:2-13, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 65.    Jacobs-Elstein went to court on the citation on March 17, 2011.<br><br>Jacobs-Elstein Depo., p. 169:16-17, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 66.    He was advised that no criminal charges were filed against him.<br><br>Jacobs-Elstein Depo., p. 170:1-10, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 67.    He has not been cited since January 30, 2011.<br><br>Jacobs-Elstein Depo., pp. 170:20-171:2, Exh. 3 to Shapero Decl., ¶ 4. | UNDISPUTED |
| 68.    Eckhart is disabled.<br>FAC, ¶ 12. | UNDISPUTED |

19

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 69.   He was cited on November 3, 2010, January 29, 2011, and July 19, 2011 (violation of oversize vehicle parking). Deposition of Bradford H. Eckhart dated August 16, 2011 ("Eckhart Depo."), pp. 16:1-6, 85:24-86:12, 89:3-12, and 102:15-19, Exh. 5 to Shapero Decl., ¶ 6. | UNDISPUTED |
| 70.   One ticket was for violating a two-hour parking rule. Eckhart Depo., p. 42:22-25, Exh. 5 to Shapero Decl., ¶ 6. | UNDISPUTED |
| 71.   He received another ticket for an oversize vehicle violation. Eckhart Depo., p. 43:1-4, Exh. 5 to Shapero Decl., ¶ 6. | UNDISPUTED |
| 72.   He also received a $50 fine for improperly placing his disability placard.  He never paid the fine. Eckhart Depo., p. 55:1-17, Exh. 5 to Shapero Decl., ¶ 6. | UNDISPUTED |
| 73.   On March 9, 2011, he received another notice regarding the January citation advising him of a $68 fee. Eckhart Depo., p. 68:12-17, Exh. 5 to Shapero Decl., ¶ 6. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 74. There was an error on his November 3, 2010 citation because the precise location was not indicated. As a result, his ticket was dismissed and he did not have to pay a fine.<br>Eckhart Depo., pp. 50:3-14 and 51:11-52:8, Exh. 5 to Shapero Decl., ¶ 6. | UNDISPUTED |
| 75. No officer threatened to harm him or to take him into custody.<br>Eckhart Depo., p. 112:13-20, Exh. 5 to Shapero Decl., ¶ 6. | UNDISPUTED |
| 76. He never paid the fine for the January 29, 2011 ticket. He requested an administrative review and subsequently attended an in-person hearing. He eventually avoided paying the fee by applying for a fee waiver.<br>Eckhart Depo., pp. 69:9-72:8 and 81:9-20, Exh. 5 to Shapero Decl., ¶ 6. | UNDISPUTED |
| 77. He needs to attend an in-person hearing for his July 19, 2011 citation.<br>Eckhart Depo., pp. 90:23-91:2, Exh. 5 to Shapero Decl., ¶ 6. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 78.    Patricia Warivonchik is not disabled. Deposition of Patricia Warivonchik dated August 12, 2011 ("Warivonchik Depo.") filed concurrently herewith, p. 10:2-4, Exh. 6 to Shapero Decl., ¶ 7. | UNDISPUTED |
| 79.    Warivonchik believes she was targeted by the LAPD because of the perception she was homeless.  She is not homeless. She owns a RV. Warivonchik Depo., p. 10:5-25, Exh. 6 to Shapero Decl., ¶ 7. | UNDISPUTED |
| 80.    On November 13, 2010, she was driving on Lincoln when her left turn signal did not turn off. Warivonchik Depo., p. 11:17-23, Exh. 6 to Shapero Decl., ¶ 7;  Yoshioka Decl., ¶¶ 25-26. | UNDISPUTED |
| 81.    She was driving from Santa Monica to Westchester.  She had not noticed the police following her vehicle until she was pulled over on Lincoln. Warivonchik Depo., pp. 27:25-29:1 and 30:17-25, Exh. 6 to Shapero Decl., ¶ 7; Yoshioka Decl., ¶¶ 25-26. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 82.   Officer Murray told her they had followed her for a mile.<br>Warivonchik Depo., p. 31:1-7, Exh. 6 to Shapero Decl., ¶ 7; Yoshioka Decl., ¶¶ 25-26. | UNDISPUTED |
| 83.   She realized that her blinker had been on for approximately a mile or five to ten minutes.<br>Warivonchik Depo., p. 32:3-25, Exh. 6 to Shapero Decl., ¶ 7. | UNDISPUTED |
| 84.   She apologized to Officer Murray about her blinker not turning off.<br>Warivonchik Depo., pp. 36:24-37:3, Exh. 6 to Shapero Decl., ¶ 7. | UNDISPUTED |
| 85.   Officer Murray allegedly apologized for stopping her and explained he was not a Nazi, he was just following orders.<br>Warivonchik Depo., p. 39:8-25, Exh. 6 to Shapero Decl., ¶ 7. | UNDISPUTED |

23

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 86.  Officer Murray warned her about LAMC § 85.02 and told her that if she was found again she would be arrested and her RV impounded.<br><br>Warivonchik Depo., pp. 40:19-41:5, and Exhibit 2 (mistakenly identified as Exhibit 1) referenced therein [Bates stamp 105 photograph of Warivonchik's RV on the date she was stopped and warned by Officer Murray], and 44:12-45:4, 45:5-11, Exh. 6 to Shapero Decl., ¶ 7. | UNDISPUTED |
| 87.  Warivonchik was not cited for anything.<br><br>Warivonchik Depo., p. 38:14-17, Exh. 6 to Shapero Decl., ¶ 7; Yoshioka Decl., ¶26. | UNDISPUTED |
| 88.  She has never been cited for LAMC 85.02 or pulled over since November 13, 2010.<br><br>Warivonchik Depo., p. 48:11-18, Exh. 6 to Shapero Decl., ¶ 7. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 89.   Leroy Butler is disabled.  He and his wife own and drive a 1986 Toyota RV and a 27 foot vehicle.  The Toyota has a disability placard visible from the front window and the 27 foot vehicle has disability plates on the front and back. FAC, ¶ 14. | UNDISPUTED |
| 90.   Butler received three parking citations.  He never met any of the issuing officers.<br><br>Deposition of Leroy Butler dated August 12, 2011 ("Butler Depo.") filed concurrently herewith, p. 15:23-25, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 91.   He lives outside in Venice. Butler Depo., p. 23:2-14, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 92.   The first parking ticket he received was on August 16, 2010  for violating LAMC § 80.73.2 which prohibits parking in one place for more than 72 hours. FAC, ¶ 14; Butler Depo., p. 16:3-25, 47:4-17 and Exhibit 6 referenced therein (citation issued on August 16, 2010), Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 93.   Butler believes with disabled plates he is not subject to the 72 hour parking restriction.  Nevertheless, he claims he moves his vehicle every 48 hours. Butler Depo., pp. 18:11-22, and 20:21-21:5, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 94.   Butler challenged the issuance of this parking citation. Butler Depo., pp. 32:12-34:3 and Exhibit 5 referenced therein (letter sent to parking bureau complaining of wrongly issued tickets), Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 95.   The second citation he received was for an oversized vehicle within 100 feet of an intersection in violation of LAMC § 80.69 issued on September 4, 2010. Butler Depo., 21:6-13, 28:4-24 and Exhibit 4 referenced therein, 29:12-24, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 96.   His mother in law paid his ticket. Butler Depo., p. 30:2-18, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 97.   He didn't challenge the ticket. Butler Depo., p. 31:2-14, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 98.    Butler was present when it was issued but did not speak to the officer because he was some distance away from the vehicle.<br>Butler Depo., pp. 37:11-18 and 44:5-10, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 99.    Butler challenged this ticket but believes he paid the fine.<br>Butler Depo., pp. 44:19-22 and 45:15-20, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 100.   Butler has never been pulled over by the police despite living in the Venice area since 1969 and owning two RVs.<br>Butler Depo., p. 50:5-8, Exh. 7 to Shapero Decl., ¶ 8.; FAC, ¶ 14. | UNDISPUTED |
| 101.   Butler was again cited on July 19, 2011 at 3:29 a.m. for parking an oversized vehicle on the street.<br>Butler Depo., p. 50:9-23, 50:9-20 and Exhibit 9 referenced therein, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 102.   His car was not there for 72 hours because it was street cleaning day.<br>Butler Depo., p. 52:7-20, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 103.   He is challenging this ticket.<br><br>Butler Depo., p. 57:1-22, 67:14-23 and Exhibit 10 referenced therein, Exh. 7 to Shapero Decl., ¶ 8. | UNDISPUTED |
| 104.   William Cagle is disabled.<br><br>FAC, ¶ 15. | UNDISPUTED |
| 105.   He has a disabled placard clearly displayed on his vehicle at all times.  He is also homeless.<br><br>FAC, ¶ 15. | UNDISPUTED |
| 106.   He was cited on October 17, 2010 for violation of LAMC § 85.02.<br><br>Deposition of William Cagle dated August 16, 2011 ("Cagle Depo.") filed concurrently herewith, pp. 44:8-12 and 45:6-9, Exh. 8 to Shapero Decl., ¶ 9; Yoshioka Decl., ¶¶ 6-9 and photographs attached thereto. | UNDISPUTED |
| 107.   He went to court for the October 17, 2010 citation.<br><br>Cagle Depo., pp. 68:11-69:15, Exh. 8 to Shapero Decl., ¶ 9; Yoshioka Decl, ¶¶ 6-9 and photographs attached therein. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 108.  On November 3, 2010, Cagle was issued a citation for parking at an expired meter.<br><br>Cagle Depo., pp. 72:9-73:25, Exh. 8 to Shapero Decl., ¶ 9. | UNDISPUTED |
| 109.  On November 22, 2010, he was arrested and cited for violation of LAMC § 85.02. His car appeared in the same condition as when he was cited on October 17, 2010.  Cagle admitted he kept a bottle of urine in his car.<br><br>Cagle Depo., p. 136:5-10, Exh. 8 to Shapero Decl., ¶ 9; Yoshioka Decl., ¶¶ 10-11. | UNDISPUTED |
| 110.  Cagle's car was towed because it was parked in a high crime neighborhood. The officers did not want it to be vandalized or burglarized.<br><br>Cagle Depo., pp. 33:1-17, 99:20-100:19, and 129:1-14, Exh. 8 to Shapero Decl., ¶ 9; Yoshioka Decl., ¶ 11. | UNDISPUTED |
| 111.  Cagle challenged the November 3, 2010 citation.<br><br>Cagle Depo., pp. 79:2-80:4, Exh. 8 to Shapero Decl., ¶ 9 | UNDISPUTED |

29

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 112.   Pacheco was cited on January 14, 2011 for exceeding the 72 hour parking limitation.<br>Deposition of Luis Pacheco dated August 17, 2011 ("Pacheco Depo.") filed concurrently herewith, pp. 16:7-10 and 25:17-19, Exh. 9 to Shapero Decl., ¶ 10; Deposition of Della Franco dated August 17, 2011 ("Franco Depo.") filed concurrently herewith, p. 17:7-8, Exh. 10 to Shapero Decl., ¶ 11. | UNDISPUTED |
| 113.   Pacheco challenged his citation.<br>Pacheco Depo., pp. 45:2-46:1, Exh. 9 to Shapero Decl., ¶ 10. | UNDISPUTED |
| 114.   The review process resulted in the decision that the ticket was valid.<br>Pacheco Depo., p. 48:21-25, Exh. 9 to Shapero Decl., ¶ 10 | UNDISPUTED |
| 115.   Franco felt threatened and targeted by the LAPD and residents of Venice because she had an RV.<br>Franco Depo., 12:3-10 and 16:16-20, Exh. 10 to Shapero Decl., ¶ 11. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 116. However, no officer threatened to take them to jail or cite them in relation to their RV.<br><br>Franco Depo., p. 25:4-10, Exh. 10 to Shapero Decl., ¶ 11. | UNDISPUTED |
| 117. Officer Yoshioka never harassed them.<br><br>Franco Depo., p. 63:14-17, Exh. 10 to Shapero Decl., ¶ 11. | UNDISPUTED |
| 118. Chris Taylor is homeless.<br><br>Deposition of Chris Taylor dated August 11, 2011 ("Taylor Depo."), p. 16:20-21, Exh. 11 to Shapero Decl., ¶ 12 | UNDISPUTED |
| 119. Chris Taylor was cited and arrested for illegally living in his vehicle on December 18, 2010 by LAPD Officers Yoshioka and Murray.<br><br>FAC, ¶ 19, Deposition of Chris Taylor dated August 11, 2011 ("Taylor Depo."), pp. 18:23-19:11, attached hereto as Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. | UNDISPUTED |

31

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 120.   Taylor had previously met Officers Yoshioka and Murray in October 2010. At that time, he was laying down in his car.<br>Taylor Depo., pp. 56:1-9 and 57:1-23, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. | UNDISPUTED |
| 121.   He had spent the night in his car.<br>Taylor Depo., p. 56:8-25, Exh. 11 to Shapero Decl., ¶ 12 | UNDISPUTED |
| 122.   He had all his art supplies, clothing, a pillow, and a blanket.<br>Taylor Depo., pp. 58:18-59:25, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. | UNDISPUTED |
| 123.   The officers explained to him that he could not live in his vehicle.<br>Taylor Depo., p. 61:20-24, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. | UNDISPUTED |
| 124.   He was detained a total of 20 minutes but he was not cited.<br>Taylor Depo., p. 66:17-23, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 125. From the time of his initial warning not to live in his vehicle, Taylor saw the officers twice a week and believes they looked into his car to see if he was sleeping. <br> Taylor Depo., pp. 66:24-67:21, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |
| 126. His car was usually parked on Third and Sunset. <br> Taylor Depo., p. 68:6-13, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |
| 127. On December 18, 2010, a friend of Taylor's was standing outside Taylor's vehicle while he sat inside. <br> Taylor Depo., p. 77:10-14, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |
| 128. They were speaking together for 15 minutes. <br> Taylor Depo., p. 77:21-24, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |
| 129. The police drove up to Taylor's car. <br> Taylor Depo., p. 79:21-23, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 130.   Officer Murray ordered Taylor out of his car.<br><br>Taylor Depo., p. 80:18-24, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. | UNDISPUTED |
| 131.   Officer Murray allegedly said "I told you it was illegal to lie in your vehicle."<br><br>Taylor Depo., p. 85:17-21, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |
| 132.   He told the officers he was not living in his vehicle and that he had a card to a homeless shelter documenting that he lived there.<br><br>Taylor Depo., p. 89:20-90:6, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |
| 133.   Photographs depicting the condition of his vehicle were taken when he was arrested.<br><br>Taylor Depo., pp. 89:12-19, 92:23-93:1, 110:4-117:21, and Exhibit 15 referenced therein, Exh. 11 to Shapero Decl., ¶ 12; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 134.   In addition to a tray of food, he had a sleeping bag, shoes, clothes hangers, soda, and a bottle of urine.<br>Taylor Depo., p. 106:11-21, Exh. 11 to Shapero Decl., ¶ 12.; Yoshioka Decl., ¶¶ 13-19 and photographs attached thereto. | UNDISPUTED |
| 135.   He was in custody for five hours before being released.<br>Taylor Depo., p. 101:4-6, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |
| 136.   His vehicle was impounded.<br>Taylor Depo., p. 102:20-22, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |
| 137.   His car was impounded because it was parked in a high crime area and the officers were concerned about it being vandalized or burglarized.<br>Yoshioka Decl., ¶ 19. | UNDISPUTED |
| 138.   Taylor didn't try to get the car out of impound because he did not have the money.<br>Taylor Depo., p. 105:13-24, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |

| Defendant's Proposed Uncontroverted Material Fact and Supporting Evidence | |
|---|---|
| 139.   He went to the court on the arrest and the charges were dismissed.<br><br>Taylor Depo., pp. 107:19-24, and 108:25-109:2, Exh. 11 to Shapero Decl., ¶ 12. | UNDISPUTED |

**PLAINTIFFS' ADDITIONAL MATERIAL FACTS:**

Opposing party also contends that the following other material facts are in dispute.

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| 1 | The mission of the Venice Homeless Outreach Task Force was to look for people that live in their RVs and to deal with transient and illegal activity such as trespass, drinking in public, adhering to the times in which homeless could sleep on the sidewalks, with an emphasis on citations for 85.02. | Yoshioka: 22:18-22:21; 35:16-35:25; Ex. 1; Plaintiff's Separate Statement of Undisputed Facts in Support of Partial Summary Judgment/Summary Adjudication ("SSF") 14. |
| 2 | Captain Hiltner issued a document in 2008 to instruct the Task Force officers on ways of dealing with the situation of homeless persons and vehicles, particularly LAMC 85.02. | Peters:77:1-77:15; Ex.6; SSF 8 |

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| 3 | The document provided to the Task Force was a packet entitled Local Outreach Resource Information (13 pages), which included the language of LAMC 85.02 and information on Medical Services, Food Banks, Homeless Shelters, and RV parks. | Peters: 77:1-77:15; 44:9-44:25; Ex. 5, 6 |
| 4 | Initially, when Peters started at Pacific, he learned the packet handed out to homeless people as Local Resources was not accurate. It was revised; several pages were omitted. | Peters:44:9-44:25; Ex.5, 6; SSF 5 |
| 5 | Capt. Peters believed that if persons stayed at a shelter at night and returned to their vehicles during the day they would not violate 85.02, but no training was given to the officers on this and all were trained and acted otherwise. | Peters: 50:7-52:10; SSF 7; *cf. SSF 13,26, 31, 43, 52* |
| 6 | Capt. Peters fosters broad discretion in enforcement, following a philosophy of "Four C's": commander's intent (Peter's | Peters: 82:1-83:11; Ex.3; SSF 9 |

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| | ultimate goal), constitutional policing (following law), Community (impact on community), Compassion.  This was incorporated as a directive in the Task Force Operational Plan. | |
| 7 | Sgt. Reina wrote the Venice Task Force Operation Plan after discussions and roundtable meetings with a number of people. It is consistent with Capt. Peters' direction to the officers regarding the Task Force. | Peters: 86:19-87:6; Ex. 3; SSF 10 |
| 8 | Officers had full discretion to decide whether to issue a citation. Even if a person stayed at shelters s/he could be violating 85.02. | Yoshioka: 167:12-171:10; 178:4-179:12<br>Gonzales: 33:18-34:8; 36:7-36:10;<br>Prince 47:25-50:22; SSF 43 |
| 9 | Officers assigned to the Venice Homeless Outreach Task Force were given 20 minutes of informal training by a Sgt. and the Local Outreach Resources Information and told to | Yoshioka: 61:12-63:1;<br>Gonzales: 20:19-22:23; 25:24-27:17;<br>38:18-40:8;<br>Prince: 35:16-35:25; |

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| | provide copies to homeless individuals suspected of living in their vehicles along with a warning about violating 85.02. They later received training of about 15-20 min. by Claudia Martin. The officers were also provided exemplars to follow, depicted in Exhibit 4. | Ex. 4; SSF 11 |
| 10 | Claudia Martin provided the only formal training on 85.02, consisting of 15-20 minutes each in April 2010 and 2011. The officers were trained that the following was necessary for prosecution under LAMC 85.02: give a warning on the first contact, try to provide shelter information, give community resources to assist against an 85.02 violation, and take photos during a citation or arrest. Capt. Peters was present and spoke at the training, too. | Peters: 97:1-97:6; 99:3-100:2 Yoshioka: 30:13-33:12; 34:5-35:15 SSF 12 |
| 11 | Yoshioka received informal training from | Yoshioka: 36:4-37:1 |

39

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| | Sgt. Reina when he joined the Task Force in October 2010, but it was no different than Claudia Martin's training. | SSF 18 |
| 12 | It is illegal to park a vehicle on a public street or parking lot any time of day or night if the individual used the vehicle as living quarters. | Gonzales: 40;18-40.24; Ex. 2 SSF 22 |
| 13 | Sgt. Reina trained the Task Force that living quarters meant anything one would do in a home - eating, sleeping, "hanging out" - with evidence of food, water, basic necessities, medication, toiletries, bedding, personal items such as clothing, books, computers - anything that would show a person was spending a good amount of time in the vehicle. No other definitions were given. | Yoshioka: 37:2-37:17; 182:21-183:16 SSF 19 |
| 14 | Officers were never trained as to how a person could avoid an 85.02 violation, such as staying in a shelter during the day or | Yoshioka:105:2-105:21; 106:16-107:6; 170:17-171:10 Gonzales:31:3-32:18; 56:7-60:1 |

40

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| | keeping their belongings elsewhere. There was no time that 85.02 did not apply. It did not have to be overnight or day-by-day, and regardless of where a person stayed at night. | SSF 13; 31 |
| 15 | The officers were trained that if someone were sleeping in or using a vehicle at night, he could also be cited during the day, but Yoshioka was not trained that someone would have to be in his vehicle more than one day at a time to be violating 85.02. | Yoshioka: 35:16-35:25 SSF 17 |
| 16 | Taking advantage of some resources listed in the Local Outreach Resources Information packet would not avoid a violation of 85.02. | Gonzales: 48:15-49:14 SSF 50 |
| 17 | If someone tried to take advantage of the resources listed in the local outreach packet, and then drove to the services but parked on a public street, they would still be violating 85.02. Gonzales probably would not cite the person if she saw him trying to get help. | Gonzales: 140:8-143:21 SSF 51 |
| | Even if Jacobs-Elstein parked at the County | Jacobs Elstein Declaration &30; Ex. |

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| 18 | owned and operated parking lots to appear in court on a citation, he would violate 85.02. | 2<br>SSF 143 |
| 19 | Even if Jacobs-Elstein took advantage of any of the resources provided to him by Officer Murray in the packet depicted in Exhibit 5, he would still be in violation of '85.02. | Jacobs Elstein Declaration &19<br>SSF 134 |
| 20 | An 85.02 citation is not a normal traffic citation: it is an arrest and a release from custody on the arrestee's own recognizance. | Yoshioka: 33:20-34:4<br>SSF 16 |
| 21 | No independent law makes it illegal to eat in a car, nap in a car, hang out or listen to the radio in a car, have medication or toiletries in the car, or books, blankets, clothes, or other personal items while legally parked. | Yoshioka: 37:18-39:21;<br>100:22-101:14; SSF 20 |
| 22 | No law makes it illegal to sit in the back seat of a car while talking to somebody outside of the vehicle with a sleeping bag also in the back seat. It is not illegal to have in a car any of the items Taylor had | Yoshioka: 141:7-142:3;<br>Taylor:141:2-24<br>SSF 36 |

42

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| | when arrested. Taylor had a sleeping bag in his vehicle whether he was housed or not. | |
| 23 | There is nothing independently illegal about having clear plastic boxes of salads, a portable radio or water bottles in a vehicle. | Yoshioka: 171:19-172:17<br><br>SSF 44 |
| 24 | It is the combination of having these things in one's vehicle plus parking on a city street that provides the basis of an 85.02 violation. No items are more indicative than others of somebody living in his or her car. | Yoshioka: 39:22-41:1<br><br>SSF 21 |
| 25 | It is not illegal to have the same items in a shopping cart which, when in a car, would support an 85.02 violation. | Yoshioka: 98:19-100:21; 107:7-108:11;  Gonzales: 42:15-43-25; 93:4-93:14; Prince: 52:13-54:1<br><br>SSF 30 |
| 26 | The fact that a person may need cover from the rain is irrelevant to an 85.02 violation. | Yoshioka: 173:1-174:13<br><br>SSF 45 |
| 27 | Yoshioka did cite Cagle without first issuing a warning despite the training provided to Yoshioka which instructed him | Yoshioka: 63:2-63:18; Ex. 36<br><br>SSF 23 |

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| | to first warn persons suspected of living in their vehicle since Cagle said he was familiar with 85.02 | |
| 28 | Yoshioka does not recall asking whether Cagle slept on the sidewalk the night before, but it would not have made a difference. It did not matter whether they slept the night before, or if they slept on a sidewalk. | Yoshioka: 97:8-98:18; see also Prince: 50:23-52:12 SSF 26 |
| 29 | Yoshioka had discretion to cite and release Taylor but arrested him as he thought Taylor would still violate 85.02 based on what Taylor said then, not Taylor's conduct between 10/29/10 and 12/18/2010. | Yoshioka: 133:3-136:24; 139:3-139:25 SSF 34 |
| 30 | Yoshioka can't recall what Taylor said to make him think he would still violate 85.02. Taylor was sitting in the back seat, the car door was open and a man was standing outside of the car speaking to Taylor. Taylor was not sleeping; it was raining out. | Yoshioka: 139:13-141:6; Taylor: 102:6-14 SSF 35 |

44

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| 31 | Taylor said he was staying at a shelter, but Yoshioka doesn't recall if this made him reconsider arresting Taylor.  Staying at a shelter would not matter as his car was "set up" as living quarters. Taylor was out of the car all day, slept on the sidewalk or at shelter at night; kept a storage unit for his property; and had no stored food.  He had 5 books, the rest were in his storage unit. | Yoshioka: 142:4-146:15; Taylor: 15:1-3; 89:20-90:6; 91:13B92:10; 126:6-19; 127:14-25; 133:5-134:9; 136:20-138:25; 142:7-14; Ex. 10a-c SSF 37 |
| 32 | Yoshioka recalls talking with Jacobs-Elstein about the fact that he was staying elsewhere at night, but responded that it was not just sleeping in a car that was barred but also the condition of a car and parking on city streets. | Yoshioka: 164:12-165:6 SSF 40 |
| 33 | For the arrests of Taylor, Cagle and Jacobs-Elstein, no evidence exists that any of them stayed in their vehicles overnight or occupied the vehicle for 3 or more days. | Yoshioka: 184:19-185:18 SSF 46 |

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| 34 | Prior to April 2010, Prince had never received any training regarding 85.02. | Prince: 16:21-18:5; 47:11-47:24 SSF 52 |
| 35 | Prince discussed with his partner whether they should arrest someone who seemed to be trying to get off the streets and they found the individual to be credible. | Prince: 62:18-64:8; SSF 53 |
| 36 | Even when was standing at the church Mr. Jacobs-Elstein might be violating 85.02 based on where he parked and what he had in his vehicle. He could only be cited and under 85.02 if parked on public property. | Gonzales: 137:8-140:7 SSF 59 |
| 37 | The hours that shelters are open would not have prevented Jacobs-Elstein from being cited for 85.02 since he would have to be out of the shelter by 5:00am.  He could not stay at the shelter during the day. | Jacobs Elstein: 194:6-194:12 SSF 64 |
| 38 | Despite the fact that Franco and Pacheco have lived in an apartment in Venice since | Franco: 9:21-25; 37:21-38:6; Ex. 2 SSF 127, 130 |

46

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| | 1998, they also received an 85.02 Warning of Enforcement Action on their RV. | |
| 39 | Because Jacobs-Elstein owns a vehicle and parks it during the day on public streets and parking lots as he goes about his business, he cannot comply with 85.02 since he does not have an apartment. Even to park a vehicle on public property during the day regardless of the fact that he does not sleep in the vehicle on public property at night. | Jacobs-Elstein Declaration at &18 SSF 133 |
| 40 | The packet distributed by the Task Force was not helpful in avoiding a violation of 85.02 | Gonzales 48:15-49:14; 140:8-143:21; Jacobs-Elstein Dec. ¶ 19, 30 SSF 51 |
| 41 | The first page of Exhibit 5, is a copy of LAMC 85.02, stating the statutory words. | Jacobs Elstein Declaration &19; Ex. 5 |
| 42 | The second page of Exhibit 5 lists RV Parks.  None of the parks listed are in Los Angeles.  Most are a far drive, the closest in Malibu.  On the next page, Dockwelier RV | Jacobs Elstein Declaration &20; Ex. 5 SSF 136 |

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| | Park in Playa Del Rey is described as the only beach RV Park in Los Angeles County. Jacobs-Elstein is not aware of any other public RV parks in the City or County of Los Angeles. | |
| 43 | Jacobs-Elstein could not park at Dockweiler RV Park as he does not drive a "self-contained" RV. He drives a small SUV. | Jacobs Elstein Declaration &21; Ex. 5

SSF 137 |
| 44 | None of the RV parks listed in Exhibit 5 are a realistic option for Jacobs-Elstein. Most cost $35 to $115 a day. None permit vehicles other than self-contained RVs | Jacobs Elstein Declaration &22; Ex. 5

SSF 138 |
| 45 | Most phone numbers for shelters in Ex. 5 were wrong or disconnected. | Jacobs Elstein Declaration &23; Ex. 5; SSF 139 |
| 46 | None of the shelters in Ex. 5 allow storage of personal items or staying in the day. | Jacobs Elstein Declaration &24-26; Ex.5; SSF 141 |

48

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| 47 | On September 13, 2010, Jacobs-Elstein was ordered out of his vehicle and directed to stand on the sidewalk with an officer while other officers searched his vehicle prior to issuing him a citation | Jacobs Elstein Deposition: 76:22-77:8 |
| 48 | During Jacobs-Elstein's arrest on 10/31/10, a friend arrived on the scene and offered to take his keys to remov the lawfully parked car. | Jacobs's Elstein Dec. ¶11; Kennedy Dec. ¶¶4-5. |
| 49 | There is no evidence by defendants that Warivonchik drove erratically or did anything other than leave on her blinker. | Yoshioka Depo: 185:19-187:15 |
| 50 | When Warivonchik heard the siren from the police vehicle, she turned on her right turn signal to pull over and saw that her left turn blinker had not automatically turned off when she had made a left turn. | Warivonchik Depo: 31:16-32:7; 33:8-9; 33:23 |
| 51 | Because Warivonchik drives an older vehicle, sometimes the turn signal does not automatically turn off after she makes a turn. | Warivonchik Dep: 35: 20-22; 36:1-14 |

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| 52 | There was nothing in the front camper of Warivonchik's RV that would have provided suspicion that she was living in the vehicle. | Warivonchik Depo: 42:14-21 |
| 53 | Warivonchik stayed at a church parking lot in Santa Monica for 5 years before 11/13/10. | Warivonchik Depo at 43:8-20 |
| 54 | Warivonchik used her RV to commute to work during 2010.  She worked in Beverly Hills, All Saints Church, through a babysitting agency watching children. | Warivonchik Depo at 44:2-11 |
| 55 | Warivonchik was stopped for about 20 minutes on November 13, 2010 | Warivonchik 48:19-22 |
| 56 | Warivonchik was not cited for anything on November 13, 2010, but she had never heard of being stopped for leaving a turn signal on. | Warivonchik 51:22-52:6 |
| 57 | Warivonchik was scared by the 85.02 warning to think of being arrested just for having a camper or being in a camper. | Warivonchik 53:8-20 |
| 58 | Warivonchik lived in Venice since 1976. | Warivonchik 62:24-63:1 |

50

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| 59 | After she was stopped on November 13, 2010, Warivonchik went to Venice as little as possible for fear of being arrested. | Warivonchik: 66:4-10 |
| 60 | Taylor sells art all week on the Venice Boardwalk between 9:00am until sundown. | Taylor Depo at 14:18-15:7 |
| 61 | Defendants directly threatened Warivonchik, Taylor, Cagle and Jacobs-Elstein with arrest if they were even seen parked on a public street, no matter what their reason. | Warivonchik: 53:8-20; Jacobs-Elstein: 31:2-5; Taylor: 102:8-14; Cagle 46:15-52:4 |
| 62 | None of the plaintiffs slept in their vehicle at night on public property in the City | Taylor: 127:14-25; Cagle 52:5-55:25; Jacobs Dec at ¶¶4-5. |
| 63 | On the plain face of 85.02 it requires that the vehicle be parked or standing. | Yoshioka 104:22-106:15 |
| 64 | Jacobs-Elstein did not have any pets in his vehicle; only miscellaneous foods, water bottles, boxes, computers, clothes. | Gonzales Depo at 72:7-73:9 |
| 65 | Cagle had almost nothing in his vehicle. | Cagle Depo at 64:1-65:14 |
| 66 | The City's express intent to enforce a law they knew was problematic was announced by the Chief of Police at a Town Hall meeting on September 23, 2010. | Exhibit 1 to Opp to SJ; Dec. of Okonyan and Ex. 2. |

| # | Additional Material Facts Omitted by Defendants | Source |
|---|---|---|
| 68 | Desertrain confronted Officer Prince when he was writing the citations for time restriction violation and informed him that her disability license plate exempted her from the time restriction posted on the street sign. | Desertrain Depo at 90:9-90:12 |
| 69 | Officer Prince informed Desertrain that he was instructed to ticket all RVs in the area. | Desertrain Depo at 90:13-91:11 |
| 70 | Defendants knew that Taylor did not spend much time in his car since they had tried to catch him on multiple occasions. | Taylor Depo: 66;24-68:13: 69:10-70:12; 74:8-14. |

Dated: September 26, 2011          Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL

_____/s/_____
By: CAROL A. SOBEL
Attorneys for Plaintiffs