CAROL A. SOBEL   SBN 84483
429 Santa Monica Boulevard, Ste. 550
Santa Monica, CA  90401
T. 310 393-3055   F. 310 393-3605
E. carolsobel@aol.com

BARRETT S. LITT  SBN 45527
LITT, ESTUAR & KITSON LLP
1055 Wilshire Boulevard, Ste 1880
Los Angeles, CA 90017
T. 213 386-3114   F. 213 380-4585
E. blitt@littlaw.com

LEGAL AID FOUNDATION
     OF LOS ANGELES
SUSAN MILLMANN  SBN 92417
1640 5th Street,  Ste 124
Santa Monica, CA 90401
T. 310 899-6200  F. 310 899-6208
E. smillmann@lafla.org

MICHAEL S. RAPKIN   SBN 67220
SCOTT B. RAPKIN   SBN 261867
LAW OFFICE OF MICHAEL RAPKIN
233 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
T.  310 319 5465   F. 310 319 5355
E.  scottrapkin@rapkinesq.com

**IN THE UNITED STATES DISTRICT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| CHEYENNE DESERTRAIN, et al., | ) CASE NO. CV 10-09053 RGK (PJWx) |
| Plaintiffs, | ) REPLY RE MOTION FOR PARTIAL ) SUMMARY JUDGMENT/SUMMARY |
| vs. | ) ADJUDICATION |
| CITY OF LOS ANGELES, et al., | ) Date:  October 17, 2011 ) Time: 9:00 a.m. |
| Defendants. | ) Ctrm: Roybal 850 (Hon. Judge Klausner) |

Plaintiffs addressed the majority of issues raised by defendants in their opposition. Plaintiffs' arguments previously set forth in their moving papers and opposition to defendants' motion for summary judgment are not repeated below; however, they are identified and incorporated by reference. Specifically, in addition to the arguments in their moving papers, plaintiffs incorporate their opposition argument on the following issues: 1) the inapplicability of the community caretaking exception to the Fourth Amendment, particularly as it relates to the seizure of Jacobs-Elstein's vehicle at his arrest; 2) the claim that Civil Code §52.1 requires proof of "violence"; 3) immunity arguments; 4) *Monell* liability; and 5) violation of Fourth Amendment rights.

## I. PLAINTIFFS PROVIDED AMPLE NOTICE THAT THEY WERE CHALLENGING THE CONSTITUTIONALITY, BOTH ON ITS FACE AND AS APPLIED, OF LAMC §85.02

Defendants contend that they had no idea that plaintiffs intended to challenge the constitutionality of Los Angeles Municipal Code §85.02 until September 13th. Plaintiffs adequately alleged that §85.02 violates due process in their pleadings. *See* First Amended Complaint ("FAC") at ¶8. The Federal Rules of Civil Procedure rejected the "theory of the pleadings" doctrine some years ago. Schwarzer, Tashima & Wagstaffe, Rutter Group Prac. Guide: Federal Civil Procedure Before Tial, § 8.122 (TRG 2010), citing *Crull v. GEM Ins. Co.*, 58 F.23d 1386, 191 (9th Cir. 1995). "As long as the other side receives fair notice of the nature of the claim, the complaint need not allege the legal theory on which recovery is being sought." Schwarzer, Tashima & Wagstaffe at § 8:122. "[I]t is sufficient if the facts alleged support any valid claim." *Id.* Defendants had ample notice of Plaintiffs intent to challenge LAMC §85.02 on constitutional grounds, including for violating plaintiffs' due process rights.

First, it was not until August 22, 2011, in their Tenth Supplemental Response to a Request for documents, that defendants produced the two policy directives regarding how §85.02 was to be enforced by the officers. *See* Exhibit 2 to Declaration of Carol Sobel ("Sobel Dec."). No other training materials were produced by defendants in this litigation. Only then, eight days before discovery ended, and throughout the ongoing depositions of the defendants, did plaintiffs confirm the lack of standards or guidelines to limit discretion for the officers to cite/arrest for a §85.02 violation. This is significant since, when faced with a vagueness challenge to a municipal ordinance, courts are required to consider any possible limiting instructions, including any examples to demonstrate the scope of the law. The Circuit recently invalidated another of defendant City's code provisions enforced by the police in Venice. *See Hunt v. City of L.A.*, 638 F.3d 703, 711 (9th Cir. 2011) (ordinance unconstitutionally vague where "no limiting examples to illustrate when individual's sale of merchandise falls within these definitions"). So, defendants can hardly complain when they only turned over key documents a week before the end of discovery.

In each discovery response submitted as an exhibit to Ms. Shapero's declaration, plaintiffs' stated that they were targeted as "vagrants." Ex. 3, p. 9, 11, 14, 22-24, 27, 31, 33, 37, 38; Ex. 4, p. 58; Ex. 5, p. 63, 65, 69 to Declaration of Wendy Shapero in Opposition to Plaintiffs' Motion for Partial Summary Judgment/Summary Adjudication ("Shapero Dec."). That word was carefully chosen, rather than using the word "homeless," because it connotes *Papachristou v. Jacksonville*, 405 U.S. 156 (1972), invalidating a law banning persons from Jacksonville on the basis of "vagrancy." The "[v]agueness doctrine is an outgrowth ... of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). The First Amended Complaint alleged that enforcement of §85.02 violated "due process and the right to travel." (FAC ¶¶8,39).

2

Moreover, no lawyer present at the depositions of the officers would be unaware that the gist of plaintiffs' claims regarding § 85.02 were that the training and written materials officers were given to guide them in the enforcement of §85.02 lacked adequate standards and guidelines. *See e.g.,* Ex. A, pg. 23 to Plaintiff's Motion for Summary Adjudication ("Pl's MSA"). Capt. Peters was extensively questioned about what limits, if any, his "Four C's" philosophy, as set forth in the Venice Operational Plan, provided to officers. Ex. A, pg. 14-15; Ex. 3, p.8 to Pl. MSA.

It is not true that plaintiffs did not provide citations to *Morales, Kolender* and *Papachristou* until the day before dispositive motions were filed. To the contrary, at the in-person meet and confer on August 30, 2011 with Ms. Pessis, following the deposition of Jason Prince, these authorities and others were specifically provided. Sobel Dec. ¶¶ 2-6. That is why the email Ms. Shapero identifies on September 13, 2011 references a prior statement by plaintiffs' counsel. Ex. 1 to Shapero Dec.

In their opposition, defendants rely on two cases, neither of which is apt. Opp. at p.1. The first, *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1292 (9th Cir. 2000), concerned whether, in an employment case, a party must separately allege disparate impact and disparate treatment in the complaint in order to go forward on both claims at the summary judgment stage. Unlike here, where "vagueness" is a question of law, evidence for proof of disparate impact is not necessarily the same that for disparate treatment. Both are highly factual claims. So, it is no surprise that the Court found that the plaintiff could not go forward on her previously undisclosed claim.

The same is true of *McKinney v. American Airlines, Inc.*, 641 F.Supp.2d 962 (C.D. Cal. 2009), where the plaintiff raised a separate claim of a violation of the CFRA for the first time on summary judgment. Unlike *Coleman* and *McKinney*, plaintiffs here said from the outset that defendants violated their due process rights through the enforcement of §85.02. Once plaintiffs finally received defendants'

3

"policy" materials on August 22, 2011, Plaintiffs' attorney sent a letter on August 26, 2011, to Deputy City Attorney Surekha Pessis, stating that Plaintiffs intended to file a motion for summary adjudication based on the lawfulness of LAMC § 85.02. (Ex. 2 to Shapero Dec.) In sum, given the timing of Defendants' responses to Plaintiffs' discovery requests and the express allegations in Plaintiff's FAC, Plaintiffs provided Defendants with ample notice of their intent to challenge the constitutionality of LAMC § 85.02 on vagueness grounds, both on its face and as applied.

## II. DEFENDANTS HAVE PROVIDED NO BASIS TO REFUTE THE THE UNCONSTITUTIONAL VAGUENESS OF §85.02

### A. There is Not Adequate "Actual Notice" of Prohibited Conduct in §85.02.

Defendants' assertion that plaintiffs "had actual notice what LAMC 85.02 proscribed, the language of the ordinance does not require special explanation, and the police followed guidelines issued by LAPD's Pacific Division" is simply wrong. Opp at 2[1]. Plaintiffs believed that a necessary element for violating the law was that they sleep in their vehicles at night on public property. For example, Christopher Taylor believed that if he slept, showered and ate at the shelter, spent his days on the Boardwalk, and rented a storage unit for his property he was conforming his conduct

---

[1] Defendants also claim that Plaintiffs should have argued overbreadth instead of vagueness. "Overbreadth" is an exception to Article III standing and is generally limited to speech and association claims. In the First Amendment area, litigants "are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). "The overbreadth doctrine is inapposite to a case in which First Amendment protections are not implicated. *See, e.g.*, *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 798-801[ ] (1984)." *United States v. Dang*, 488 F.3d 1135, 1142 (9th Cir. 2007).

4

to the law after being warned by the police. SSF # 37.  Plaintiff Jacobs-Elstein thought he complied when he found two private property locations to sleep on at night with permission of the owners and stayed in a motel for several weeks, but because he had no place to leave his property, he was still repeatedly cited and arrested when he parked on a public street.  SSF ## 57, 62, 64, 113-115, 133.

Defendants claim that plaintiffs admitted to living in their vehicles but the evidence is otherwise.  Although they did so upon their initial contact with the officers, before they knew about §85.02, Taylor and Jacobs-Elstein expressly denied living in their vehicles in later contacts.  *See* Ex. 9, p.48 in support of plaintiffs' moving papers (Taylor arrest report); Dec. of Jacobs-Elstein, ¶¶ 4, 5.

"[T]he purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law. 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.' [Citation.] . . ." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999).  Where the law criminalizes conduct that is ordinarily innocent, the mere fact that persons are provided notice of the statutory language does not remedy an otherwise unconstitutionally vague law.  *Id.*

Plaintiffs made multiple reasonable attempts to conform their conduct to §85.02 once they received "actual notice" the law.  See e.g. SSF ## 113-115; Pl's Add'l Fact # 62.  Yet, despite their efforts, each was arrested for violating §85.02.  Plaintiffs read the ordinance and thought they understood it to mean that they could not sleep in their vehicles at night on public property.  *See e.g.,* Jacobs-Elstein Dec. at ¶4.  But, according to defendants, plaintiffs' understanding of the law was wrong.  This is further evidence of the failure of §85.02 to give "fair notice."  As the officers testified, nothing short of leaving Los Angeles or refraining from being in their lawfully parked vehicles would protect Plaintiffs from criminal liability. SSF ##13, 29, 31.

5

### B. The Memoranda Issued by Captains Hiltern and Peters Are Not Sufficient to Meet the Requirement of Standards and Guidelines

Captain Peters' deposition testimony underscores the vagueness of §85.02. The City contends that any vagueness is cured by "guidelines" distributed in a memo by Capt. Hiltern in 2008. However, defendant Peters testified that he rejected these "guidelines" because he (Peters) believes in giving officers <u>more</u> discretion. Pl. MSA: Ex. A, pp. 14-15, 18-19, 23. Moreover, none of the individual officer defendants testified that they were aware of, or followed the 2008 "guidelines." So it is too late for defendants to adopt them as authoritative and fair notice to plaintiffs.

Setting aside Peters' express disavowal of Exhibit 1, the 2008 memorandum from Capt. Hiltern similarly fails to meet due process standards. While it sets a threshold of a warning and observing someone three days in a row before issuing a citation, it still provides impermissibly broad discretion to the officers. Pl. MSA: Ex. 1, pp. 2-3. So, whether it is the 2008 memorandum issued by Capt. Hiltern or the 2010 Operational Plan issued at the direction of Capt. Peters, §85.02's inherent vagueness is left unremedied.[2]

### C. Section 85.02 Is Not Clarified By Analogy to an Anti-Camping Law

Defendants contend that §85.02 is no different than anti-camping laws upheld by the courts. But LAMC §85.02 is far different from an anti-camping ordinance. Under an anti-camping law, a homeless person can be present in a public park - read, eat, listen to the radio, with a pet, and even sleep during the day – so long as they do not sleep in the park at night, pitch a tent or erect any other structure for shelter. By

---

[2] Even if the 2008 "guidelines" were indeed still in effect in 2010 during Plaintiffs' arrests, the officers did not follow these guidelines for the arrests of Plaintiffs Cagle, Jacobs-Elstein or Taylor, which required that the officers obtain either evidence of sleeping in the vehicle overnight or of three <u>consecutive</u> days of living. There is no evidence of either here and, in fact, the officers did not feel that they needed to have such evidence. See Exhibit 1 to Plaintiffs' Exhibits. SSF # 46.

6

contrast, plaintiffs violate the law the moment they simply park legally on a public street anywhere in the City, regardless of where they sleep or take their meals if they have any unenumerated number of personal belongings in the vehicle. SSF #29, 133.[3]

While, defendants claim that a person who had a brick and mortar home and "chose" to live out of his vehicle would be cited equally to an individual who did not have a brick and mortar home, there is no evidence of that. (Def's Opp. at p. 10:1-6.) Moreover, the community meeting the City held on September 23, 2010 was entitled "Town Hall on Homelessness." Ex. 1 to Sobel Dec. At the meeting, Chief Beck specifically addressed the enforcement of 85.02 as a means to remedy the problem of homelessness in Venice. Ex. 1 to Louisa Okonyan's Declaration to Plaintiff's Opposition. So, there can be no serious dispute about the City's target here.

In sum, LAMC §85.02 "encourages arbitrary and erratic arrest and convictions," just as the "vagrancy" law invalidated in *Papachristou* "failed to give a person of ordinary intelligence fair notice that his contemplated **conduct** [was] forbidden by the statute," 405 U.S. at 162 (emphasis added).

**III. Plaintiffs' Fundamental Right to Travel is Directly Impacted By §85.02**

Defendants contend that the fundamental right to travel is not implicated in this case because Plaintiffs seek to stay indefinitely without interference by law enforcement. Opp. at 8. This argument misses the mark entirely. First, the question of whether §85.02 violates the fundamental right to travel is not dependent upon how long plaintiffs intend to remain in Los Angeles since the right to travel encompasses the right to remain. *See* Pl. Opp. at p. 10, citing, *inter alia*, *Dunn v. Blumstein*, 405 U.S. 330, 338 (1972).

---

[3] Plaintiffs were not camped on a public street in Venice. They were running errands, visiting public libraries, visiting friends, spending time in public parks, and going to work among other tasks. SSF ## 116.

7

1     Second, and significantly, defendants testified that the violation occurs as soon as the suspect parks the vehicle, regardless of the length of time the vehicle has been parked. SSF # 22, 56, 57. Third, if, as defendants contend, the language of §85.02 is clear and unambiguous, by its plain terms, §85.02 makes it unlawful, even momentarily, to "park" or "stand" a vehicle on public property anywhere in the City at any time, foer any reason, if a person is suspected of "living" in his vehicle. So, in sum, it prevents someone doing anything other than driving through, without stopping for any reason, in the second largest city in the nation - the largest by land mass - if a person "lives" out of his vehicle, as that requisite is defined by defendants. For a violation of §85.02 to occur, there is no requirement that the individual "live" out of his car in the City of Los Angeles. A person who "lives" in another City that has no similar ban, as does Warivonchik, is still at risk of arrest if that individual drives to Los Angeles to visit friends, shop, go to the movies, or work. At the time that Warivonchik was stopped and warned of arrest for §85.02, she was on her way to sell her hand-crafted ceramics at a fair in Westchester, which is part of the City of Los Angeles. Ex. 3 to Sobel Dec. When she parked at her friends house to pick up display tables and when she parked in Westchester, she violated §85.02, even though she sleeps lawfully at night in Santa Monica.

    LAMC 85.02 directly infringes upon the fundamental right to travel because it prohibits plaintiffs and others from stopping in the City of Los Angeles if they have any personal property in their vehicle. *Tobe v. Santa Ana* and *Joyce v. City of San Francisco* are easily distinguishable from a law that prohibits parking a vehicle in the City of Los Angeles at any time for any purpose as long as the vehicle is used as "living quarters." See Pl's Opp. To Def's MSJ at pp. 10,11,14.

    Because plaintiffs have a protected right to travel, defendants are incorrect in asserting that the equal protection analysis here is limited to a rational basis test. Under Fourteenth Amendment analysis, a law is subject to strict scrutiny if it

8

disadvantages a "suspect class" or impinges on a "fundamental right." *Nunez v. City of San Diego*, 114 F.3d 935, 944 (1997). A law prohibiting parking or standing a vehicle on public streets at any time, for any length of time, simply because a person is suspected of 'living" out of their vehicle violates the right to travel.

The government's interests in health, safety, aesthetics, and sanitation cannot justify so sweeping and vague a law as LAMC §85.02. Def's Opp. at p.9. The cases defendants cite in their Opposition involve prohibitions far less restrictive than the language of §85.02. For example, *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 295 (1984), upheld a ban on nighttime sleeping in a park while affirming the right of homeless activists to remain in the park, with their tents, as expressive activity so long as they did not sleep. The Supreme Court found the law was an appropriate time, place and manner limitation and noted that the ban did not extend to sleeping in all parks.

Nothing defendants offer satisfies strict scrutiny. Section 85.02 is a total ban on parking or standing a vehicle on public property for a homeless individual, regardless of where he "lives" at night. It is not narrowly tailored to promote a compelling governmental interest with sufficient nexus between the stated government interest and the restrictions created by the law. *Nunez*, 114 F.3d at 94. Even the lower rational basis test cannot be met here. See e.g., SSF ## 20, 36, 44. Although defendants have talked about a spike in crime targeted by the Venice Task Force, no defendant has offered any evidence that the crime related to plaintiffs or other individuals suspected of living in their vehicles at some time of day. Admittedly, some of plaintiffs' vehicles are untidy inside, but this does not establish a rational relationship between §85.02 and the issues of health, aesthetics or sanitation since housed persons in the same neighborhood can maintain their vehicles in total disarray, with pet food and detritus, with impunity.

9

## IV. CONCLUSION

For all of the reasons set forth in plaintiffs' moving papers, opposition and reply, the court should grant partial summary judgment and/or summary adjudication.

Dated: October 3, 2011

Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL

/s/

By: CAROL A. SOBEL
Attorneys for Plaintiffs