**Exhibit 2**

1  **CARMEN A. TRUTANICH**, City Attorney - **SBN 86629x**
   **GARY G. GEUSS**, Chief Assistant City Attorney
2  **CORY M. BRENTE**, Assistant City Attorney
   **SUREKHA A. PESSIS**, Deputy City Attorney - **SBN 193206**
3  Email: Surekha.Pessis@lacity.org
   200 North Main Street
4  6th Floor, City Hall East
   Los Angeles, CA 90012
5  Phone No.: (213) 978-7036, Fax No.: (213) 978-8785

6  *Attorneys for Defendants,* **CITY OF LOS ANGELES, JON PETERS, RANDY YOSHIOKA, JASON PRINCE, BRIANNA GONZALES,** and **RAUL BARRON**
7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11 | CHEYENNE DESERTRAIN, STEVE | CASE NO.: CV10-09053 RJK (PJWx)
   | JACOBS-ELSTEIN, BRADFORD |
12 | ECKHART, PATRICIA | *Hon. R. Gary Klausner, Ctrm. 850, Roybal*
   | WARIVONCHIK, LEROY BUTLER, | *Mag. Patrick J. Walsh, Ctrm. 23*
13 | WILLIAM CAGLE, TERRY |
   | HENDRICKSON, |
14 |                                    | **DEFENDANT CITY OF LOS**
   |                                    | **ANGELES' TENTH SUPPLEMENTAL**
15 |        *Plaintiffs,*               | **RESPONSE AND OBJECTION TO**
   |                                    | **PLAINTIFF CHEYENNE**
16 |        v.                          | **DESERTRAIN'S DEMAND FOR**
   |                                    | **INSPECTION AND PRODUCTION**
17 | CITY OF LOS ANGELES, a municipal  | **OF DOCUMENTS**
   | entity, DOES 1-10, as individuals, |
18 |                                    | **(REQUEST NO. 1)**
19 |        *Defendants*.               | **(SET ONE)**
20
21

22 **PROPOUNDING PARTY:**     **Plaintiff, CHEYENNE DESERTRAIN**

23 **RESPONDING PARTY:**      **Defendant, CITY OF LOS ANGELES**

24 **SET NUMBER:**            **ONE**

25        Pursuant to Rule 34 of the *Federal Rules of Civil Procedure*, Defendant CITY OF

26 LOS ANGELES (hereinafter "Defendant" or "Responding Party") hereby supplements

27 its response to Plaintiff's Request for Production of Documents, Set One, **(Request**

28 **No. 1)** as follows:

                                      1

Exhibit 2 – Page 1

# I.

## PRELIMINARY STATEMENT:

These responses are made solely for the purpose of this action. Defendant has not completed its investigation of the facts or discovery in this action. The following responses are based upon a diligent investigation by Defendant and upon such information available as of the date on which these responses are made. These responses are made without prejudice to Defendants' rights to conduct further investigation and discovery and to offer at trial subsequently discovered evidence. The documents and/or other tangible things produced are produced subject to Defendants' right to conduct further investigation and discovery and to offer at trial subsequently discovered evidence. Defendant make no incident or implied admissions regarding the contents of any document referred to in these responses.

In addition, all pictures cost $2.00 per picture, all cd-roms cost $5.00 per cd-rom, all audio tapes cost $8.00 per tape, all communications tapes cost $24.00 per tape, and all video tapes cost $24.00 per video tape. Any such items will only be produced if non-privileged and upon payment of the appropriate fees to the appropriate person or entity.

This preliminary statement is incorporated into each of the responses set forth below:

# II.

## DOCUMENT REQUEST AND SUPPLEMENTAL RESPONSE

## REQUEST NO. 1:

1. Any and all DOCUMENTS regarding the INCIDENT(S) described in the Complaint and any investigation and/or follow-up to the INCIDENT(S), including but not limited to:

///

2

**Exhibit 2 – Page 2**

1      (a)    police reports, incident reports, accident reports, investigation reports,
2 administrative reports, and all other reports;

3      (b)    all documentation concerning statements of and/or interviews with
4 witnesses, informants, law enforcement officers, and any party to this case, whether
5 written, transcribed, recorded, or in any other format (if statements or interviews exist
6 in more than one format, i.e. transcribed and tape recorded, produce them in each
7 format);

8      (c)    all documentation concerning witnesses to the Incidents, including lists of
9 witnesses and notes of witness interviews and/or contacts, preliminary and otherwise;

10      (d)    all dispatch, 911, and any other radio tapes, mobile data transmissions,
11 telephone tapes and/or transmissions (if this information exists in more than one
12 format, i.e. transcribed and tape recorded, produce it in each format), all want and
13 warrant checks for any of the plaintiffs conducted as part of the INCIDENT(S), and all
14 documentation relating to such tapes/transmissions, including CAD notes/reports;

15      (e)    all photographs, video tapes, audio tapes, drawings, sketches, and all
16 other recordings and/or depictions of the Incidents;

17      (f)    all logs, daily activity sheets, dispatch information, notes, memoranda,
18 e-mails, computer records, correspondence, and all other DOCUMENTATION
19 compiled and/or kept in any format regarding the Incidents;

20      (g)    complete documentation of any and all investigation and/or review of the
21 INCIDENT(S) by or for the Los Angeles Police Department, by or for "Internal
22 Affairs" or similar entity. (By "complete documentation," this requests includes ALL
23 documentation of any such investigation(s) and/or review(s), from start to finish,
24 including but not limited to all records of investigation and/or fact finding, all records
25 of review and/or analysis, all records of any meetings or communications related
26 thereto, all records of any recommendations, all records of any disposition and/or
27 conclusion, all records of any discipline or changes in policy or training, all records of
28 any administrative review body, and all other records).

3

**Exhibit 2 – Page 3**

1 | **RESPONSE TO REQUEST NO. 1:**

2 |      Defendant objects to this request on the grounds that it is compound, vague,

3 | ambiguous, calls for speculation, unintelligible, overly broad and unduly burdensome.

4 | Moreover, the request seeks information which is irrelevant and unlikely to lead to the

5 | discovery of admissible evidence. Furthermore, Defendant objects to this request on

6 | the grounds of the Attorney-Client Privilege; Attorney Work Product Privilege; Fifth

7 | Amendment Right Against Self-Incrimination; Deliberative Process Privilege, and

8 | Right to Privacy.

9 |      Defendant also objects pursuant to the following: Federal Rule of Civil

10 | Procedure 34(b); Self-Critical Analysis, as set forth in *Dowling v. American Hawaii*

11 | *Cruises, Inc.*, 971 F.2d 423 (9th Cir. 1992); Official Information Privilege, as set

12 | recognized in *Kerr v. United States District Court*, 511 F.2d 192 (9th Cir. 1975)

13 | (recognizing a qualified privilege for Official Information and the need for an in

14 | camera review), aff. 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Sanchez v.*

15 | *City of Santa Ana,* 936 F.2d 1027, 1033 (9th Cir. 1991); *Soto v. City of Concord,* 162

16 | F.R.D. 603, 613 (N.D. Cal. 1995); *Martinez v. Stockton,* 132 F.R.D. 677 (E.D. Cal.

17 | 1990); *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987). Moreover, the

18 | principles of Federal Common Law apply and guide questions of evidentiary privilege

19 | that arise in the litigation of federal rights. *United States v. Zolin*, 491 U.S. 554, 562,

20 | 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989) and Federal Rule of Evidence 501.

21 | Specifically, federal common law applies to cases involving allegations of an

22 | individual's federal civil rights. *Miller v. Pancucci*, 141 F.R.D. 292, 297-298 (C.D.

23 | Cal. 1992). Further, this request is unduly burdensome as the related Internal Affairs

24 | investigation is ongoing.

25 |      However, without waiving said objections, Defendant has attached as Exhibit

26 | "A" copies of the following documents:

27 |      (1)    Field Interview Cards-Steve Jacobs-Elstein (3);

28 |      (2)    Field Interview Card-Patricia Warivochik;

4

**Exhibit 2 – Page 4**

1        (3)   Field Interview Card-William Cagle;

2        (4)  . Field Interview Cards -Terry Hendrickson (2);

3        (5)   Redacted Daily Field Activities Report for Officers Yoshioka and Murray

4 for January 30, 2011 (relating Plaintiff Jacobs-Elstein);

5        (6)   Redacted Daily Field Activities Report for Officers Gonzales and

6 McInnis for October 31, 2010 (relating to Plaintiff Jacobs-Elstein);

7        (7)   Redacted Daily Field Activities Report for Officers Yoshioka and Murray

8 for November 13, 2010 (relating to Plaintiff Warinvonchik);

9        (8)   Redacted Daily Field Activities Report for Officers Gonzales, McInnis

10 and Mendoza for September 13, 2010 (relating to Plaintiff Elstein and citation no.

11 10127);

12        (9)   Redacted Daily Field Activity Report of Officers J. Prince and S. Murray

13 for November 3, 2010 (relating to Plaintiff William Cagle);

14        (10)  Notice to Appear #B106413 (Plaintiff Leroy C. Butlert);

15        (11)  Arrest Report, DR#10-14-24790 and related Vehicle Report, Probable

16 Cause Determination/Declaration; City Attorney Disclosure Statement; Booking

17 Approval and Receipt (Plaintiff Steve Jacobs Elstein);

18        (12)  Vehicle Report, DR#10-14-27615 (Plaintiff Terry Lynn Hendrickson),

19 attached narrative, DMV registration information and redacted Parking Enforcement

20 72-hour chalking sheet;

21        (13)  Vehicle Impound Report, DR#10-14-26404 (Plaintiff William Cagle),

22 attached narrative form (blank), attached continuation sheet;

23        (14)  Notice to Appear No. 93969 (Plaintiff William Cagle) and attached

24 continuation sheets.

25        The City is also in possession of a DVD of the Venice Town Hall meeting.  A

26 duplicate of the DVD will be produced following receipt of a check in the amount of

27 $10.00 made payable to Los Angeles Police Department. Further, the City is now in

28 possession of 190 pages of documents which were recently produced by Plaintiffs

5

Exhibit 2 – Page 5

1  Desertrain, Cagle, Warivonckik; Hendrickson and Butler.  Since these documents
2  were produced by Plaintiff, they will not be produced by the City.

3       Also, Plaintiff is referred to the attached Declaration of LAPD Detective III
4  Efrain Baeza and Privilege Log with respect to the documents to which the City is
5  claiming a privilege.

6

7  **SUPPLEMENTAL  RESPONSE TO REQUEST NO. 1:**

8       Without waiving its previously asserted objections, Defendant City hereby
9  produces the following:

10     (1)    Citation No. 1094113764, dated January 2, 2011 which pertain to
11           Plaintiff Garcia;

12     (2)    Daily Field Activities Report for Officers Mendoza, McInnis and
13           Gonzales for September 13, 2010 regarding Plaintiff Jacobs-Elstein;

14     (3)    Reference information for the citizens and officers from Pacific Division;

15     (4)    Email from Captain Brenda Crump dated 10/13/10, and attached
16           Operations Plan for the Oakwood/Venice Task Force (September 2010);

17     (5)    (2) page log of RV license plate numbers.

18

19 DATED: August 22, 2011       **CARMEN A. TRUTANICH**, City Attorney
                             **GARY G. GEUSS**, Chief Assistant City Attorney
20                              **CORY M. BRENTE**, Assistant City Attorney

21

22                          By                    
                             **SUREKHA A. PESSIS**, Deputy City Attorney
23                          *Attorneys for Defendants,* **CITY OF LOS ANGELES,**
                             **JON PETERS, RANDY YOSHIOKA, JASON**
24                          **PRINCE, BRIANNA GONZALES**, and **RAUL**
                             **BARRON**

25

26

27

28

**Exhibit 2 – Page 6**

**NCR**

# PARKING VIOLATION

DT 5001 / 06-10

## City of Los Angeles

**1094113764**

| Month | Day | Year | Time | Meter Number | PPD# |
|---|---|---|---|---|---|
| 0 1 | 0 2 | 1 1 | 1500 | | |

**VEHICLE LICENSE NUMBER**

| 4 | | 2 | 0 | V | D | P | |

VIN: 5 7 i 5

| LICENSE | STATE | LIC YEAR | MONTH | | BODY TYPE | | |
|---|---|---|---|---|---|---|---|
| CA | Other | 1 1 | 0 8 | PASS | TRUCK | MOTOR CYCLE | Other |

| VEHICLE MAKE (CIRCLE) | | | | | | OTHER | COLOR |
|---|---|---|---|---|---|---|---|
| CHEV A | BUICK B | CADI C | PLYM D | VOLK E | TOYT F | | WHT/ |
| FORD G | OLDS H | PONT I | DODG J | HOND K | NISS L | | TAN STRIPE |

**BEAT NO.** 14223

**LOCATION**
VENICE BLVD / GLOBE ST

| OFFICER | SERIAL NO. | ISSUING AGENCY |
|---|---|---|
| BARRON | 36530 | LAPD |

**SQUAD NO.**

**NOTES**
PARKED OVER 72 HOURS
ON STREET

**SUPERVISOR NO.**

| VIOLATION | | | VIOLATION | | |
|---|---|---|---|---|---|
| 1 | 88.13B M.C. Meter Violation | $55 | 10 | 80.56 M.C. | (E1) White $50 (E2) Yellow $50 (E3) Green $50 |
| 2 | 80.69C M.C. In excess of Posted ___ hr. limit | $50 | 11 | 80.61 M.C. Alley | $60 |
| 3 | 80.69A M.C. No Stopping | $85 | 12 | 22500i CVC Bus Zone | $285 |
| 4 | 80.69A M.C. No Stopping A.M. | $85 | 13 | 22500 F CVC On Sidewalk | $60 |
| 5 | 80.69A M.C. No Stopping P.M. | $85 | 14 | 22507.8 CVC Handicapped Space A $350 B $350 C(1) $350 C(2) $350 | |
| 6 | 80.69B M.C. No Parking | $65 | | | |
| 7 | 80.69B M.C. No Parking, Street Cleaning | $65 | 15 | 22514 CVC Fire Hydrants | $60 |
| 8 | 80.58L M.C. Pref. Parking Permit | $60 | 35 | 80.70 MC Anti Gridlock | $155 |
| 9 | 80.56E (4) M.C. Red Zone | $85 | 16 | Other 20.73.2 $ 50 cc Amount may increase if not first violation. | |

Mail check or money order made payable to the CITY OF LOS ANGELES in THIS envelope. Write the citation number on the check. You have 21 days to pay or contest this citation. If you fail to pay or contest timely, the parking penalty will increase.

SEE REVERSE SIDE FOR IMPORTANT INSTRUCTIONS.
— PAYMENT MUST BE IN U.S. FUNDS —

DO NOT SEND CASH OR
NON U.S. BANK PAYMENTS

TO SEAL REMOVE TAPE
UNDER FLAP

**Exhibit 2 – Page 7**

# LOS ANGELES POLICE DEPARTMENT
## DAILY FIELD ACTIVITIES REPORT

Page ___ of ___

**7. NAME, BOOKING #, CITATION #, OR RFC #:** ELSTEIN

**8. SUPERVISOR AT SCENE:** LT KEARNY

**9. FIELD SUPERVISOR**

**5. TYPE OF ACTIVITY:**
- ROLL CALL
- DIRECTED PATROL
- FARL—(1) MISD ARREST FOR 85.02 LAMC

**4. LOCATION OF ALL ACTIVITIES:** PAC STA
- 7TH / BROADWAY

**3. INCIDENT #, SOURCE AND CODE:** 1363 / OFCR

**2. TIME OF DAY:** R 0630 / C 0700 ; R 1015 / C 1040

**ASSIGNED ACTIVITY:** 30 ; 25

**24. OFFICER'S LAST NAME—INITIALS (PRINT):**
- MENDOZA, M — Serial # 38144
- MCINNIS, K — Serial # 38337

**27. MOV:** 0620 1830
**28. NMOV:** 0620 1830

**31. AREA:** PAC
**32. ASSIGNMENT:** 14325
**33. WATCH:** 2
**38. DAY OF WEEK:** MONDAY
**39. DATE:** SEPT 13 2010

10. DR #: 0127

Exhibit 2 – Page 8

Exhibit 2 – Page 9

# FIVE POINTS OF CONTACT

Pacific's geographical territory is divided into eight separate "basic car" areas, each managed by a Senior Lead Officer (SLO). Although the SLO is your primary point of contact, there are four additional points of contact to assist you in resolving your crime or quality of life concerns. Your Five Points of Contact are listed below:

| FIVE POINTS OF CONTACT | | | | |
|---|---|---|---|---|
| 1.  SENIOR LEAD OFFICERS (310) 202-4515 | CAR | | 1.  SENIOR LEAD OFFICERS (310) 202-4515 | |
| PEGGY THUSING #25120 (310) 622-3968 Cell Phone Email: 25120@LAPD.LACITY.ORG | A-11 | A-25 | THOMAS WICKS #26522 (310) 622-3973 Cell Phone Email: 26522@LAPD.LACITY.ORG | |
| THERESA SKINNER #31142 (310) 622-3970 Cell Phone Email: 31142@LAPD.LACITY.ORG | A-13 | A-27 | JUAN CEJA, #32929 (310) 622-3975 Cell Phone Email: 32929@LAPD.LACITY.ORG | |
| HEIDI LLANES #26837 (310) 622-3971 Cell Phone Email: 26837@LAPD.LACITY.ORG | A-45 | A-67 | RUBEN GARCIA #33236 (310) 622-3976 Cell Phone Email: 33236@LAPD.LACITY.ORG | |
| DRAKE MADISON #33997 (310) 622-3972 Cell Phone Email: 33997@LAPD.LACITY.ORG | A-49 | A-73 | ANTHONY RAMOS #27443 (310) 622-3978 Cell Phone Email: 27443@LAPD.LACITY.ORG | |
| 2.  SENIOR LEAD OFFICER / COMMUNITY RELATIONS SUPERVISOR | | | | |
| SERGEANT JEFFREY MERLO, #25811 (310) 202-4524 Email: 25811@LAPD.LACITY.ORG | | | | |
| 3.  WATCH COMMANDERS (310) 482-6334 | | | | |
| DAY WATCH | LIEUTENANT MARK DAY #25541 Email: 25541@LAPD.LACITY.ORG | | | |
| | SERGEANT DARRYL MARTIN #27416 (AWC) Email: 27416@LAPD.LACITY.ORG | | | |
| PM WATCH | LIEUTENANT PAOLA KREEFFT #26141 Email: 26141@LAPD.LACITY.ORG | | | |
| | SERGEANT RICHARD PARKS #26501 (AWC) Email: 26501@LAPD.LACITY.ORG | | | |
| 4.  COMMANDING OFFICER PACIFIC PATROL | | | | |
| CAPTAIN JAMES WEST (310) 482-6310 | | | | |
| 5.  COMMANDING OFFICER PACIFIC AREA | | | | |
| CAPTAIN JON F. PETERS (310) 482-6310 | | | | |

UPDATED 1/5/10

**Exhibit 2 – Page 10**



*A note from the desk of . . .*

COMMANDING OFFICER
PACIFIC AREA

August 27, 2008

ATTENTION:  ALL PATROL PERSONNEL

RE:  ILLEGAL VEHICLE LODGING

The Day Watch Commander shall deploy a Watch 2 unit each day from 0630 to 0700 to address 85.02 LAMC Illegal Lodging and 22651 K VC vehicle parked over 72 hours in RD 1425 and 1435. Officers shall door knock all vehicles suspected of harboring persons engaged in illegal lodging and upon making contact with person or persons lodging in a vehicle shall:

- Warn them that it is illegal to lodge in a vehicle per 85.02 LAMC (use the same language as the ordinance contains verbatim when warning)
- Provide them with a 85.02 warning notice
- Provide them with a list of shelters and other city services they can avail themselves of
- If no one answers, a 85.02 warning notice shall be left
- Officers shall properly mark the vehicle tires and enforce 22651 K VC.
- Officers shall enter any action they take into the Vehicle Log in the Watch Commanders Office
- The Watch Commander shall maintain the log and review it daily
- After a person has been warned for three or more continuous days, they shall be physically arrested for 85.02 LAMC. **NOTE:** The warnings must include at least one verbal warning.

LAMC 85.02 - Living in a Car Parked on a Public Street or Public Lot

Required Elements for arrest:

- Defendant was using a vehicle as living quarters
- Defendant's use of the vehicle as living quarters extended from day to day or overnight; and,
- The vehicle was parked on:
  - (a)   A city street
  - (b)   A parking lot that was both owned by the City of Los Angeles and under the control of the City of Los Angeles; or
  - (c)   A parking lot owned by the City of Los Angeles and under the control of the Los Angeles County Department of Beaches and Harbors.

1        **Exhibit 2 – Page 11**

*Required Elements* -- Subject to the specific limitations set forth below, cases will be filed where there is evidence sufficient to convince a jury beyond a reasonable doubt that:

1) Defendant was using a vehicle as living quarters;
2) Defendant's use of the vehicle as living quarters extended from day to day or overnight; and,
3) The vehicle was parked on:
   (a) a City street;
   (b) a parking lot that was *both* owned by and the City of Los Angeles *and* under the control of the City of Los Angeles; or
   (c) a parking lot owned by the City of Los Angeles and under the control of the Los Angeles County Department of Beaches and Harbors.

*Report Requirements* --

(a) The police report must reflect civilian complaints, whether from individual residents, business owners, or community groups, regarding the use of vehicles as living quarters in the area of enforcement. The date, time, and source of the complaints must be indicated, and the substance of the complaints must be described in detail.

(b) The police report must reflect that after receiving the civilian complaints, officers warned a defendant within the area of enforcement that using a vehicle as living quarters when parked at one of the specified locations was illegal -- the date, time, substance of the warning, and substance of the defendant's response, if any, must be included in the report. To negate any possible necessity defense (see In re Eichorn, 69 Cal. App. 4th 382 (4th Dist. 1998)), the warning should include advisals regarding legal alternatives for those who are truly homeless -- for example, advisals regarding legal sites at which the vehicle could be parked and lived in and advisals regarding homeless shelters with available space. In addition, the police report should include any observations (for example, the presence of a functioning satellite TV system or observations of the defendant making purchases at local stores) that suggest a level of wealth inconsistent with someone who has no alternative but to live on the street.

(c) The police report must describe in detail observations (whether by officers or by identified civilian witnesses who will be available to testify at trial) of the defendant's occupancy of the vehicle after the warning described above that establish one of the following -- (i) overnight occupancy for more than one night or (ii) day-by-day occupancy for three or more days. The dates and times of witness observations must be indicated. The witnesses must be able to articulate specific observations sufficient to support an inference that the defendant either remained in the vehicle overnight (for example, observations of the defendant actually asleep in the car at night or observations of the defendant occupying the car late at night and then still occupying the car at or near sunrise the following morning) or was in the vehicle on a continuous daily basis (for example, observations establishing that the defendant remained in the vehicle for

26

**Exhibit 2 -- Page 12**

lengthy periods of time during consecutive days, and, if available, observations of defendant during those times engaging in activities that one would ordinarily engage in at one's residence such as reading, watching television, eating, etc.).

(d) The police report must reflect that the officers observed items in the vehicle sufficient to establish that the defendant was actually living there (as opposed, for example, to simply storing personal goods in the vehicle). Examples: significant amounts of clothing and shoes; significant amounts of personal effects such as books, bills, and correspondence; personal hygiene products in a clear state of use, such as opened cans of shaving cream; half-empty packages of razor blades, unwrapped bars of soap, crumpled towels, open bottles of medication; a TV antenna or other indications (audible volume) of TV usage in the vehicle; pets and pet feeding stations.

*Note*: In Vehicular Residents Assoc. v. Arthur Agnos, 222 Cal. App. 3d 996 (1990), a San Francisco municipal statute barring individuals from the "use or occupancy of any house car, camper or trailer coach for human habitation, including but not limited to sleeping . . . on any street, park, beach, square, avenue, alley or public way, within the City and County of San Francisco between the hours of 10:00 pm and 6:00 am," was upheld against an equal protection claim that it discriminated against the poor who could not afford houses and had to live in their vehicles -- while recognizing that the statute "possibly affects more poor than nonpoor persons" the court noted that "the actual class of persons affected is diverse and amorphous" because "it is common knowledge that many persons inhabiting motor homes are economically advantaged and use their vehicles for recreational purposes rather than out of economic necessity." In People v. Davenport, 176 Cal. App. 3d Supp. 10 (App. Dept. Santa Barbara Sup. Ct. 1985), the court rejected constitutional challenges to a Santa Barbara municipal ordinance that barred sleeping in "any public street" or "any public parking lot." While suggesting that the city's interest in crime prevention would not support the ordinance, the court found it supported by the city's interest "in protecting the sleeping transient as victim rather than as culprit": "the City acts reasonably in lessening the risks to transients from other transients by restricting the areas where overnight sleeping, and thus vulnerability, can legitimately take place." Id. at 11-12. This and similar interests should be cited if enforcement of the statute is challenged.

27

**Exhibit 2 – Page 13**

# Penal Code Section 647(e)

## Illegal Lodging

1. Every person who lodges
2. In any building, structure, vehicle or place
3. Whether private or public
4. Without the permission of the owner or agent

## PHOTOGRAPHS REQUIRED!

If there is a big encampment must show in the photograph the individual's items.

Exhibit 2 – Page 14



# St. Joseph Center

*204 Hampton Drive, Venice 90291     www.stjosephctr.org*

Since 1976, St. Joseph Center has been "Planting Hope, Growing Lives" for low-income and homeless individuals and families. The Center is a 501(c)(3) nonprofit community organization that assists people without regard for religious affiliation or lack thereof through comprehensive case management and integrated social service programs. Enjoying broad-based community support and a sponsored relationship with its founders, the Sisters of St. Joseph of Carondelet, the Center endeavors daily to fulfill its mission to *provide working poor families, as well as homeless men, women, and children of all ages, with the inner resources and tools to become productive, stable and self-supporting members of the community.* St. Joseph Center serves approximately 6,000 individuals annually.

## *Brief Description of Principal Activities*

Services are carried out at seven sites on the Westside of Los Angeles. St. Joseph Center organizes its programs into three Continuums, designed to provide clients concentrated and coordinated access to programs, according to the nature of their needs:

I. <u>Family Services</u>
   a. **Family Center and Food Pantry** serves working poor families with case management, groceries, emergency services, housing assistance, educational workshops, recreational activities, and after-school and mentoring activities for youth ages 6-17.
   b. **Infant Toddler Development Center** cares for homeless and low-income children ages 0-3, providing fun and meaningful activities aimed at developing emotional, physical, academic, and social skills; parenting classes and case management are provided to their parents
   c. **Early Learning Center** provides free bilingual childcare for homeless and low-income toddler and pre-school children along with parenting classes and case management for their parents.
   d. **Culinary Training Program** trains unemployed adults in food service and life skills.

II. <u>Homeless Services</u>
   a. **Homeless Service Center** connects homeless people to emergency services, such as shelter placement, showers, laundry, and mailboxes, in addition to providing long-term case management.
   b. **Affordable Housing Program** assists family units in securing and maintaining transitional or permanent housing.
   c. **Bread and Roses Café** serves hot meals in a welcoming atmosphere of dignity.
   d. **Senior Services** provides case management services to homeless and at-risk housed older adults, with emphasis on housing placement and eviction-prevention services

III. <u>Money Management Services</u>
   a. **Monetary Advisory Program** provides homeless or at-risk mentally ill adults with case management, money management and help finding and maintaining housing.
   b. **Veterans Representative Payee Program** provides homeless or at-risk veterans with case management, money management, and housing assistance.

In addition, St. Joseph Center maintains a Thrift Store, which offers used items for sale at affordable prices. The thrift store is open to the public, and some donations to the store are used to provide Center clients with free clothing and household items.

Rev. 12/23/09

**Exhibit 2 – Page 15**



COMMUNITY ALERT

PACIFIC AREA
LOS ANGELES POLICE DEPARTMENT
OFFICIAL PUBLICATION OF THE PACIFIC AREA CRIME ANALYSIS DETAIL

WARNING OF ENFORCEMENT ACTION

SEC. 85.02.   USE OF STREETS AND PUBLIC PARKING LOTS FOR HABITATION.

No person shall use a vehicle parked or standing upon any city street, or upon any parking lot owned by the City of Los Angeles and under the control of the City of Los Angeles or under control of the Los Angeles County Department of Beaches and Harbors as living quarters either overnight, day by day, or otherwise.  (Title and Section Amended by Ord. No. 158,219 EFF. 9/19/83.)

Should you have any questions, please contact the Pacific Area Watch Commander at 310-482-6334.

**Exhibit 2 – Page 16**

B

## CONTINUATION SHEET

Los Angeles Police Department

| PAGE NO. 2 | TYPE OF REPORT | RFC | | | | BOOKING NO. | | DR NO. | |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | QU AN | ARTICLE | SERIAL NO | BRAND | MODEL NO. | MISC DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | | | DOLLAR VALUE |

Deft: ~~████████~~ Dob: ~~████~~ Chg: 85.02 LAMC

### Source of Activity:

On February 12, 2009 at approx 1720 hrs, I Ofcr ~~████████~~ was working in full uniform in a marked black and white police vehicle, assigned 14SL13.

I have received numerous complaints from the residence in the area of the Windward Ave circle about the amount of people lodging in their motor homes and vans in front of and around their homes. The residence had emailed me to advise me that there was a beige South wind motor home parked on Windward Ave and Main Street. They advised me that they see "Dr. John" coming and going from it all day. That he lives in the vehicle and that he has all of his personnel belongings (chairs, table and a rug along with other misc items) sitting outside the door on the sidewalk.

I know "~~████~~" as ~~██████~~. I know him by name and by face. I have advised him on several occasions, warning him about the illegal lodging law, both in a public or private place (647(I) PC) and in a vehicle (85.02 LAMC).

### Investigation:

On today's date I responded to the location of Windward Ave and Main Street. Upon arrival I observed chairs, crates, carpet, table on the sidewalk outside of a beige Southwind Motor home, Ca license ~~████████~~. I observed the side door to the motor home open. I called "~~████~~ out by name and ~~████~~ ~~████~~ came to the door. I advised him that I was responding to a complaint of him lodging in his vehicle. During my investigation I observed inside the vehicle dishes in the sink, a robe hung in the hall, food and water supplies on the counter. The front part of the motor home appeared to be set up like a living room, set up like a sitting area. The kitchen area had dishes in the sink, dishes on the counter, food and water present. The back appeared to be set up like a bedroom with two made beds and a small night stand between them. There were pillows and blankets on both of the beds; there was clothing in the closet. Based on this information, I determined that suspect was lodging in his vehicle. I reminded suspect that he had been warned on several occasion about lodging in a vehicle and on the street.

Several photos were taken and retained by investigating officer.

### Arrest:

Deft was placed under arrest for 85.02 LAMC – lodging in a vehicle on a public street. He was released from custody on RFC ~~████~~, with a court appearance date of April 1, 2009.

While I was completing the citation I observed a "for sale" sign in the front window. I asked deft why he was selling his motor home. Deft spontaneously stated that the motor home wasn't his that he was just living in it until he sells it, then he gets a cut of the commission.

**Exhibit 2 – Page 17**

OFFICE OF THE CHIEF OF POLICE

June 7, 2007

SPECIAL ORDER NO. 17

SUBJECT: IMPOUNDING VEHICLES FOR VIOLATION OF CALIFORNIA VEHICLE CODE SECTION 22651(k), VEHICLE PARKED OR LEFT STANDING UPON A HIGHWAY FOR 72-HOURS OR MORE; AND WARNING OF PARKING VIOLATION, FORM 04.10.00 - REVISED

PURPOSE: A recent court decision has mandated that the City revise Los Angeles Municipal Code (LAMC) Section 80.73.2, to make the Municipal Use of Street for Storage of Vehicles, to make the Municipal Code Section consistent with the California Vehicle Code. This Order establishes procedures consistent with the revision and subsequently revises the Warning of Parking Violation, Form 04.10.00.

PROCEDURE:

I.   PRE-IMPOUND INVESTIGATION.  Generally, all requests for the removal of abandoned vehicles should be forwarded to the Department of Transportation.  However, should officers choose to take enforcement action, they shall:

* Mark the vehicle's tires with chalk;
* Mark the pavement around the vehicle's tires with chalk;
* Indicate the location of the valve stems of the tires as they relate to a clock face, (i.e., left front tire valve at 2 O'clock, right rear tire valve at 6 O'clock); and,
* Ensure this information is later documented in the narrative section of the Vehicle Impound Report CHP 180 Form.

Note: Pre-impound hearings are no longer required.

II.  IMPOUNDING VEHICLES PURSUANT TO LAMC SECTION 80.73.2 AS AUTHORIZED BY VEHICLE CODE SECTION 22561(k) OF THE CALIFORNIA VEHICLE CODE.  If a vehicle remains parked in the same location and the chalk marks remain unchanged for 72 consecutive hours or longer, officers who choose to impound the vehicle shall:

* Issue the vehicle a parking citation for violation of LAMC Section 80.73.2;
* Impound the vehicle as authorized by 22651(k) of the California Vehicle Code;

**Exhibit 2 – Page 18**

SPECIAL ORDER NO. 17               — 2 —                    June 7, 2007

* Record the information detailing the location of the chalk marks and tire valve stems (mentioned above) in the narrative portion of the Vehicle Impound Report;
* Record the date and time the vehicle's tires were originally marked with chalk along with the date and time the tire valve stem positions were originally observed, in the narrative section of the Vehicle Impound Report.

Note: If the officer citing and impounding the vehicle is different from the officer that originally observed and marked the tires of the vehicle, the impounding officer shall include the name and serial number of the officer making the initial observations in the narrative of the impound report.

FORMS AVAILABILITY:  The revised Warning of Parking Violation, Form 04.10.00, will be available for ordering from the Distribution Center, Department of General Services, in about 90 days.  Department Personnel shall continue to use the Warning of Parking Violation until the revised form is available.

AMENDMENTS:  This Order adds Department Manual Section 4/222.19, and revises Department Manual Section 4/222.35.

AUDIT RESPONSIBILITY:  Bureau commanding officers shall monitor compliance with this directive in accordance with Department Manual Section 0/080.30.


WILLIAM J. BRATTON
Chief of Police

DISTRIBUTION "D"

Exhibit 2 – Page 19

CONTINUATION SHEET

Los Angeles Police Department

| PAGE NO. 2 | TYPE OF REPORT | Impound | | | BOOKING NO. | DR NO. |
|---|---|---|---|---|---|---|
| ITEM NO. | QU AN | ARTICLE | SERIAL NO | BRAND | MODEL NO. | MISC DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VALUE |

On November 25, 2009 at 1430 hrs Ofcr Thusing #25120 and I, Ofcr Skinner #31142 were working in full uniform in a clearly marked black and white police vehicle, assigned 14SL13.

We responded to 4th Ave south of Rose Ct because of the complaints that I've (Ofcr Skinner) receive about the amount of motorhomes, campers, trucks and vehicles being lodged in and stored on a public street.

We observed a tan Winnibago Motorhome, Fl Lic #████████parked on 4th Ave south of Rose Ct on the west side of the street. I made a notation of the front left valve stem which was in the 4 o'clock position and the rear left tire stem was in the 5 o'clock position. The rear right tire was marked on both sides at the wheel well and the street was marked to the rear of the rear right tire.

On todays date, November 28, 2009 at 1430 hrs we returned to the location. We observed the tan Winnibago Motorhome, FL Lic ████████parked on 4th Ave south of Rose Ct. I observed the front left valve stem in the 4 o'clock position and the rear left valve stem was in the 5 o'clock position. I checked the rear right tire and observed two white chalk marks on each side at the wheel well. Based on this information we determined that the vehicle had not been moved since we marked on November 25, 2009.

The vehicle was impounded for 22651(k) VC at 1755 hrs and issued citation #1080731142 for 80.73.2 LAMC – Vehicle left standing on public street for 72-hours.

**Exhibit 2 – Page 20**

CONTINUATION SHEET

Los Angeles Police Department

| PAGE NO. 2 | | TYPE OF REPORT Impound | | | | BOOKING NO. | | DR NO. | |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | QU AN | ARTICLE | SERIAL NO | BRAND | MODEL NO. | MISC DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | | | DOLLAR VALUE |

On March 24, 2009 at 1550 hrs I, Ofcr Skinner responded to a complaint about campers being stored on a public street on Dewey Ave near Bernard. I responded to that location and observed a white Dodge Honey Camper, Ca Lic #▓▓▓▓▓▓▓

Believing that the vehicle might be stored on the public street for over 72-hours, I marked the rear left tire with a white chalk mark at the wheel well and the street around the left rear tire. I made a notation of the front left tire valve which was in the 11 o'clock position.

When I returned to day, March 27, 2009 at 1600 hrs, inc #090327003124. I observed the white tire mark on the rear left tire in the same spot, at the wheel well. I observed the reminence of white chalk on the street around the left rear tire and the front left tire's tire valve wass still in the 11 o'clock position. Based on this information I determined that the vehicle had been left parked on a public street over 72-hours and therefore in violation of 80.73.2 LAMC. The vehicle was cited for 80.73.2 LAMC, cite #1068025766 and impounded by Howard Sommers Tow.

Exhibit 2 – Page 21


- citation amounts ordinace177840.pdf

## LOS ANGELES MUNICIPAL CODE (Continuation)

| SECTION | DESCRIPTION | FINE | WITH LATE PENALTY | WITH SECOND PENALTY |
|---|---|---|---|---|
| 80.55(a)4 | ANY POLICE STATION | $70 | $140 | $150 |
| 80.56(e)1 | PASSENGER ZONE (WHITE) | $35 | $70 | $80 |
| 80.56(e)2 | LOADING ZONE (YELLOW) | $35 | $70 | $80 |
| 80.56(e)3 | SHORT TIME LIMIT ZONE (GREEN) | $35 | $70 | $80 |
| 80.56(e)4 | NO STOPPING ZONE (RED) | $70 | $140 | $150 |
| 80.58(l) | PREFERENTIAL PARKING | $45 | $90 | $100 |
| 80.61 | ALLEY – STANDING IN | $45 | $90 | $100 |
| 80.66.1(d) | RESTRICTED ZONES | $45 | $90 | $100 |
| 80.69(a) | STOPPING OR STANDING PROHIBITED | $70 | $140 | $150 |
| 80.69(b) | PARKING PROHIBITED/STREET CLEANING | $50 | $100 | $110 |
| 80.69(c) | PARKING TIME LIMITS | $35 | $70 | $80 |
| 80.69.1(a) | PARKING TRAILER – VEHICLE CAPABLE OF TOWING | $55 | $110 | $120 |
| 80.69.1(c) | UNHITCHED TRAILER: | | | |
| | FOR FIRST VIOLATION | $55 | $110 | $120 |
| | FOR SECOND VIOLATION WITHIN TWELVE MONTHS OF FIRST VIOLATION | $80 | $160 | $170 |
| | FOR THIRD AND SUBSEQUENT VIOLATIONS WITHIN TWELVE MONTHS OF FIRST VIOLATION | $110 | $220 | $230 |

2

**Exhibit 2 – Page 22**

217

50.⁰⁰ 4000 (b) (1) CVC - UN REG VEH
25.⁰⁰ 5200 (A) CVC - FRONT & REAR PLATES REQUIRED
25.⁰⁰ 5204 (A) CVC - MUST HAVE REG TABS DISPLAYED
25.⁰⁰ 5201 CVC - LICENSE PLATE - MUST BE ATTACHED TO FRON
REAR OF VEH MINIMUM OF 12" BUT
NOT OVER 60" FROM THE GROUND

85.02 LAMC - USE OF STREET AND PUBLIC PARKING LOTS
R.F.C. FOR HABITATION (SEE ARREST REPORT EXEMPLAR
MUST BE WARNED PRIOR -
MUST HAVE PHOTOS).

80.69.(1)(C) LAMC - UN ATTACHED TRAILER ($55.⁰⁰)

80.69 (d) LAMC - WHENEVER AUTHORIZED & SIGNS ARC
-$55.⁰⁰ POSTED - IT IS UNLAWFUL FOR ANY PER
TO PARK A VEHICLE ; MORE THAN SIX F
IN HEIGHT, WITHIN 100 FEET OF AN I

80.73.2 LAMC - UNLAWFUL TO PARK ANY VEHICLE ON
$45.⁰⁰ STREET, ALLEY FOR MORE THAN 72 H

26709 (c)(b)(1) VC - IF m/v DRIVERS REAR SITE IS OBSTR
THEN VEH MUST HAVE (2) SIDE MIRROR

26709 (c)(b)(3) VC - A BUS MUST HAVE (2) SIDE MIRRORS

**Exhibit 2 – Page 23**

# RANDY YOSHIOKA – Oakwood–Venice Task Force (OVTF)

| | |
|---|---|
| **From:** | BRENDA CRUMP |
| **To:** | Command; Detective III's; Detectives; Lieutenants; Pac SLO's; Pacif... |
| **Date:** | 10/13/2010 10:49 AM |
| **Subject:** | Oakwood-Venice Task Force (OVTF) |
| **Attachments:** | Oakwood-Venice TF Operations Plan.doc |

Goodmorning Pacific Team:

We had the official kick-off of our newly formed Oakwood-Venice Task Force, which started DP 11. Our goal is the reduction in Part 1 crimes in Basic Car A11 and A13. There has been a significant increase Year to Date especially in BFMV and GTAs in those areas. Through the identification of criminal behavior, arrests, debriefs, follow-up searches, outreach, and community enhancement, I know we will be successful.

I have attached our mission and operations plan for your review. It is important to note that communication between patrol, detectives, other Pacific specialized units, and outside entities will be the key to our success. It is about our entire **Pacific Team!**

As a result of the work all of you have been doing in the last month we have already seen a very positive change. Captain Peters and I appreciate your focus, commitment, professionalism, and positive attitude.

## You are making an incredible difference in others' lives!!!

Thank you very much,

Brenda

Captain Brenda S. Crump
Commanding Officer
Pacific Patrol Division
(310) 482-6310
Fax: (310) 482-6339
MS 416

# Operations Plan
# Oakwood/Venice Task Force
September 2010

**Purpose:** This Operations Plan is intended to provide an overview of the mission and subsequent operations for the Oakwood / Venice Task Force. This plan is confidential and shall not be distributed without the consent of the Commanding Officer, Pacific Area.

## I.  SITUATION:

Pacific Area has seen a significant increase in Part I crimes in both the Venice Beach and Oakwood areas of the division; specifically basic cars 14A11 and 14A13. The majority of these crimes appear to be theft related, such as Burglary From Motor Vehicles and Grand Theft Auto. However, there have also been Aggravated Assaults and Robberies occurring on a continual basis. The majority of these crimes take place during evening or early morning hours.

Due to the amount of documented criminal activity, in addition to citizen complaints regarding criminal activity, illegal lodging, illegal dumping, trespassing, prostitution, narcotics sales, noise, and general "Quality of Life" issues, Pacific Area will deploy officers as part of a Task Force in these designated areas.

The boundaries for the Task Force have been defined as Lincoln Boulevard to the east, Washington Boulevard to the south (Including the marina peninsula), the Pacific Ocean to the west, and Dewey Street to the north.

## II.  MISSION:

The mission of the Task Force is to effect arrests of individuals who are violating local and state codes. In addition, officers will attempt to gain intelligence regarding individuals or groups who may be involved in criminal activity. Furthermore, officers will provide shelter and service provider information to individuals, whether arrested or not, with whom they come in contact with, or who are found to be violating the law by lodging in their vehicles, or who are found trespassing on city or private property during overnight hours, and who are deemed by the officer to be at risk or as someone who could benefit from the information.

The officers assigned to this Task Force will adhere to the "Four C's" philosophy:

- Commander's Intent
- Constitutional Policing
- Community Perspective
- Compassion

CONFIDENTIAL

Exhibit 2 – Page 25

## III.   EXECUTION:

(Deployment)

The Task Force will be broken down into (4) unique groups:

- Venice Task Force Detail
- Beach Detail
- Bicycle Detail
- Special Operations Detail

## Venice Task Force Detail (VTFD) - Watch 2 - 0500 Hours  (7-Day Coverage)

The VTFD will identify those individuals who choose to illegally lodge in their vehicles,
maintain unsafe or hazardous vehicles, and illegally trespass on private or city property.  Officers
may also effect arrests of individuals whom they determine have violated state or local law.

In addition, the officers will provide shelter and service provider information to individuals,
whether arrested or not, that they come in contact with and have deemed to be at risk, or
someone whom the officer feels would benefit from the information.  The officers will also work
with counselors from local service agencies, as well as members of the Clergy Council, to assist
individuals with obtaining shelter and service provider information.

## Beach Detail - Watch 4 - 1030 Hours and Watch 5 - 1500 Hours  (7-Day Coverage)

The beach patrol will enforce state and local codes related to the Venice Beach area.  The
officers will monitor the vendors, special events in the park, large crowds that visit the area on a
daily basis, and heavy vehicular traffic associated with such activity.  In addition, the beach
officers, throughout their shift, will extend their patrol duties east of Pacific Avenue into the
areas where illegal activity has been identified as occurring.

## Special Operations Detail -- Watch 5 - 1500 Hours (6-Day Coverage)

The Special Operation Detail will be responsible for conducting surveillance to gather
intelligence in known areas where criminal activity is occurring.  In addition, this unit will
coordinate details such as Bait Car, Bait Bike, and Buy/Bust.  They will also work with the
Pacific Area Crime Intelligence Team to identify individuals who are on parole and/or probation
and who are living within the defined area.  The unit will then schedule parole/probation
searches at identified locations.

## Bicycle Detail – Watch 5 – 1600 Hours (6-Day Coverage)

The bicycle unit will be responsible for crime suppression in the defined areas.  They will patrol
on bicycles and enforce state and local codes.  In addition, they will support the Special
Operations Detail, as well as any other entities such as Vice or Narcotics, when a uniform officer
element is required.

CONFIDENTIAL

Exhibit 2 – Page 26

Senior Lead Officers -- Various Hours/Days

The Senior Lead Officers (SLO's) will be responsible for keeping an open line of communication with community members and groups, as well as service providers, as it pertains to this Task Force. In addition, the SLO's will be tasked with ensuring that "Enhancement Requests" (graffiti removal, street lighting, garbage disposal, abandoned vehicles/shopping cart removal, etc...) are being directed to the appropriate entity and that the work is being completed in a timely manner.

(Support Elements)

The Task Force will also work in conjunction with the following entities to monitor criminal activity within the defined area:

- Pacific Area Narcotics Enforcement Detail
- Pacific Area Vice Detail
- Pacific Area Crime Intelligence Team
- Pacific Area Street Crimes Unit
- Pacific Area Gang Enforcement Detail
- Oakwood Task Force (Existing Footbeat)
- Los Angeles Police Gang and Narcotics Division
- City of Los Angeles Department of Transportation – Parking enforcement
- Los Angeles County Probation Department
- California Department of Corrections and Rehabilitation (State Parole)
- Los Angeles County Department of Children and Family Services Multi-Agency Response Team (MART)

## IV. ADMINISTRATION:

(Arrest Reports / Related Reports / Follow-Up)

The Task Force will have detective support in their daily operations. The detectives will have the following responsibilities:

- Review all arrests from the previous day to identify criminal patterns or behavior, repeat offenders, connection to other criminal activity, and to ensure reports are being written in an organized and detailed manner
- Assist with debriefs of arrestees
- Provide advice for booking charges
- Provide on-scene detective support at crime scenes or during immediate follow-up situations
- Ensure assigned detectives are properly filing cases and requesting Stay-Away Orders when appropriate and necessary
- Liaison with Pacific Area's Neighborhood Prosecutor to ensure that cases are being filed and Stay-Away Orders are issued when appropriate and necessary
- Provide "Real-Time" criminal and/or administrative information to the Officer in Charge of the Task Force, who will then immediately disseminate the information to the officers and other support elements

CONFIDENTIAL

Exhibit 2 – Page 27

- Review the criminal history of all arrestees, regardless of the charge, to determine if there is a pattern of criminal activity that is related to the crimes that have been identified in the defined area
- Liaison with Watch Commanders and Detention Officers to ascertain if the Drop-and-Go program is being utilized to its fullest extent.

## V.   CONCLUSION:

The ultimate measure of the task force's effectiveness will be multi-pronged. First, there must be a significant reduction in Part I Crimes. Daily analysis; accurate, timely intelligence; honest discourse with stakeholders; and a flexible workforce that can rapidly respond to burgeoning trends will be the hallmarks of the taskforce. Second, the task force will seek to increase the utilization of pre-existing service providers. Job training, substance abuse counseling, alternate lodging, and medical care are critical to the prolonged success of these efforts. Finally, there must be a heightened perception of safety amongst those who reside in and visit Venice. Our Department mission is clear: to prevent the fear and incidence of crime. The task force successes must be shared with the Venice community members via a consistent, transparent media campaign. The increased presence of officers in Venice - on bike, on foot, and in cars - will provide daily opportunities for task force officers to forge meaningful alliances, increase trust, and reduce fear of crime.

CONFIDENTIAL

Exhibit 2 – Page 28

RV LOG - LICENSE #78 AND LOCATIONS

PUT YOUR CURSOR IN A FIELD WITH RED FLAG TO SEE NOTES

| cont | License Number | THURS 10/7/09 8:30-9:00 | WED 12/30/09 10:30-11:00 AM | WED 12/2/09 8:00-8:45AM | MON 12/14/09 9:30-11am | THUR 12/3/09 8:00-11AM | MON 11/30/09 9-10AM | SAT 11/28/09 9:30-11AM | WED 11/25/09 8:15-11am | 11/20/2009 8:30-11:00AM |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 085T92 | | | | | | | | | 400 BROADWAY |
| 2 | 091RLX | | | | | | 900 BROADWAY, NORTH SIDE | 900 BROADWAY, NORTH SIDE | 500 RENNIE |
| 3 | 154XIT | 900 BROADWAY, NORTH SIDE | 900 BROADWAY, NORTH SIDE | 900 BROADWAY, NORTH SIDE | 900 BROADWAY, NORTH SIDE | | | | | |
| 4 | 162XNQ (FL) | 500 ROSE AVE | 500 ROSE AVE | | 300 RENNIE | 300 RENNIE | 900 BROADWAY, SOUTH SIDE | 900 BROADWAY, SOUTH SIDE | 900 BROADWAY, SOUTH SIDE | 900 BROADWAY |
| 5 | 167NNM | 900 BROADWAY | 900 BROADWAY, NORTH SIDE | 900 BROADWAY, NORTH SIDE | 900 BROADWAY, NORTH SIDE | 900 BROADWAY, SOUTH SIDE | 500 4TH AVE | 600 4TH AVE | | |
| 6 | 19989 (IN) | 800 ROSE AVE | 500 ROSE AVE | | 800 4TH AVE | 900 7TH AVE | | | | 900 BROADWAY |
| 7 | 1BC5S973 | | | | | | | | | |
| 8 | 1C2R499 | | 1000 DAWOOD AVE | 800 INDIANA AVE | | | | | | |
| 9 | 1DN6E457 | | | 300 8TH AVE | | | | | | |
| 10 | 1EPR128 | 300 8TH AVE | 800 8TH AVE | 300 RENNIE | 300 RENNIE | 300 RENNIE | 300 RENNIE | 900 3RD AVE | | 200 RENNIE |
| 11 | 1FNN037 | 900 RENNIE | 300 RENNIE | 900 RENNIE | 300 RENNIE | 600 4TH AVE, EAST | 600 4TH AVE, EAST | 300 3RD AVE | | 300 RENNIE |
| 12 | 1FVG187 | 800 6TH AVE | 600 5TH AVE | 300 SUNSET | 800 4TH AVE | 300 3RD AVE | 300 3RD AVE | | | |
| 13 | 1GPB089 | 600 6TH AVE | 600 6TH AVE | 200 3RD AVE | 400 SUNSET AVE | | | 300 4TH AVE | | 300 4TH AVE |
| 14 | 1JPY078 | | | | | | | | | |
| 15 | 1LX6866 | 1000 7TH AVE | 700 7TH AVE | 600 6TH AVE | | 800 7TH AVE | 800 7TH AVE | 700 7TH AVE | | 900 7TH AVE |
| 16 | 1N5P4947 | 900 7TH AVE | | 700 7TH AVE | 900 7TH AVE | | | | | 300 3RD AVE |
| 17 | 222C849 | | | 200 2ND AVE | | | | | | 300 3RD AVE |
| 18 | 22CYK714 | | | | | 300 3RD AVE | 300 3RD AVE | | | 300 3RD AVE |
| 19 | 223CG946 | | | | | 300 4TH AVE, EAST | | | | 300 3RD AVE |
| 20 | 2HX0458 | | | | | 900 BROADWAY AVE | | | | |
| 21 | 2HGU199 | | | | | | | | | |
| 22 | 2NYG929 | | | | | | | | 300 3RD AVE | 300 3RD AVE |
| 23 | 2BUD455 | 300 3RD AVE | 900 3RD AVE | 300 3RD AVE | 100 3RD AVE | 300 3RD AVE | 300 HAMPTON AVE | 300 3RD AVE | 300 3RD AVE | 300 3RD AVE |
| 24 | 2PK0019 | 900 7TH AVE | 700 7TH AVE | 1000 7TH AVE | 1000 7TH AVE | 900 7TH AVE | 900 7TH AVE | 900 7TH AVE, 900 7TH AVE | 1100 7TH AVE |
| 25 | 42BPDW | | | | | | | | | |
| 26 | 3A62E93 | | | | | 300 3RD AVE | 300 3RD AVE | 300 3RD AVE | 300 3RD AVE | 300 3RD AVE |
| 27 | 3G2Z123 | 300 3RD AVE | 300 3RD AVE | 200 SUNSET AVE | 900 3RD AVE | 300 RENNIE AVE | | 900 3RD AVE | 300 3RD AVE | 100 3RD AVE |
| 28 | 3HQH398 | | 300 HAMPTON AVE | 300 3RD AVE | | 300 3RD AVE | | | | |
| 29 | 3H7M266 | 300 3RD AVE | 300 3RD AVE | 300 3RD AVE | 900 7TH AVE | 300 3RD AVE | 300 8ND AVE | 300 8ND AVE | 300 8RD AVE |
| 30 | 3J57497 | 900 7TH AVE | 1600 LINCOLN FL | 900 7TH AVE | 900 7TH AVE | 1100 7TH AVE | 300 7TH AVE | 900 7TH AVE | 1100 7TH AVE |
| 31 | 3RX3979 | | 6000 PALM51 | | | 6000 MENDOZA AVE | | 900 7TH AVE, LINCOLN BLVD | |
| 32 | 3UK6916 | | | | | 1102 7TH AVE | | | | |
| 33 | 42808 (OH) | 700 BROADWAY | 700 BROADWAY | 700 7TH AVE | 900 7TH AVE | | | 700 BROADWAY | 1100 7TH AVE |
| 34 | 4AC3121 | 300 ZEN AVE | | | | | | | | |
| 35 | 4AL3620 | | | | | 900 PALMS AVE | | | | |
| 36 | 4ALWK313 | 1500 LINCOLN BL | 1500 LINCOLN BL | | 300 7TH AVE | 300 7TH AVE | 300 7TH AVE | | | |
| 37 | 4AY3569 | 900 7TH AVE | | | | | | | | |
| 38 | 4BZU000 | | | | 600 ROSE AVE | 900 CALIFORNIA AVE | | | | |
| 39 | 4DNC264 | 600 ROSE AVE | | | | 300 VENICE AVE | | | | 900 8TH AVE |
| 40 | 4DNQH277 | | | | | | | | | |
| 41 | 4EO8023 | | | | | 300 HAMPTON AVE | | | | |
| 42 | 430X468 | 300 3RD AVE | 300 3RD AVE | 500 3RD AVE | 900 3RD AVE | 500 SUNSET AVE | 900 COEUR D ALENE | 900 COEUR D ALENE | 900 COEUR D ALENE | 1100 7TH AVE |
| 43 | 43NX162 | 900 COEUR D ALENE | 900 COEUR D ALENE | 900 COEUR D ALENE | 900 COEUR D ALENE | 900 COEUR D ALENE | | | | 1200 7TH AVE |
| 44 | 43C6510 | 1000 7TH AVE | | | | 1000 7TH AVE | | | | |
| 45 | 4E7X7770 | | | | | | | | | |
| 46 | 4WQN271 | 300 3RD AVE | 600 3RD AVE | | | | | | | |
| 47 | 4XFG955 | 300 3RD AVE | | 700 VERNON AVE | | | | | | |
| 48 | 4ZVA607 | 300 3RD AVE | 300 3RD AVE | 300 3RD AVE | | | | | | 900 3RD AVE |
| 49 | 85T93 | | | | | | | | | |
| 50 | 58NGN424 | | | | | | | | | |
| 51 | 5HHD846 | 300 3RD AVE | 300 3RD AVE | | 900 3RD AVE | | | | | |

224

Exhibit 2 – Page 29

2

| Code | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5KGXX025 | | | | | | | | | | | 502 3RD AVE |
| 6FGPG39 | | | | | | | | | | | 200 4TH AVE |
| 6ULF128 | | | | | | | | | | | 1000 PLEASANTVIEW |
| 6VKCX421 | | | | | | | | | | | |
| 6ZMG58 | | | | | | | | | | | |
| 6HLXDG | | | | | | | | | | | |
| 6HJPH | | | | | | | | | | | |
| 6HGE | | | | | | | | | | | |
| 6ZBIE | | | | | | | | | | | |
| 67ZUDG | | | | | | | | | | | |
| 68PK7 (OR) | | | | | | | | | | | |
| 6AB5380 | | | | | | | | | | | |
| 68EDX111 | | | | | | | | | | | |
| 8KCX5007 | | | | | | | | | | | |
| 8DNX349 | | | | | | | | | | | |
| 6BDB938 | | | | | | | | | | | |
| 6PSXG39 | | | | | | | | | | | |
| 6PKD4167 | | | | | | | | | | | |
| 6GUVX361 | | | | | | | | | | | |
| 5HENG07 | | | | | | | | | | | |
| 6HXB244 | | | | | | | | | | | |
| 6JAXG34 | | | | | | | | | | | |
| 6JAKF83 | | | | | | | | | | | |
| 6JRA74 | | | | | | | | | | | |
| 6JBB453 | | | | | | | | | | | |
| 6JPH284 | | | | | | | | | | | |
| 6J'5B558 | | | | | | | | | | | |
| 6HBH075 | | | | | | | | | | | |
| 6KNX007 | | | | | | | | | | | |
| 6Z35724 | | | | | | | | | | | |
| 7IKNIFP | | | | | | | | | | | |
| 739VGLLW-41TZ778 | | | | | | | | | | | |
| 7GMB692 | | | | | | | | | | | |
| 7KIKF67 | | | | | | | | | | | |
| 8160WPH (FL) | | | | | | | | | | | |
| 818YKJ | | | | | | | | | | | |
| 84HTV | | | | | | | | | | | |
| 8D129928 | | | | | | | | | | | |
| 6HDX07 | | | | | | | | | | | |
| A2393WYGN | | | | | | | | | | | |
| A6BNGK | | | | | | | | | | | |
| 8JPH284 | | | | | | | | | | | |
| 8KRDX44 | | | | | | | | | | | |
| 8BKD44 | | | | | | | | | | | |
| 1RBD616 (IN) | | | | | | | | | | | |
| 9AJY122 | | | | | | | | | | | |
| U5CX223 | | | | | | | | | | | |
| X12442 (OR) | | | | | | | | | | | |
| X00216 | | | | | | | | | | | |
| X1164 | | | | | | | | | | | |

225

Exhibit 2 – Page 30

1    **PROOF OF SERVICE BY MAIL**

2    I, KATHERINE FINAN, declare as follows:

3    At the time of service I was over 18 years of age and not a party to this action.
     My business address is 200 N. Main Street, 6ᵗʰ Floor, City Hall East, Los Angeles,
4    California 90012, which is in the County, City and State where this mailing occurred.

5    On August 22, 2011, I served the document(s) described as:

6    **DEFENDANT CITY OF LOS ANGELES' TENTH SUPPLEMENTAL
     RESPONSE AND OBJECTION TO PLAINTIFF CHEYENNE DESERTRAIN'S
7    DEMAND FOR INSPECTION AND PRODUCTION OF DOCUMENTS
     (REQUEST NO. 1) (SET ONE)**

8
9    on all interested parties in this action:

10   Carol A. Sobel, Esq.                        Barrett S. Litt, Esq.
     LAW OFFICES OF CAROL A. SOBEL              LITT, ESTUAR & KITSON LLP
     429 Santa Monica Blvd., Ste. 550           1055 Wilshire Blvd., Ste. 1880
11   Santa Monica, CA 90401                     Los Angeles, CA 90017
     (310) 393-3055                             (213) 386-3114
12   (310) 393-3605 Fax                         (213) 380-4585 Fax
     carolsobel@aol.com                         blitt@littlaw.com
13   *Plaintiffs* CHEYENNE DESERTRAIN, STEVE   *Plaintiffs* CHEYENNE DESERTRAIN, STEVE
     JACOBS-ELSTEIN, BRADFORD ECKHART,          JACOBS-ELSTEIN, BRADFORD ECKHART,
14   PATRICIA WARIVONCHIK, LEROY BUTLER,        PATRICIA WARIVONCHIK, LEROY
     WILLIAM CAGLE, TERRY HENDRICKSON,          BUTLER, WILLIAM CAGLE, TERRY
15   LUIS PACHECHO, DELLA FRANCO, LOUIE         HENDRICKSON,
     GARCIA, CHRIS TAYLOR                       LUIS PACHECHO, DELLA FRANCO, LOUIE
16                                              GARCIA, CHRIS TAYLOR

17   Susan Millmann, Esq.                       Scott B. Rapkin, Esq.
     LEGAL AID FOUNDATION OF LOS ANGELES        LAW OFFICE OF MICHAEL RAPKIN
18   1640 5ᵗʰ St., Ste. 124                     233 Wilshire Blvd., Ste. 700
     Santa Monica, CA 90401                     Santa Monica, CA 90401
19   (310) 899-6200                             (310) 319-5465
     (310) 899-6208 Fax                         (310) 319-5355 Fax
20   smillmann@lafla.org                        scottrapkin@rapkinesq.com
     *Plaintiffs* CHEYENNE DESERTRAIN, STEVE   *Plaintiffs* CHEYENNE DESERTRAIN, STEVE
21   JACOBS-ELSTEIN, BRADFORD ECKHART,          JACOBS-ELSTEIN, BRADFORD ECKHART,
     PATRICIA WARIVONCHIK, LEROY BUTLER,        PATRICIA WARIVONCHIK, LEROY
22   WILLIAM CAGLE, TERRY HENDRICKSON,          BUTLER, WILLIAM CAGLE, TERRY
     LUIS PACHECHO, DELLA FRANCO, LOUIE         HENDRICKSON,
23   GARCIA, CHRIS TAYLOR                       LUIS PACHECHO, DELLA FRANCO, LOUIE
                                                GARCIA, CHRIS TAYLOR
24
     I served a true copy of the document(s) above by:
25
     [✗] Depositing it in the United States Mail in a sealed envelope with the postage
26   thereon fully prepaid to the address(es) above.
     [✗] I hereby certify that I am employed in the office of a member of the Bar of this
27   Court at whose direction the service was made.
     [✗] I hereby certify under the penalty of perjury that the foregoing is true and
28   correct.

     Executed on August 22, 2011at Los Angeles, California.

                                               Katherine Finan
                                               KATHERINE FINAN

                                               Exhibit 2 pg. 31