1  CAROL A. SOBEL   SBN 84483
   3110 Main Street, Suite 210
2  Santa Monica, CA  90405
   T. 310 393-3055   F. 310 451-3858
3  E. carolsobel@aol.com

4  BARRETT S. LITT  SBN 45527
   Kaye, Mcclane, Bednarski & Litt
5  234 E. Colorado Boulevard, Suite 230
   Pasadena, CA 91101
6  T. 626 844-7660 F. 626 844-7670
   E. blitt@kmbllaw.com
7
   Barbara Schultz
8  LEGAL AID FNDN OF LOS ANGELES        MICHAEL S. RAPKIN   SBN 67220
   1640 5th Street,  Ste 124            SCOTT B. RAPKIN   SBN 261867
9  Santa Monica, CA 90401              Law Office of Michael Rapkin
   T. 310 899-6200  F. 310 899-6208    233 Wilshire Blvd., Suite 700
10 E. bschultz@LAFLA.org               Santa Monica, CA 90401
                                       T.  310 319 5465   F. 310 319 5355
11                                     E.  scottrapkin@rapkinesq.com

12

13              IN THE UNITED STATES DISTRICT
14   FOR THE CENTRAL DISTRICT OF CALIFORNIA - WESTERN
                          DIVISION
15

16  CHEYENNE DESERTRAIN, et al.,       )  CASE NO. CV 10-09053 RGK (PJWx)
                                       )
17           Plaintiffs,               )  PLAINTIFFS' OBJECTIONS TO THE
                                       )  DECLARATION AND EXHIBITS OF
    vs.                                )  DEFENDANTS' EXPERT ROBERT
18                                     )  BRUNING
    CITY OF LOS ANGELES, a muni-       )
19  cipal entity, DOES I-10, as individuals,  )  Date:  January 20, 2015
                                       )  Time: 9:00 a.m.
20  _____Defendants._____        )  Ctrm: Roybal 850 (Hon. Judge Klausner)

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

In challenging the reasonableness of the requested fees, Defendants "may not rely on conclusory challenges to plaintiffs' evidence." *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995). Instead, they bear the "rebuttal burden of providing specific evidence that plaintiffs' hours were duplicative or inefficient." *Id*. at 255-56, quoting *Gates v. Gomez*, 60 F.3d 525, 534 (9th Cir. 1995)). This burden is unmet.

Defendants contend that Plaintiffs won nothing in this Court, so the fee award should reflect "limited success."  The  Circuit's reversal of summary judgment in a dispositive ruling is of no import to Defendants because they contend that Plaintiffs only "prevailed on a single claim – a facial challenge to LAMC §85.02."  Opp. p.1, lines 11-13.  This same argument was made to no avail in response to the motion for fees on appeal.  Plaintiffs achieved all they sought.  The dispositive ruling that §85.02 is unconstitutional necessarily means that Plaintiffs were wrongfully arrested under a patently invalid law and that there was, similarly, no lawful basis to seize their vehicles, or threaten them with arrest for violating §85.02.

## II.    THE REQUESTED RATES ARE REASONABLE

### A.    Defendants' Arguement Ignores the Proper Methodology

The correct standard to assess market rates is what rates are "in line with those prevailing in the community for similar services provided by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The measure is against "equally complex federal litigation, no matter the subject matter of the litigation."  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013) (remanded for determination of rates for attorneys of "similar experience, skill and reputation" engaged in "similarly complex matters").

Plaintiffs have submitted ample evidence of the reasonableness of their rates, including four prior decisions of the district court from 2008 to 2011 awarding fees to Ms. Sobel at rates significantly higher than the rate proposed by Defendants in this

1    instance.  In addition, Plaintiffs have submitted 16 additional exhibits establishing

2    that their requested rates are well within the market for rates awarded to civil rights

3    attorneys in the Los Angeles legal market.   Taken together, this is compelling

4    evidence that the requested rates are reasonable.

5        In the face of this record, Defendants' expert contends that Plaintiffs provided

6    no information about the skills and experience of the attorneys for whom fees are

7    sought other than the lead counsel.  Exhibit 2 to the Sobel Declaration provides the

8    resumé for each counsel, as Bruning notes.   Similarly, based on his review of State

9    Bar listings, Bruning implies that attorney Shumacher is less experienced because she

10   was inactive with the California Bar.  Her resumé shows that she practiced in

11   Pennsylvania for 16 years. Ex. 2, p.11-12 [Dkt.#127-4].  *See also* concurrently filed

12   Declaration of Schumacher at ¶¶2-5.

13       Plaintiffs are entitled to current rates.  *Missouri v. Jenkins*,  491 U.S. 274

14   (1989).  "[C]ompensation received several years after an attorney renders his services

15   "is not equivalent to the same dollar amount received reasonably promptly as the

16   legal services are performed, as would normally be the case with private billings."

17   *Id*. at 283.  This includes Louisa Okonyan and Scott Rapkin, both of whom have

18   distinguished academic records. Ex. 2.  "Their excellent performances in this case

19   entitled them to be compensated at prevailing market rates, even though they were

20   relatively young when this litigation began. *See Johnson [v. Georgia Highway*

21   *Express, Inc.]*, 488 F.2d [714], 718-719 [5th Cir. 1974] ("If a young attorney

22   demonstrates the skill and ability, he should not be penalized for only recently being

23   admitted to the bar").  *City of Riverside v. Rivera*, 477 U.S. 561, 570 (1986)

24   (bracketed edits supplied).

25       **B.     The Rates Suggested by Defendants Are Not Market Rates**

26       Defendants contend that the appropriate rate for Plaintiffs' lead counsel is $650

27   an hour, seven percent below the rate approved Judge Real approved for Ms. Sobel

28   in 2008 in *Jones v. City of Los Angeles*, 444 F.3d 1116 (9th Cir. 2006), *vacatur*

2

1   *entered*, 505 F.3d 1006 (2007).   They cite to *DuBose v. County of Los Angeles*, 2012

2   U.S. Dist. LEXIS 81362 (C.D. Cal. 2012).   There is no valid comparison.   The award

3   in *DuBose* was reduced by more than 75 percent because the plaintiff prevailed on

4   only one of four claims, which was based on both a different legal theory and facts

5   from the unsuccessful claims.   *Id.* at \*15-16 n.9.   Judge Snyder found that the lead

6   attorney, with only nine years' experience, lacked skill when he began the case and

7   still lacked it years later at the trial.   *Id*. at \*11.   Yet, he claimed he should get the

8   same rate as in *Rauda v. City of Los Angeles*, CV 08-3128 CAS (C.D. Cal. 2010).   A

9   true and correct copy of *Rauda* is attached at Exhibit 17.   The court found the *Rauda*

10  attorneys far more skilled.   The 2010 rate in *Rauda* for an attorney with 25 years

11  experience was $650 an hour, the same rate proposed as the 2014 rate for Plaintiffs'

12  lead counsel with 36 years of experience.   Ex.17 at \*10-11.

13        More recently, in *Dugan v. County of Los Angeles*, 11-cv-08145 CAS (C.D.

14  Cal. Mar. 3, 2014), Judge Snyder awarded fees at $650 an hour to Todd Burns, a 1996

15  law graduate, rejecting Bruning's assertion that Burns should get a lower rate despite

16  18 years of trial experience and Fourth Amendment knowledge from criminal defense

17  work.   *Id.* at p.5.   A true and correct copy of the *Dugan* decision was previously filed

18  at Exhibit 6.   Burns has 18 years less experience than Plaintiffs' lead counsel.

19        *Dowd v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 91096 (May 23, 2014),

20  cv-09-06731 DDP (C.D. Cal. 2009), is also inapt.   First, there is no evidence, nor

21  could there be, that it involved a comparable challenge, the same amount of

22  discovery, or similarly complex issues. *Tchemekou v. Mukaskey*, 517 F.3d 506, 511

23  (7th Cir. 2008).   Second, the trial court reduced both the rates and hours to reflect a

24  significant lack of success.   Dowd lost <u>all</u> of his constitutional challenges.   2014 U.S.

25  Dist. LEXIS 91096, \*p.9.   Third, the action was originally filed *pro se*.   Mr. Rohde

26  substituted in as counsel in April 28, 2011, two years after the action was filed and

27  *after* the *pro se* plaintiffs won a preliminary injunction.   *See* Case No. 09-cv-06731

28  SS, Dkt. #47.   Even so, and deducting all time for trial because plaintiffs were

3

awarded $1 each after rejecting a Rule 68 offer, the *Dowd* counsel were compensated for just under 1,000 hours. 2014 U.S. Dist. LEXIS 91096, *9-10. Fourth, Plaintiffs' lead counsel here is more skilled and experienced in constitutional litigation than any attorney in *Dowd,* including Mr. Rohde. In *Dowd*, Greg Victoroff's rate was reduced to $675 an hour based on his limited role in the case and equally limited civil rights experience. *Id.* Even with that negative appraisal and one year less experience, his rate is higher than the rate Defendants propose for Ms. Sobel , whose entire career has been in complex civil rights litigation. *See* Exhibit 1 to Sobel Decl. Dec. 15, 2014.

Defendants other comparators are equally inapt because none of the counsel has the skill, experience and reputation of Plaintiffs' counsel, or they are defense counsel who are paid win or lose, with no contingency risk. These rates do not establish reasonable rates for civil rights lawyers "because government and insurance defense counsel generally charge lower rates than plaintiffs' attorneys for complex litigation, such attorneys' rates reflect a different market and, therefore, may not be probative." *Pearl*, California Attorney Fee Awards, §9.121 (CEB 2014), citing, *inter alia*, *Shapiro v Paradise Valley Unified Sch. Dist.,* 374 F3d 857, 866 (9th Cir. 2004); *Trevino v Gates,* 99 F3d 911, 925 (9th Cir. 1996); *Chabner v United of Omaha Life Ins. Co.,* No. C-95–0447 MHP) 1999 US Dist Lexis 16552, *16 n.2 (N.D. Cal. 1999), *aff'd*, 225 F3d 1042 (9th Cir. 2000) (defense rates are "inapt reference point" for rates of public interest lawyers).

## C.   "Small Firm" Status is Not a Basis to Reduce Rates

Defendants argument that Plaintiffs should be awarded fees at "small firm" rates to avoid a "windfall" has been soundly rejected as counter to the purpose of 42 U.S.C. §1988.[1]  *See Charlebois v. Angels Baseball, Inc.*, 2012 U.S. Dist. LEXIS

---

[1] California's rule is the same: *see PLCM v. Drexler,* 22 Cal.4th 1084, 1094 (2000) (in-house counsel entitled to market rates, not a lower "cost plus" rate. "[A]ttorneys' fees may not be reduced because the prevailing plaintiffs are represented by public interest law firms, which do not charge ... for their services. ...

4

91069, *23 (C.D. Cal. 2012); *Lopez v. San Francisco Unified School Dist.*, 385 F.Supp.2d 981, 1003 (N.D. Cal. 2005) ("argument that counsel's hourly rate should be set based on the size of counsel's firm is contrary to the law"); *Cruz v. Starbucks Corp.*, 2013 U.S. Dist. LEXIS 79231 *15 fn.8 (N.D. Cal. 2013) (same); *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1194-95 (C.D. Cal. 2009) (appropriate to set rates for Plaintiffs' attorneys using large law firm rates since these firms generally work on federal litigation that bills at higher rates than those charged for civil rights litigation). "Small firm" rates would "artificially depress attorney fee awards, as few civil rights firms can afford to employ hundreds of associates given the uncertainty of contingency-fee litigation." *Charlebois*, *supra*, at *23-24. "[A]ttorneys at large, prestigious law firms are valid comparators because they do, in fact, sometimes litigate civil rights cases[.]" *Id.* at 24. Moreover, the best way to avoid a "windfall" is simply "to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Moreno*, 564 F.3d at 1111.

## III. DEFENDANTS HAVE FAILED TO REBUT THE HOURS REASONABLY INCURRED IN THIS MATTER

### A. Defendants Have Not Proven Any Unrelated Unsuccessful Claims

"Where a 'lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.'" *Rivera*, 477 U.S. at 584 (Powell, J. concurring), quoting *Hensley*, 461 U.S. 424, 440 (1983).

> [W]e have made clear that plaintiffs may receive fees under § 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That 'result is what matters,' we explained in *Hensley,* [ ] 461 U.S. at 435 [ ] (1983): A court should compensate the plaintiff for the time his attorney

---

The reason for such a rule is straightforward: public interest litigation "'should not have to rely on the charity of counsel … ' [Citation.]" ... The controlling factor, again, is the fair market value of the legal work which was performed." *Rogel v. Lynwood Redevelopment Agency*, 194 Cal. App. 4th 1319, 1332 (2011) (edits added).

reasonably spent in achieving the favorable outcome, even if "the plaintiff failed to prevail on every contention.

*Fox v. Vice*, __ U.S. __, 131 S.Ct. 2205, 2214 (2011). *See also Gates v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1992) (party need not prevail on every claim to recoup all fees as reasonable). On appeal, Plaintiffs won a fully "dispositive" ruling, yielding "excellent results" and voiding the law used to prosecute them.

The contention that Plaintiffs should have limited their claims to the facial challenge is unavailing and contravenes established law. *See Guam Soc'y of Obstetricians & Gynecologists v Ada*, 100 F.3d 691, 700 (9th Cir. 1996) ("plaintiffs cannot be faulted for their thoroughness under the circumstances," advancing multiple legal theories rather than just the one on which they prevailed, or filing numerous affidavits). The argument about §85.02 gained traction just before discovery closed, when Defendants produced key documents in their <u>tenth</u> supplemental discovery response and then testified at their depositions to diametrically conflicting interpretations of the guidelines. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). Had the documents been provided sooner, a more direct route could have been taken to win.

## B.    The Hours Sought After Applying Billing Judgment are Reasonable

An important factor in deciding the amount of fees is whether the fee applicant has applied "billing judgment." *See Association of California Water Agencies v. Evans*, 386 F.3d 879, 887 (9th Cir. 2004). Plaintiff has done so here, eliminating 20 percent of the total hours. Lopping off a significant percentage of unidentified hours simply to come up with the number of hours Defendants suggest are reasonable would impose a double penalty on Plaintiffs. It would also fail to meet Defendants' burden to identify specific hours and tasks that are not compensable and for the Court to explain in sufficient detail how it arrived at anything more than a minor reduction in the lodestar. *Moreno*, 534 F.3d at 1111; *id.* at 1112 (reversal where reduction of 25 percent imposed after voluntary 9 percent reduction without explanation).

Despite Plaintiffs' voluntary reduction of 20 percent, Defendants argue the hours are excessive and the case simple . "[A]lthough it may be easy, in hindsight, to tout this as an easy case, plaintiffs cannot be faulted for their thoroughness under the circumstances." *Guam v. Society of Obstetricians*, 100 F.3d at 700.  In *Guam*, the plaintiffs prevailed on only one of six legal theories pled. *Id.*  Similarly, in *Blackburn v. Goettel-Blanton*, 898 F.2d 95 (9th Cir. 1990), the Court rejected the contention that "the case was so simple – her breach of contract so self-evident – that plaintiffs could not have legitimately amassed" the claimed hours. *Id.* at 97.  The same is true here.

Time and again, the courts have held that, where "[t]he government's contentious litigation strategy forced the plaintiff to respond in kind[,] [t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Graham v. Sauk Prairie Police Commission*, 915 F.2d 1085, 1109 (7th Cir. 1990), quoting *Rivera*, 477 U.S. at 580 n.11 (edits supplied).  *See also Copeland v. Marshall,* 641 F.2d 880, 904 (D.C. Cir. 1980) (same).  While "[they] had the right to play hardball in contesting [plaintiffs'] claims, it is also appropriate that [they] bear the cost of their ... strategy." *Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir. 1984).[2]

Moreover, Plaintiffs' hours are reasonable compared to other cases involving similar challenges.  For example, in *ATLA*, a facial challenge to a local day-laborer ordinance, the ACLU was awarded nearly $800,000 in fees for about 1,000 hours against only one party, having settled with another, and deducting nearly 600 hours to account for that settlement.  Supp. Sobel Decl. ¶6 and Exhibits 20 and 21.  In

---

[2] "For the district court to reduce the attorneys' hours by half and allow less than one-half of their normal billing rate solely because it thought they produced some less than useful material was an abuse of discretion." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

1  *Jones*, the Court awarded nearly 300 hours for preparation of the lawsuit  for

2  attorneys and law students with the Law Office of Carol A. Sobel and the ACLU

3  Foundation of Southern California.  Supp. Sobel Decl. ¶4 and Exhibits 18 and 19.  In

4  *Dowd*, the attorneys were awarded more than $700,000 for approximately 1,000 hours

5  where they did not become counsel until after the *pro se* plaintiffs won a preliminary

6  injunction, conducted limited discovery, and failed to win on summary judgment.

7  2014 U.S. Dist LEXIS 91096.

8         **C.**    **There Was No Unnecessary Duplication In This Instance**

9        Multiple attorneys on a case is common and often efficient in a case.  *Davis v.*

10  *City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), citing

11  *Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir. 1983).  "[A] reduction

12  is warranted only if the attorneys are unreasonably doing the same work."  976 F.2d

13  at 1544.  Paying multiple attorneys is proper if "it reflects the distinct contribution of

14  each lawyer to the case and the customary practice of multiple-lawyer litigation." *Id.*

15        From the outset, Plaintiffs took steps to avoid unnecessary duplication. Sobel

16  Decl. at ¶¶20-23.  With limited exceptions, no more than one attorney billed for the

17  same task, whether attending a deposition, court, or preparing a brief, even though

18  use of more than one attorney is not *per se* unreasonable. See *Probe v. State Teachers'*

19  *Retirement System*, 780 F.2d 776, 785 (9th Cir. 1986).  Multiple parties, complexity

20  of legal issues, intensity of proceedings in a compressed time period and extensive

21  factual evidence involved, mae the limited use of a second attorney was reasonable

22  here.  *Rivera*, 477 U.S. at 573 n.6; *Moore*, 682 F.2d at 839 n.10 (no reduction where

23  "marginally useful" work necessary to respond to defendants' litigation strategy).

24  **IV.**    **DEFENDANTS FAILED TO REBUT THE BASIS FOR A MULTIPLIER**

25         **A.**    **The Request for a Multiplier is Based on State Law**

26        Defendants argue that *Perdue v. Kenny A.*, 559 U.S. 542 (2012), precludes a

27  multiplier here.  They also assert that the Court should consider the fact that any fee

28  award will be paid by the taxpayers.  Neither is a basis for denying a multiplier

1   because Plaintiffs request is made under California law, so *Perdue* is irrelevant.

2          Not surprisingly, Defendants provide no authority for their taxpayer burden

3   argument.  In fact, it is an abuse of discretion to deny a risk multiplier because

4   taxpayers will bear the burden.  *Horsford v. Board of Trustee*, 132 Cal.App.4th 359,

5   400 (2005). *See also Bender v. County of Los Angeles*, 217 Cal.App.4th 1522, 1546

6   (2013) (taxpayer burden offset by public benefit in challenging unlawful government

7   conduct).  California courts have repeatedly approved a risk multiplier under state

8   law. *See e.g.*, *Greene v Dillingham Constr., Inc*., 101 CA4th 418, 428 (2002) (after

9   *Ketchum v Moses,* 24 C4th 1122, 1136 (2001), great public merit or complex legal

10  or factual issues no necessary for a risk multiplier).

11         **B.    Defendants Fail to Rebut the Fact That this Case Precluded Other
                   Work by Plaintiffs' Lead Counsel**

12         All of plaintiffs' lead counsel's litigation in the second half of 2011 was against

13  the City of Los Angeles.  The only filings Defendants identify in the relevant time

14  period are the Answer Brief in response to an expedited appeal filed by Defendants

15  and a motion for a preliminary injunction in another case.  The Answer brief in Lavan

16  was drafted by John Given and finalized by Ms. Sobel after the briefing on the cross-

17  motions for summary judgment was completed.  Mr. Given is counsel of record in the

18  district court; however, when the Answer Brief was filed, he was not admitted in the

19  Ninth Circuit, so he could not be listed as counsel.  Supp. Decl. Sobel ¶26.  As to the

20  preliminary injunction in *CPR for Skid Row v. City of Los Angeles*, the briefing was

21  initially prepared for a temporary restraining order when the Complaint was filed in

22  July, 2011. The City agreed not to enforce the challenged ordinance until a

23  preliminary injunction could be heard.  Supp. Sobel Decl. at ¶26.  Moreover, the brief

24  was substantially written as a demurrer to criminal charges in *People v. Herzallah*,

25  Orange County Superior Court case 11CM01351, filed in early June, 2011.  *Id.*

26         In the end, however, this argument takes second place to the strong public

27  policy to award a multiplier under California law to account for risk involved in

28

9

taking a case such as this.  The unadorned lodestar does not reflect the value of an attorney's services because it does not include compensation for the contingent risk involved, especially where there are no damages sought.  *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-32 (2001).  Contingent risk has become the most important factor because, as a general rule, the other considerations are now subsumed in the lodestar and double-counting these factors is not permitted.  *See e.g., Flannery v. Calif. Hwy. Patrol*, 61 Cal.App.4t 629, 647 (1998).  Contingent risk, alone, justifies a multiplier. *Ketchum*, 24 Cal.4th at 1132-33, 1136.

## V.    THE PARALEGAL TIME FOR PEGGY KENNEDY IS PROPER

Bruning contends no time should be allowed for paralegal Peggy Kennedy.  He does not contend that the tasks she performed are not compensable, only that they should not be paid since she is also a "community organizer" based on a decade old newspaper article.  Bruning Exhibit F.  She is qualified as a paralegal.  Kennedy Decl. ¶¶1-2.  Moreover, if Kennedy had not done these tasks, the work would have been done by attorneys at much higher rates.  *See Missouri v. Jenkins*, 491 U.S. at 288.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant the requested lodestar and multiplier.

Dated: January 5, 2015                 Respectfully submitted,

                                       LAW OFFICE OF CAROL A. SOBEL

                                            /s/ Carol A. Sobel
                                       By: CAROL A. SOBEL
                                       Attorneys for Plaintiffs

10